UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


```
                                 )
BOSE CORPORATION,                )
                                 )
          Plaintiff,             )
                                 )
          v.                     )  CIVIL ACTION
                                 )  NO. 09-10222-WGY
LIGHTSPEED AVIATION, INC.,       )
                                 )
          Defendant.             )
                                 )
```

MEMORANDUM AND ORDER


YOUNG, D.J.                                      April 26, 2010


I.   **INTRODUCTION**

Bose Corporation brings this action against Lightspeed
Aviation, Inc. alleging infringement of U.S. Patent No. 5,181,252
(the "'252 Patent"), an invention related to high compliance
drivers in active noise-reducing headsets.  Compl. ¶ 15 [Doc. No.
1].  This action results from Lightspeed's introduction of its
Zulu ANR Aviation headset (the "Zulu headset"), which Bose
alleges contains new acoustic product characteristics not found
in prior ANR models that directly relate to and infringe upon one
or more claim limitations of the '252 patent.  Id. ¶ 12.

The matter comes before the Court for construction of terms
found in certain claims of the '252 patent.  Markman v. Westview

<u>Instruments, Inc.</u>, 517 U.S. 370 (1996).  The Court held a <u>Markman</u> hearing on March 24, 2010.

**II.  ANALYSIS**

**A.  Claim Construction Principles**

Interpretation of a patent claim is matter of law reserved for the court.  <u>Markman</u>, 517 U.S. at 391.  A claim generally is given its ordinary and customary meaning, which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention . . . ."  <u>Phillips</u> v. <u>AWH Corp.</u>, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (<u>en</u> <u>banc</u>).  If a claim term is not readily apparent, the court looks to "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art."  <u>Innova/Pure Water, Inc.</u> v. <u>Safari Water Filtration Sys., Inc.</u>, 381 F.3d 1111, 1116 (Fed. Cir. 2004).  A claim must be read in light of the specification, of which it is a part, because the specification "is always highly relevant to the claim construction analysis."  <u>Phillips</u>, 415 F.3d at 1315 (quoting <u>Vitronics Corp.</u> v. <u>Conceptronic, Inc.</u>, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (<u>en</u> <u>banc</u>)).  "Usually, [the specification] is dispositive; it is the single best guide to the meaning of a disputed term."  <u>Id.</u>  The specification "informed, as needed, by the prosecution history"

is "[t]he best source for understanding a technical term" of the patent.  <u>Phillips</u>, 415 F.3d at 1315.

In addition to considering the patent's specifications, the court should also consult the prosecution history.  <u>Id.</u> at 1317. The prosecution history "can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be."  <u>Id.</u> (citing <u>Vitronics</u>, 90 F.3d at 1582-83).

Although intrinsic evidence is the primary source for claim construction, the court may also look to relevant extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises."  <u>Phillips</u>, 415 F.3d at 1317 (quoting <u>Markman</u> v. <u>Westview Instruments, Inc.</u>, 52 F.3d 967, 980 (Fed. Cir. 1995 (<u>en</u> <u>banc</u>)).  Extrinsic evidence, however, is "in general . . . less reliable than the patent and its prosecution history" because it is not part of the patent and was not created at the time of the patent's prosecution; extrinsic publications may not have been written by or for skilled artisans; and expert reports and testimony created at the time of litigation may suffer from bias not present in intrinsic evidence.  <u>Phillips</u>, 415 F.3d at 1318.  For these reasons, a district court must exercise "sound discretion" in admitting and using extrinsic

evidence.   Id. at 1319.

**B.   Disputed Terms**

Three terms are in dispute.

1.   Term 1: "rear cavity"

The principal claim construction dispute between the parties relates to the "rear cavity" limitation of claim 1.[1]  Lightspeed contends that the rear cavity is an enclosure within and separate from the enclosure of the earcup that is attached to the rear of the baffle and encloses the driver.   Lightspeed's Opening Claim Construction Br. at 3 [Doc. No. 42].   Bose contends that the rear cavity is the cavity within the earcup that is farther from the user.   Bose's Opening Claim Construction Br. at 14 [Doc. No. 43]. More specifically, Lightspeed argues that the area behind the baffle is a cavity separate from the claimed "rear cavity" while

---

[1] Claim 1 of the '252 patent is as follows:

A headset comprising:

at least one earcup having a front cavity and rear cavity with front cavity and rear cavity compliances respectively,

a baffle separating the front and rear cavities,

a high compliance driver with a driver compliance that is greater than said rear cavity compliance having a diaphragm joined to a voice coil normally residing in a gap mounted on the baffle, and

an active noise reduction system coupled to said driver.

Bose maintains that there is no second such cavity and the area behind the baffle and the "rear cavity" is a solid structure. See Bose's Claim Construction Reply Br. at 3-4 [Doc. No. 45]; Lightspeed's Sur-Reply to Bose's Reply Br. at 1 [Doc. No. 47]. The '252 patent includes figures illustrating the claimed invention.  The parties seem to agree that 11R of Figure 2 of the '252 patent is the rear cavity; the parties' disagreement as to the construction of the term "rear cavity" seems to fall on what constitutes the earcup wall.  Lightspeed interprets the earcup wall as the outer lining of the headphone structure, resulting in a broad definition of "rear cavity."  In contrast, Bose interprets the earcup wall as the whole area behind the baffle and rear cavity, with a smaller area designated as the "rear cavity."  See Bose's Claim Construction Reply Br. at 3.

Looking at the language of the claims first, claim 1 states that the headset has "at least one earcup having a front cavity and rear cavity."  The '252 patent at 5:10-14.  This language does not include any reference to more than two cavities – the front cavity and the rear cavity.  Id.  Lightspeed's construction requires that there be three cavities in total – one front cavity, one rear cavity, and another cavity between the rear cavity and the earcup wall – an interpretation not supported by the language of the claim.

In addition to the words of claim 1, the '252 patent

specifications seem to support the idea that there are only two cavities within the earcup.  The specifications provide that active noise-reducing headphones are known to "use a headphone having front (inside) and rear (outside) cavities separated by a baffle carrying a small driver."  The '252 patent at 1:18-20. The patent specifications further state that "[t]he invention includes a baffle that separates a front or inside cavity from a rear or outside cavity . . . ."  <u>Id.</u> at 1:53-55.  Also, "[b]affle 11 separates front or inside cavity from rear or outside cavity . . . ."  <u>Id.</u> at 2:11-12.  Additionally, the patent specifications state that "[i]t is convenient to refer to the cavity nearer the user and encompassing his ear with headphones properly positioned as the front or inside cavity and the cavity further from the user as the rear or outside cavity."  <u>Id.</u> at 2:17-21.  The patent specifications indicate that there are two cavities contained within the earcup, a front and a rear cavity, and there is no mention of an additional cavity, contrary to Lightspeed's assertion.

The prosecution history confirms this interpretation.  The United States Patent and Trademark Office ("PTO") objected to Figure 2 of Bose's original application in an Office Action dated March 1, 1991, because the original illustration did not show the front cavity, rear cavity, and the high compliance driver of claim 1.  Lightspeed's Opening Claim Construction Br. at 7.  Bose

6

amended Figure 2 on June 6, 1991, to overcome the PTO's objection by adding a new paragraph that stated, in part, "[r]eferring to FIG. 2, there is shown a diagrammatic sectional view . . . with headphone cup structure added to better illustrate the relationship among the front cavity, rear cavity, high compliance driver and raised portions on the basket surface."  <u>Id.</u> at 8.

Lightspeed proposes that in the prosecution history, Bose distinguished between the claimed "rear cavity" and the earcup enclosure, as Lightspeed calls it, demonstrating that the "rear cavity" is something different from the earcup enclosure, and thus Bose's proffered construction cannot stand.  <u>Id.</u> at 7-8. Bose's construction is not that the rear cavity and earcup enclosure are the same, but rather that there is only one rear cavity within the earcup.  The prosecution history does not support Lightspeed's contention that there are two separate rear cavities.

Moreover, the extrinsic evidence teaches against Lightspeed's construction.  To support its argument that there is a solid structure behind the rear cavity, Bose points to parts of Figure 2 of the '252 patent that include "cross-hatching" or "section lining," and offers extrinsic evidence such as the PTO's Manual of Patent Examining Procedure and several engineering textbooks to prove that solid-line cross-hatching is used to denote solid materials, and not empty spaces or cavities in

drawings.  Bose's Claim Construction Reply Br. at 7.

Lightspeed counters that "in the acoustics industry, <u>dashed lines</u> are often used in patent drawings to identify cavities within headsets" and points to the original '252 patent drawing which contained such dash lines.  Lightspeed's Sur-Reply to Bose's Reply Br. at 2.  Lightspeed, however, does not cite to extrinsic sources to support this assertion.  <u>Id.</u>  Instead, Lightspeed offers one example of a patent drawing using dashed lines to denote a sound-absorbing material, but this material is expressly discussed in that patent's specifications, which is not the case with the '252 patent.[2]  <u>Id.</u>

The intrinsic and extrinsic evidence of the '252 patent, weighed appropriately in terms of importance, indicate there are only two cavities – a front and rear cavity – within the headphone cup structure.  This Court construes the term "rear cavity" as "the cavity within the headphone cup structure that is farther from the user and attached to the rear of the baffle."

    2.    <u>Term 2: "limiting structure"</u>

The second term the parties dispute is "limiting structure,"

---

[2] Moreover, Lightspeed does not acknowledge that Figure 2 in the final '252 patent differs from the original Figure 2 drawing with the dashed lines because Figure 2 in the final '252 patent contains solid lines throughout the contested region.  <u>See</u> '252 patent, Figure 2.  The driver in the original Figure 2 drawing Lightspeed provides also looks different than the driver in Figure 2 of the final '252 patent.  <u>Id.</u>  Figure 2 in the final '252 patent contains solid lines which does not seem to indicate an open space in light of the extrinsic evidence.

which is found in claim 2[3] of the '252 patent and is a claim
dependent on claim 1.  Lightspeed argues that "limiting
structure" is a means-plus-function term subject to Title 35 of
the United States Code section 112, paragraph 6, and therefore
must be "construed to cover the corresponding structure,
material, or acts described in the specification and equivalents
thereof."  Lightspeed's Opening Claim Construction Br. at 11
(quoting 35 U.S.C. § 112 ¶ 6).  Specifically, Lightspeed proposes
that the Court construe the term "limiting structure" to include
the two embodiments referenced in the specifications – plastic
fingers and wire mesh, while Bose does not support the inclusion
of the two embodiments.

There is a rebuttable presumption that Title 35 of the
United States Code section 112, paragraph 6 does not apply unless
the claim uses "means" or "means for" language.  <u>Personalized
Media Commc'ns, LLC</u> v. <u>Int'l Trade Comm'n</u>, 161 F.3d 696, 703-04
(Fed. Cir. 1998) (stating "cases have clarified that use of the
word 'means' creates a presumption that § 112, ¶ 6 applies . . .
and that the failure to use the word 'means' creates a
presumption that § 112, ¶ 6 does not apply").  "These

---

[3] Claim 2 of the '252 patent is as follows:

> A headset in accordance with claim 1 and further
> comprising limiting structure limiting the maximum
> excursion of the diaphragm so that the voice coil
> remains at least partially in said gap.

presumptions can be rebutted if the evidence intrinsic to the patent and any relevant extrinsic evidence so warrant." <u>Id.</u> at 704.  Unfortunately here, as elsewhere in the law of patents, the Federal Circuit is imprecise in the use of the term "presumption."  The court is not speaking of presumptions as that term is used in Federal Rule of Evidence 301.  Rather, it is allocating the burden of actual proof to the party seeking to rebut the so-called "presumption." <u>Personalized Media Commc'ns, LLC</u>,161 F.3d at 703-04.  The court's focus in determining whether a party has rebutted either presumption "remains on whether the claim as properly construed recites [a] sufficiently definite structure to avoid the ambit of § 112, ¶ 6." <u>Id.</u> at 704.

The term "means" is not used in claim 2; therefore, Lightspeed bears the burden of proving that section 112, paragraph 6 applies.  To demonstrate that the term "limiting structure" does not recite a "sufficiently definite structure," Lightspeed offers an expert affidavit to show that the term does not have meaning to a person of ordinary skill in the acoustic arts.  Lightspeed's Opening Claim Construction Br. at 12; Lightspeed's Opening Claim Construction Br. Ex. E, Decl. of Dr. Marshall Buck  ¶¶ 9-10; <u>see</u> <u>CCS Fitness, Inc.</u> v. <u>Brunswick Corp.</u>, 288 F.3d 1359, 1369 (Fed. Cir. 2002) (stating "[t]o help determine whether a claim term recites sufficient structure, we examine whether it has an understood meaning in the art").

Bose counters Lightspeed's expert affidavit by providing testimony given by Lightspeed's expert witness in prior litigation involving the same '252 patent and claim 2 in which the expert discussed the term "limiting structure" in a manner demonstrating he understood what the term meant.  Bose's Claim Construction Reply Br. at 11-12.  Bose also provides its own expert affidavit in the acoustic arts to declare that a person of ordinary skill in this field would understand the meaning of the term as recited in claim 2 to connote a particular structure for diaphragm excursion.  Id. at 13-14; Bose's Claim Construction Reply Br. Ex. 10, Decl. of Gary H. Koopmann ¶¶ 11-12.

As is virtually invariably the case, the expert witnesses for each party reach opposite conclusions in this case as to whether "limiting structure" is a term understood by "a person of ordinary skill in the art in question at the time of the invention . . . ."  Phillips, 415 F.3d at 1312-13.  Affidavits, of course, bear about as much relation to reality as does a Potemkin village.  What is required here is actual "fact finding."  See William G. Young, A Lament for What Was and Can Be Yet Again, 32 B.C. Int'l and Comp. L. Rev. 305, 312-18 (2009) (extolling fact finding); contra D. Brock Hornby, The Business of the U.S. District Courts, 10 Green Bag 2d 453, 460 (2007) (extolling "fact sorting," apparently by way of affidavit).  Yet so far the Federal Circuit refuses to admit fact finding plays a

role in claim construction.  See Cybor Corp. v. FAS Techs., Inc.,
138 F.3d 1448, 1456 (Fed. Cir. 1998) (reaffirming that claim
construction is a purely legal question).

These conflicting affidavits on the claim term cancel each
other out and require this Court to examine further intrinsic
evidence to determine whether section 112, paragraph 6 applies.
The '252 patent specifications provide guidance as to how the
Court ought construe this term.  The specifications repeatedly
refer to the term "structure" in explaining how the diaphragm
excursion is limited.

For example, the patent specifications state that "[t]he
invention avoids the suction or under-pressure problem by
locating a structure in the earcup over the diaphragm to limit
voice coil excursion."  The '252 patent at 3:28-30 (emphasis
added).  The specifications further state that "[t]his structure
is positioned such that, during the normal range of excursion of
the driver diaphragm, the diaphragm does not touch structure and
motion is unimpeded."  Id. at 3:30-33 (emphasis added).
Additionally, "[s]tructure  is located close enough to the driver
such that it contacts the diaphragm before it is pulled so far
that the voice coil is pulled fully from the gap."  Id. at 3:33-
36 (emphasis added).  Also, "[t]he structure is preferably small
enough so that it does not cause diffraction or otherwise affect
the sound pressure detected by the active noise reduction

system's microphone except at high frequencies (over 10 KHz)."
Id. at 3:39-43 (emphasis added).

The specifications then state that "[t]he present invention
accomplishes [limiting diaphragm excursion] by using three small
fingers of plastic positioned to symmetrically contact the
diaphragm along the circle where the voice coil is glued to it."
Id. at 3:43-47.  The specifications further state that "[a]n
alternative embodiment for the structure to stop diaphragm
movement is a fine wire mesh screen shaped so as to contact as
much of the surface of the diaphragm as possible at its position
of maximum allowed outward excursion."  Id. at 3:50-54.  Thus,
the specifications indicate that the plastic fingers and wire
mesh are types of elements that could make up the structure
required to limit diaphragm excursion, but there does not seem to
be a restriction excluding other ways to accomplish this same
purpose.

Finally, dictionary definitions offer extrinsic evidence to
assist the Court in determining whether "limiting structure" is a
"sufficiently definite structure to avoid the ambit of § 112, ¶
6."  Personalized Media Commc'ns, LLC, 161 F.3d at 704.
"Limiting" is defined as restrictive.  Merriam-Webster Online
Dictionary, http://www.merriam-webster.com/dictionary/limiting.
"Structure" is defined as "the aggregate of elements of an entity
in their relationships to each other."  Merriam-Webster Online

Dictionary, http://www.merriam-webster.com/dictionary/structure. Thus, a "limiting structure" is in essence a restrictive aggregate of elements of an entity.  This suffices as a sufficiently definite structure "since a term need not connote a precise physical structure in order to avoid the ambit of [§ 112 ¶ 6]."  CCS Fitness, Inc., 288 F.3d at 1370.

After weighing all the intrinsic and relevant extrinsic evidence, this Court rules that section 112, paragraph 6 does not apply here.

Bose proposes that the Court construe "limiting structure" as "[a] structure or component that limits diaphragm excursion, but does not otherwise interfere with diaphragm movement." Bose's Opening Claim Construction Br. at 19.  Thus, in addition to the word "structure," Bose includes the word "component" in its proposed claim 2 construction.  A "component" is defined as "a constituent part."  Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/component. Constructing the term "limiting structure" as a "component" does not comport with the definition of structure, which is an aggregate of parts, or components.

Furthermore, Bose includes language in its construction that the limiting structure "does not otherwise interfere with diaphragm movement."  In claim construction, if a claim term is not readily apparent (e.g., "limiting structure" is not readily

14

apparent in this case based on the above analysis), the court must look to the words of the claims themselves before looking to the remainder of the specifications. See Phillips, 415 F.3d at 1314. Claim 2 does not include language concerning this additional functional limitation. Following from the analysis above that the claim term "limiting structure" is not readily apparent, the Court looks to the specifications to construe the term.

The '252 patent specifications state that certain limiting elements "are positioned along the driver axial direction of motion so as to limit displacement of the diaphragm" and that the diaphragm is "free to translate axially without obstruction." The '252 patent at 1:59-60. The specifications also state that the "limitation elements do not interfere with the normal range of motion of diaphragm." The '252 patent at 4:18-20. The patent specifications state this when describing how the apparatus functions. Id. at 4:13-20.

Thus, the specifications include the functional limitation that the limiting structure does not interfere with the diaphragm movement. Based on the above reasoning, the Court's construction of "limiting structure" is "a structure that limits diaphragm excursion to allow the voice coil to reside at least partially in a gap mounted on the baffle without interfering with the normal range of motion of the diaphragm."

3.      Term 3: "means for recovering from collapse
                of the diaphragm"

The parties agree that the claim 5[4] term "means for

recovering from collapse of the diaphragm" is not within the

scope of Title 35 of the United States Code section 112,

paragraph 6 because it is not a means-plus-function term, even

though it uses the words "means for."  Bose's Claim Construction

Reply Br. at 14.  The claim term is not subject to section 112,

paragraph 6 even though it contains the words "means for" because

it expressly recites the structure for performing the claimed

function, which is the "indentations in the diaphragm."

Lightspeed's Opening Claim Construction Br. at 14-15.  Lightspeed

disputes whether "means for recovering" includes "raised points"

for preventing collapse of the diaphragm.  Id.

When a term is not readily apparent from the words, the

court looks to the language in the claim.  Phillips, 415 F.3d at

1314.  Claim 5 mentions "indentations" only and not "raised

points."  Looking next to the specifications, the specifications

indicate that "grooves" or "corrugations" are included to prevent

collapse.  See the '252 patent at 3:19-22, 3:59-66.  Moreover,

the specifications of the '252 patent explain that using raised

_____

[4] Claim 5 of the '252 patent is as follows:

        The headset set forth in claim 1 and further comprising
        means for recovering from collapse of the diaphragm
        including indentations in the diaphragm such that the
        diaphragm recovers its shape if collapsed.

points is an alternative to grooves in preventing collapse.  <u>See</u> the '252 patent at 3:66-4:3, 4:21-27.

These two solutions are covered separately by claim 5 and claim 6[5]: claim 5 addresses indentations and claim 6 addresses raised points.  The <u>Phillips</u> court stated that "[d]ifferences among claims can also be a useful guide in understanding the meaning of particular claim terms."  415 F.3d at 1314; <u>see also</u> <u>Andersen Corp.</u> v. <u>Fiber Composites, LLC</u>, 474 F.3d 1361, 1369 (Fed. Cir. 2007) (noting that the doctrine of claim differentiation "is based on 'the common sense notion that different words or phrases used in separate claims are presumed to indicate that the claims have different meanings and scope'") (citations omitted).  In this case, the differences between claims 5 and 6 demonstrate that each claim of the '252 patent addresses one solution to preventing diaphragm collapse, and this is supported by the specifications.  This Court therefore does not include the term "raised points" in its claim construction of "means for recovering from collapse of the diaphragm."  The Court construes the third disputed term "means for recovering from collapse of the diaphragm" as "a structure such as indentations, grooves, or corrugations for assisting the diaphragm in

---

[5] Claim 6 of the '252 patent is as follows:

> The headset set forth in claim 1 and further comprising raised portions on the surface underneath the diaphragm preventing unrecoverable collapse of said diaphragm.

17

recovering its shape following collapse."

**III. CONCLUSION**

In light of the intrinsic evidence and relevant extrinsic evidence, the Court construes the disputed terms as stated above. SO ORDERED.

By the Court,

William G. Young

WILLIAM G. YOUNG
DISTRICT JUDGE