IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOSE CORPORATION, | |
| Plaintiff, | |
| v. | Civil Action No. 1:09-cv-10222-WGY |
| LIGHTSPEED AVIATION, INC., | |
| Defendant. | |

**BOSE CORPORATION'S OPPOSITION TO LIGHTSPEED'S MOTION IN LIMINE
TO PRECLUDE BOSE FROM RELYING ON AN INVENTION DATE AND
DOCUMENTS BEFORE THE FILING DATE OF THE '252 PATENT**

By its motion *in limine*, Lightspeed is asking the Court to strike the very evidence that this Court specifically called upon Bose to identify in support of its priority date for the '252 patent. During the summary judgment motion hearing held on July 21, 2010, Your Honor stated:

> [I]t seems to me that the burden of proof as to whether [the Telex ANR headset is] prior art on that depends upon Bose – not on Lightspeed, Bose – to establish priority, date for priority, that's the plaintiff's burden.

Ex. A (Summary Judgment Motion Hearing (July 21, 2010)), Tr. at 4:21-25.  In response, Bose has identified additional Bose production documents—**all of which have been in Lightspeed's possession for over one year**—as trial exhibits.  See Bose Supplemental Trial Exhibit List [Dkt. #116] (August 13, 2010).  These trial exhibits relate to the development of Bose's Aviation Headset Series I headset, also known by its internal project name, "Maverick."  Lightspeed has known **for over one year** that Bose considers the Aviation Headset Series I/"Maverick" to be the first Bose product embodying the '252 patent invention.  Lightspeed has known **for over one year** that Bose sold the Aviation Headset Series I to the public in July 1989, before the '252

patent application date.  These trial exhibits will establish, beyond a doubt, that Bose invented the '252 patent during the "Maverick" project well before any significant progress on  the Telex ANR headset was made.  In short, Bose will meet its burden regarding the date of priority for the '252 patent, as Your Honor called upon Bose to do at the hearing.  That is the real reason why Lightspeed wants to prevent the jury from seeing these trial exhibits.

Rather than allow a competent jury to weigh the evidence of '252 patent conception against the Telex ANR headset, Lightspeed feigns shock and outrage that Bose would seek a '252 patent conception date earlier than the patent's filing date.  The Court should not fall for Lightspeed's crocodile tears.  Lightspeed's motion omits the repeated instances throughout this litigation that Bose informed Lightspeed explicitly of the relevance of the Aviation Headset Series I/"Maverick" to the conception of the '252 patent.  Lightspeed's motion omits the fact that the Bose supplemental trial exhibit documents have been in Lightspeed's possession for over one year, and that Lightspeed used many of these same documents in deposing  multiple Bose witnesses about the "Maverick" project and '252 patent conception.  Lightspeed has known for three-and-a-half months that Bose would assert a conception date of not later than July 28, 1989, yet never objected to Bose's contention until now.  These inconvenient facts run counter to Lightspeed's claimed victimhood narrative, and therefore will not be found or dwelled upon in Lightspeed's motion.

Lightspeed's demand that Bose not be able to rely on **any** Aviation Headset Series I/"Maverick" events prior to the '252 patent application date is particularly shameless given its own prior litigation allegations.  Earlier in this litigation, Lightspeed and its expert alleged, under a clear and convincing evidentiary standard, that the '252 patent was invalid in view of the Aviation Headset Series I and many of the same events that it now wants to preclude from the

jury's consideration. All that has changed in the interim is that Bose explained to Lightspeed

that under 35 U.S.C. § 102(a), Bose's Aviation Headset Series I cannot be used as prior art

against Bose. But what is good for the goose is good for the gander: if Lightspeed considered

these facts surrounding Aviation Headset Series I sufficient to allege patent invalidity, then these

same facts should be admissible and sufficient to support earlier patent conception.

**A.      Lightspeed Has Been Informed Repeatedly by Bose That the Aviation Headset Series I Led to Conception of the '252 Patent**

Lightspeed's claim that it is the victim of "ambush" shamelessly ignores the multiple

instances over the course of this litigation that Bose has affirmatively informed Lightspeed that

the Aviation Headset Series I/"Maverick" was the first product to embody the '252 patent. Bose

has contended this from the very beginning of this litigation—as early as **August 17, 2009**—and

further informed Lightspeed that the Bose Aviation Headset Series I was on sale by July 1989:

> All Bose headphone products prior to the Aviation Headset Series I in July 1989 . . . had a rear cavity compliance higher than the driver compliance. All other Bose headphone products, including . . . Aviation Headset Series I . . . had a rear cavity compliance lower than the driver compliance. **To Bose's knowledge, the first product embodying at least one invention of the '252 patent was sold in July 1989 (Aviation Headset Series I or "Maverick").**

Ex. B (Bose Response to Lightspeed No. 7) (August 17, 2009) (emphasis added).

By **August 26, 2009**—over one year ago—Bose had produced to Lightspeed **every**

**document** now identified in Bose's first supplemental trial exhibit list that is related to the Bose

Aviation Headset Series I/"Maverick" headset. Ex. J (2009-08-26 Letter fr Floyd to Cantor

regarding Bose document production Bose-LS 306535-370520). These documents relate to

progress on the "Maverick" project, which resulted in the first product embodying the '252

patent, the Aviation Headset Series I. In other words, all of the documents listed in Bose's

supplemental trial exhibit list have been in Lightspeed's hands for over one year.  Lightspeed's

motion *in limine* also omits this inconvenient fact.

On **November 2, 2009**, in response to a Lightspeed interrogatory, Bose repeated its

contention that the Aviation Headset Series I was the first product to practice the '252 patent:

> **Bose headphone products prior to the Aviation Headset Series I in 1989**, the
> numerous experimental prototypes prior to 1989, and an experimental prototype
> (named Pegasus) in 1996 **do not practice all of the claim limitations of the
> asserted claims of the '252 patent**.  Persons knowledgeable about the foregoing
> Bose headphone products include Roman Sapiejewski and Dan Gauger.

Ex. C (Bose Response to Lightspeed Interrogatory No. 14) (Nov. 2, 2009) (emphasis

added).  If this was not clear enough to Lightspeed, Bose stated it again in response to

another Lightspeed interrogatory on the same date:

> **To Bose's knowledge, the first use of the inventions of the '252 patent
> occurred by July 1989.  To Bose's knowledge, the first product embodying
> the inventions of the '252 patent was sold in July 1989 (Aviation Headset
> Series I, also known as Aviation Headset or "Maverick").**  Persons involved in
> and knowledgeable about the conception and reduction to practice of the
> inventions claimed in the '252 Patent include Roman Sapiejewski and John J.
> Breen.

Ex. C (Bose Response to Lightspeed Interrogatory No. 15) (Nov. 2, 2009) (emphasis

added).  Lightspeed has no basis for claiming it did not know the "Maverick" project

resulted in conception of the '252 patent or that the Maverick project documents that

Bose had produced might be relevant.

### B.    Lightspeed Deposed Multiple Bose Witnesses Regarding the "Maverick" Project and the Aviation Headset Series I

In an effort to portray Bose's supplemental exhibits as somehow prejudicial, Lightspeed

asserts in its motion *in limine* that "Lightspeed has no opportunity to cross-examine Bose on its

new date and documents…"  Lightspeed Motion at 2.  Nonsense.  Lightspeed not only had ample

opportunity to cross-examine Bose witnesses, it availed itself of this opportunity multiple times

during discovery.  Lightspeed deposed no less than three separate Bose employees regarding the

"Maverick" project and the Aviation Headset Series I (the same three who will be appearing at

trial).  The testimony from these witnesses regarding the headset and the "Maverick" project is

extensive and detailed.  Lightspeed even used an Aviation Headset Series I as a deposition

exhibit with these Bose witnesses, and queried them about "Maverick"-related documents that

now appear on Bose's supplemental trial exhibit list:

- On March 10, 2010, for example, Bose senior engineer Dan Gauger (not an
  inventor of the '252 patent) provided detailed testimony confirming that the
  Aviation Headset Series I was Bose's first headset with a high compliance driver
  design and that it was first sold at the July 1989 EAA airshow in Oshkosh,
  Wisconsin.  Mr. Gauger testified about the NMB driver used in the Aviation
  Headset Series I.[1]  Lightspeed specifically questioned Mr. Gauger regarding three
  separate "Maverick" project-related documents that now appear on Bose's
  supplemental trial exhibit list, and as to which Lightspeed is now claiming
  "ambush."  Ex. D (Gauger Dep. Tr.) at 20:1- 27:24; 34:16-37:11; 52:23-57:4;
  59:12-68:10; 78:21-79:8; 109:14-110:10.

- On March 10, 2010, '252 patent co-inventor John Breen testified about his
  personal role in the mechanical design of the Aviation Headset Series I during the
  "Maverick" project.  Mr. Breen confirmed that the Aviation Headset Series I was
  Bose's first headset with a high compliance driver design and that it was first sold
  at the July 1989 EAA airshow in Oshkosh, Wisconsin.  Mr. Breen also testified

---

[1] "NMB" is the Japanese company that provided the headset drivers for the "Maverick" headset
in response to Bose's design direction and specification.  "NMB" stands for "Nippon Machine
Bearing."

about his participation in the July 1989 EAA airshow in Oshkosh.  One of the two

deposition exhibits marked by Lightspeed at Mr. Breen's deposition relates to the

"Maverick" project.  Ex. E (Breen Dep. Tr.) at 6:13-8:9; 13:18-14:19; 17:24-18:3;

20:8-15.

- On March 11, 2010, '252 patent co-inventor Roman Sapiejewski testified that the

   Aviation Headset Series I was Bose's first headset with a high compliance driver

   design and that it was first sold at the July 1989 EAA airshow in Oshkosh,

   Wisconsin.  He further testified about the design of the NMB driver used in

   Aviation Headset Series I that was developed during the "Maverick" project.  One

   of the deposition exhibits marked by Lightspeed at Mr. Sapiejewski's deposition

   relates to Mr. Sapiejewski's work on the headset driver for the "Maverick"

   project.  Ex. F (Sapiejewski Dep. Tr.) at 48:22-53:23; 81:21-85:2; 91:13-18;

   103:17-112:18.

Plainly, Lightspeed has had ample opportunity to cross-examine Bose witnesses about the

"Maverick" project and its related documents.

What is even more puzzling is Lightspeed's complaint that it "has no opportunity to

depose **Telex** again."  Lightspeed Motion at 7 (emphasis added).  Lightspeed already has

deposed two former Telex employees regarding the Telex ANR headset.  When Lightspeed

deposed these two former Telex employees, it already had Bose's "Maverick" documents in its

possession.  There is no testimony that these two former Telex employees can give that would be

relevant to the Bose "Maverick" documents.  The development of the Aviation Headset Series I

and the Telex ANR headset are two independent chains of events.  The timeline of Telex ANR

headset development should not change in view of Bose's "Maverick" documents.  Furthermore,

in light of this argument by Lightspeed, it must be noted that one of those former-Telex

employees is now in the paid services of Lightspeed as a "consultant" and is scheduled to appear

at trial on Lightspeed's behalf.

>        **C.    The Same Evidence Relied Upon by Lightspeed to Assert the Aviation
>               Headset Series I was Invalidating Prior Art is Evidence of Earlier
>               Conception**

Notwithstanding all of Bose's prior assertions and evidence that the development of the

Aviation Headset Series I led to the conception of the '252 patent, Lightspeed inexplicably

asserted that the Aviation Headset Series I was invalidating prior art to the '252 patent.  On April

1, 2010, Lightspeed's expert Dr. Buck contended that the evidence was clear and convincing that

the Aviation Headset Series I met all the claim limitations of '252 patent claims 1, 2, 3 and 5,

and that its sale at the July 1989 EAA airshow rendered the '252 patent invalid:

> **Bose has admitted that "the first product embodying at least one invention of
> the '252 patent was sold in July 1989 (Aviation Headset Series I or
> "Maverick").** (Sapiejewski, Roman, 48:22-49:3, Mar. 11, 2010.)  **July 1989 is
> prior to Bose's asserted August 23, 1989 date of invention for the asserted
> claims.**
>
> . . .
>
> **Bose has admitted that "the first product embodying at least one invention of
> the '252 patent was sold in July 1989 (Aviation Headset Series I or
> "Maverick").** (Sapiejewski, Roman, 48:22-49:3, Mar. 11, 2010.) Bose has also
> admitted that the Aviation Series I "had a rear cavity compliance lower than the
> driver compliance."
>
> . . .
>
> **Based on these admissions, and my inspection of the Aviation Series I headset
> (Exhibit B), it is my opinion that the headset embodies every limitation of
> asserted claims 1, 2, 3 and 5 of the '252 patent** as Bose is asserting those
> limitations against Lightspeed's Zulu headset.  **Accordingly, the Aviation Series
> I headset anticipates those claims, rendering them invalid**.

Ex. G (Buck Opening Report at 7) (emphasis added).  Dr. Buck provided a detailed invalidity

chart showing how this Aviation Headset Series I sold in July 1989 met all the limitations of

claims 1, 2, 3 and 5.  Ex. G (Buck Opening Report at Exhibit B).  Notably, his opinion was not

(as Lightspeed now alleges) based upon statements by Bose, but rather, it was supposedly based

on his own independent analysis.  Dr. Buck even opined that Bose had committed inequitable

conduct by failing to disclose the Aviation Headset Series I to the U.S. Patent and Trademark

Office:

> As explained above, **the Aviation Series I headset was prior art to the '252 patent** and Bose and Roman Sapiejewski admitted that the headset included every limitation of claim 1 and other claims of the '252 patent.  **I have confirmed that the headset includes every limitation of the asserted '252 claims**, as Bose asserts those claims.
>
> During prosecution of the '252 patent, Bose argued that no prior art headset included all limitations of claim 1.  That is why the Patent Office allowed claim 1, and the dependent claims (which were all previously rejected in view of prior art).  **Bose could not have made those representations to the Patent Office, and the Patent Office would not have allowed the '252 patent to issue if Bose told the Patent Office that its invention date was August 23, 1989, and that the Aviation Series I headset was demonstrated to the public at the July 1989 EAA show.  Accordingly, the Aviation Series I headset was highly material to the patentability of every claim of the '252 patent**, its existence undermined Bose's representations to the Patent Office, and it was not cumulative to prior art already before the Patent Office.

Ex. G (Buck Opening Report at 66-67) (emphasis added).  Lightspeed expressly adopted all of

Dr. Buck's analyses into its invalidity contentions.  Ex. H (Lightspeed First Supplemental

Response to Bose Interrogatory No. 10) (March 12, 2010) ("Lightspeed incorporates by

reference all of the invalidity positions set forth in its April 1, 2010 expert report.").

Needless to say, Lightspeed's allegation that the Bose's own Aviation Headset Series I

constituted prior art under §102(a) came as a surprise to Bose.  It is first-year patent law that

§ 102(a) cannot be applied to an inventor's own prior art.  <u>Specialty Composites v. Cabot Corp.</u>,

845 F.2d 981, 990 n.9 (Fed. Cir. 1988) ("Actions by the same inventor occurring within the

statutory one-year grace period under 35 U.S.C. § 102(b) are not prior art which will render the

inventor's work anticipated or obvious, and it is not inequitable conduct to fail to disclose such art to the Patent & Trademark Office during prosecution."); <u>Invitrogen Corp. v. Biocrest Mfg., L.P.</u>, 424 F.3d 1374, 1380-81 (Fed. Cir. 2005) ("The basic tenet of U.S. patent law is that an original inventor gains an exclusive right to the invention.  Thus, an inventor's own work cannot be used to invalidate patents protecting his own later inventive activities unless, <u>inter alia</u>, he places it on sale or uses it publicly more than a year before filing.") (citations omitted).  <u>See also</u> <u>Evans Med. Ltd. v. Am. Cyanamid Co.</u>, 11 F. Supp. 2d 338, 371 (S.D.N.Y. 1998) ("For purposes of anticipation under § 102(a), an inventor's own work is not prior art even though it has been publicly disclosed prior to the application.").  As a matter of law, Bose's Aviation Headset Series I does not qualify as prior art to the '252 patent under 35 U.S.C. § 102(a).

In short, Lightspeed aggressively argued that the Aviation Headset Series I was invalidating prior art to the '252 patent, but later recognized that it was just plain wrong on the law.  Although indeed embarrassing, Lightspeed cannot justifiably claim now that it is unfair for Bose to rely upon the same headset and related evidence in order to prove an earlier patent conception date.

### D.    Bose Timely Supplemented its Interrogatory Response Regarding the '252 Patent Conception Date, and There Has Been no Prejudice to Lightspeed

Lightspeed claims that Bose should be precluded from relying on a conception date earlier than August 23, 1989 based on Rule 37(c)(1).  Lightspeed Motion at 7.  To put it mildly, Lightspeed's position makes no sense:  Rule 37(c)(1) imposes an affirmative obligation "to supplement an earlier response," and that **failure to supplement** an earlier response is grounds for excluding the information from a hearing or trial.  Fed. R. Civ. P. 37(c)(1).  As Lightspeed acknowledges in its motion (Lightspeed Motion at 5), Bose **did** supplement its response to

Lightspeed Interrogatory No. 1 (regarding the '252 conception date) on April 30, 2010, two

weeks before the close of expert discovery.  In its supplemental response, Bose explicitly

claimed a conception date of **not later than July 28, 1989**:

> Based on the previously-undisclosed invalidity contentions in the Opening Expert
> Report of Dr. Marshall Buck, **Bose will rely upon a date of conception and
> reduction to practice for each asserted claim in the '252 Patent of not later
> than the first day of the 1989 Experimental Aircraft Association's air show in
> Oshkosh, Wisconsin, or July 28, 1989**. In support of its conception and
> reduction to practice date, Bose identifies, **without limitation**, the deposition
> transcripts of Roman Sapiejewski, Dan Gauger, and John Breen; Bosch 000383;
> and the Opening Expert Report of Dr. Marshall Buck at 7 and Exhibit B.

Ex. I (Bose Supplemental Responses to Lightspeed's Interrogatory No. 1) (April 30, 2010)

(emphasis added).  Because Bose did supplement its response to Lightspeed Interrogatory No. 1,

there is no basis to exclude Bose's contention pursuant to Rule 37(c)(1).[2]

Lightspeed's complete lack of response or objection to Bose's April 30 supplemental

interrogatory response speaks volumes about whether Lightspeed really has been the victim of

"ambush."  Until its present motion *in limine*, filed three-and-a-half months after Bose's

supplemental interrogatory response, Lightspeed **never** objected to the timeliness of Bose's

supplemental interrogatory response, nor did it request to depose any Bose witnesses regarding

Bose's asserted conception date.  Having sat on its hands without complaint or objection for the

---

[2]     Furthermore, Bose's supplemental response to Lightspeed Interrogatory No. 1 was
consistent with its obligations under Rule 26(e)(1), which states:

> A party who has . . . responded to an interrogatory, request for production, or request for
> admission — must supplement or correct its disclosure or response:

> (A) in a timely manner if the party learns that in some material respect the disclosure or
> response is incomplete or incorrect, and if the additional or corrective information has not
> otherwise been made known to the other parties during the discovery process or in
> writing

Fed. R. Civ. P. 26(e)(1).

past three-and-a-half months, Lightspeed cannot now claim that Bose's position regarding '252 patent conception is prejudicial.

### E.     Conclusion

Lightspeed has had the very documents it is complaining about in its possession for over one year.  Lightspeed deposed Bose employees about some of them.  Lightspeed has been on notice that Bose considered its Aviation Headset Series I/"Maverick" to be the first product embodying the '252 patent for over one year.  Lightspeed has known of the circumstances of the first sale of the Aviation Headset Series I in July 1989 for over one year.  Lightspeed knew of these contentions and documents, and deposed no less than three Bose fact witnesses regarding conception of the '252 patent.  These three witnesses provided extensive testimony regarding how the '252 patent was conceived during the course of the "Maverick" project.  Lightspeed relied upon these same facts to allege, erroneously, that the Aviation Headset Series I constituted invalidating prior art under 35 U.S.C. § 102(a).  Pursuant to Rule 37(c), Bose timely supplemented it interrogatory response to assert a patent conception date of not later than July 28, 1989.  When Bose did so—over three months ago—Lightspeed neither objected nor requested additional discovery or depositions.  In short, Lightspeed can demonstrate no real prejudice here.

For the foregoing reasons, Bose respectfully requests that the Court deny Lightspeed's motion *in limine*.

11

Respectfully submitted,

FISH & RICHARDSON P.C.

Dated:  August 27, 2010

By:  /s/ *Steven A. Bowers*

Ruffin B. Cordell (admitted *pro hac*)
Andrew R. Kopsidas (admitted *pro hac*)
Steven A. Bowers (admitted *pro hac*)
FISH & RICHARDSON P.C.
1425 K Street, N.W., 11th Fl.
Washington, D.C. 20005
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Charles Hieken (233,640)
FISH & RICHARDSON, P.C.
225 Franklin Street
Boston, MA  02110-2804
Telephone: (617) 542-5070
Facsimile: (617) 542-8906

Juanita R. Brooks (admitted *pro hac*)
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Attorneys for Plaintiff
BOSE CORPORATION

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 27, 2010 a true and correct copy of the foregoing document was filed with the Clerk of the Court for the District of Massachusetts via the ECF System which will send notification to all registered participants of the ECF System.


                                        */s/ Steven A. Bowers*
                                         Steven A. Bowers