IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BOSE CORPORATION,

          Plaintiff,

v.

LIGHTSPEED AVIATION, INC.,

          Defendant.

Civil Action No. 1:09-cv-10222-WGY

## PLAINTIFF BOSE CORPORATION'S REPLY IN SUPPORT OF ITS
## OMNIBUS MOTIONS *IN LIMINE*

Bose Corporation hereby submits this Reply to address numerous omissions and inaccuracies in Lightspeed Aviation, Inc.'s Response to Bose's Omnibus Motions *in Limine* (Dkt. #123, hereinafter, "Lightspeed's Opposition" or "LS Opp.") and in support of Bose's Omnibus Motions *in Limine* (Dkt. #118, hereinafter, "Bose's Motion" or "Bose Mot.").

In addition, Bose hereby moves pursuant to Local Rule 7.1 to strike pages 21-22 of Lightspeed's Opposition for exceeding the 20-page limit without having sought leave from the Court. *See* L.R. 7.1(b)(4).

For the reasons set forth below, Bose respectfully requests that its motions *in limine* be granted.

## 1.      Non-Disclosed Evidence.

Lightspeed would have the Court believe that it is Bose's burden to search for and acquire one-of-a-kind headsets and out-of-print publications that Lightspeed is relying upon as allegedly invalidating prior art.  (*See* LS Opp. at 1-4.)  That is the reverse of the law.  The unproduced headsets and publications clearly are related to Lightspeed's invalidity claims against the '252 patent, claims for which Lightspeed bears both the burden of proof and burden of production.

The Federal Rules required Lightspeed to produce these headsets and publications during discovery without waiting for a discovery request.  Federal Rule of Civil Procedure 26(b)(1) requires a party to produce "discovery regarding any nonprivileged matter that is relevant to any party's clam or defense."  Federal Rule of Civil Procedure 26(a)(1) requires production of "tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses," and a party must supplement these disclosures throughout the course of the litigation.  Fed. R. Civ. P. 26(e) (emphasis added).  In particular, "the party's duty

to supplement extends both to information included in the [expert] report and to information given during the expert's deposition."  Fed. R. Civ. P. 26(e)(2).

Over one year ago, Bose served on Lightspeed a request for production of "[a]ll prior art and documents that you contend are relevant to the validity or enforceability of the '252 Patent." (Ex. I (Bose Request for Production No. 12) (July 7, 2009).)  Lightspeed should have produced the Audio-Technica headsets and out-of-print publications during discovery on this basis alone. The Court's Local Rules also required Lightspeed to produce the Audio-Technica headsets and out-of-print publications without waiting for a discovery request.  Local Rule 16.6 requires affirmative production of "documents relevant to the invalidity defenses" accompanying the disclosure of a party's Invalidity Contentions.  Lightspeed's failure to produce the Audio-Technica headsets and out-of-print publications is a clear violation of Local Rule 16.6.  *See* L.R. 16.6.

The Court of Appeals for the Federal Circuit and other district courts recognize this burden of production on the party alleging patent invalidity.  <u>Ryco, Inc. v. Ag-Bag Corp.</u>, 857 F.2d 1418, 1423 (Fed. Cir. 1988); <u>Egyptian Goddess, Inc. v. Swisa, Inc.</u>, 543 F.3d 665, 678-679 (Fed. Cir. 2008) ("if the accused infringer elects to rely on the comparison [design patent] prior art as part of its defense against the claim of infringement, the burden of production of that prior art is on the accused infringer"); <u>Spectralytics, Inc. v. Cordis Corp.</u>, 576 F. Supp. 2d 1030, 1049 (D. Minn. 2008); <u>Candela Corp. v. Palomar Med. Techs., Inc.</u>, 2008 WL 5480563 at *2 (E.D. Tex. Dec. 30, 2008).  To hold to the contrary would perversely require the patentee to locate and obtain its own samples of prior art that are asserted by the accused infringer—essentially, the position Lightspeed advocates.

Lightspeed does not dispute that it has not produced any of the specific trial exhibits that Bose identified in its Omnibus Motion *in Limine*, (LS Opp. at 1-4), and that alone is basis to exclude these items and documents from trial. *See* Fed. R. Civ. P. 26; *see also* L.R. 16.6.

### a.   Audio-Technica 910 and AP1300 headsets

Lightspeed's justification for not producing the Audio-Technica headsets – headsets that Lightspeed apparently is relying upon to support its invalidity claim[1] – is that Bose just as easily could have obtained the headsets from Audio-Technica's counsel. (LS Opp. at 1-2.) This argument ignores the fundamental point that, if Lightspeed is relying upon the Audio-Technica headsets in its invalidity case, it was incumbent on Lightspeed pursuant to Rule 26 to obtain and produce the Audio-Technica headsets.[2] *See* Fed. R. Civ. P. 26(a)(1), (b)(1), (e). Bose's technical expert Dr. Gary Koopmann has never had the opportunity to inspect or test these Audio-Technica headsets, and for these reasons, the headsets should be excluded as trial exhibits or basis for invalidity argument from trial.

### b.   Edgar Villchur, "Reproduction of Sound"

It is Lightspeed, not Bose, that identified Edgar Villchur's 1962 publication, "Reproduction of Sound," as a trial exhibit. Lightspeed did not qualify that this exhibit was only a particular excerpt or particular chapter – it identified the entire book. Lightspeed claims that it has "disclosed the relevant textual excerpts" and that it "also produced chapter 12 of the Villchur treatise" to Bose. (LS Opp. at 3.) Even this claim is not true – Lightspeed produced only a

---

[1] It is noted that Lightspeed never identified either of the Audio-Technica headsets as a contested issue for trial. (*See* Joint Pretrial Memorandum (Dkt. #105) at 4-5.)

[2] Lightspeed represented to the Court in its August 27 Opposition that it "has had to subpoena these headsets from Husch Blackwell." (LS Opp. at 3, n.2.) As it turns out, this representation was an utter fabrication. It was not until days later, after repeated requests from Bose to produce the subpoena, that Lightspeed finally issued a subpoena to Audio Technica's counsel on September 1, 2010. (*See* Ex. J (emails to Lightspeed regarding purported Husch Blackwell subpoena); Ex. K (Sept. 1 Lightspeed Subpoena to Husch Blackwell).)

portion of chapter 12.  This so-called "production" is insufficient as a matter of evidence.  If

Lightspeed is relying upon a cherry-picked excerpt of a publication, basic fairness and the

Federal Rules of Evidence require that the entirety of the publication should have been produced.

Fed. R. Evid. 106.  The fact that Lightspeed chose to produce only a few select pages from a

chapter in Mr. Villchur's publication shows that Lightspeed has had this publication in its

possession during discovery, but consciously chose not to produce the entire contents.

### c.   Robert Twiney, "Some Transducer Design Considerations…" and Zwicker & Fastl, "Psychoacoustics:  Facts and Models"

Lightspeed admits that its expert, Dr. Buck, relied upon Robert Twiney's "Some

Transducer Design Considerations…" and Zwicker & Fastl's "Psychoacoustics:  Facts and

Models" in his expert report.  (*See* LS Opp. at 3-4.)  The inquiry should end there:  under Federal

Rules 26(a)(1), 26(b)(1) and 26(e) and Local Rule 16.6, Lightspeed had an affirmative obligation

to produce any documents on which its expert relied in support of his invalidity analysis.

Lightspeed's claim that Bose had an obligation to request production of these publications

(which Bose already did pursuant to its Request for Production No. 12 to Lightspeed) is a

perversion of the Federal and Local Rules, and it is Lightspeed, not Bose, who should bear the

cost of non-compliance.

### 2.   Opinion Testimony from Individuals Not Designated as Experts.

Lightspeed does not appear to dispute that, under Federal Rule of Evidence 701, lay

witnesses who were not designated as experts and did not submit an expert report in this case

cannot offer opinion testimony that is based on scientific, technical or other specialized

knowledge.  (*See* LS Opp. at 4.)  Thus, this motion *in limine* should be granted.

3.      **Parol Evidence.**

Lightspeed's Opposition illustrates the very confusion to which the jury will fall prey if Lightspeed is permitted to introduce the extrinsic evidence emails at trial. Lightspeed states that the parol evidence rule does not apply to willfulness (a true statement). But then, in the same breath, Lightspeed argues that, "The e-mails in question expressly confirm that Lightspeed is permitted to develop and sell a headset having a 'less complaint' driver (*i.e.,* speaker), without fear of infringing the '252 'high compliance driver' patent," followed by several paragraphs explaining how the accused Zulu headset allegedly is within the scope of the 2002 Settlement Agreement. (LS Opp. at 5-6.) This is Lightspeed conflating the breach of contract issue with the willfulness issue, and it is just a glimpse at how Lightspeed intends to confuse the jury.

Lightspeed has no response for why the parties' Integration Clause, paragraph 7A of the Agreement, should not control other than to put forth the non sequitur that the Integration Clause does not apply to matters of contract interpretation. (*See* LS Opp. at 7.) That is precisely why parties put Integration Clauses in agreements. Indeed, Lightspeed's only basis for presenting the emails to the jury is that they are needed to interpret the allegedly ambiguous phrase "no material relationship." (*Id.*) But Lightspeed forgets that contract interpretation, like claim interpretation, is an issue of law for the Court—not the jury—to decide. Nadherny v. Roseland Prop. Co., 390 F.3d 44, 48 (1st Cir. 2004). Thus, even if Lightspeed were correct that the phrase "no material relationship" is ambiguous and requires resort to extrinsic evidence to construe, it would be legal error to hand that task off to the jury.[3]  *See id.*

---

[3] Lightspeed incorrectly contends that the "no material relationship" should be construed against Bose because of the canon that ambiguities may be construed against the drafter. (LS Opp. at 7.) However, Lightspeed misses the point that that canon is most appropriately applied when *the drafter* is claiming ambiguity and seeking to capitalize on that ambiguity. Fed. Ins. Co. v. Commerce Ins. Co., 597 F.3d 68, 70-71 (1st Cir. 2010); *see also* Air Plum Island, Inc. v. Soc'y

Lightspeed is also incorrect that the emails are probative of the willfulness question. First, the test for willfulness is an *objective* one and, therefore, Mr. Schrader's state of mind (as evidenced by the emails, according to Lightspeed) is *irrelevant*.  In re Seagate Technology, LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007) ("The state of mind of the accused infringer is not relevant to this objective inquiry.")  Second, the emails from 2002 do not even reliably reflect Mr. Schrader's state of mind because they are not contemporaneous with Lightspeed's decision (in 2004-2005) to design the accused product.  They are dated years earlier.  Moreover, they do not, as Lightspeed contends, "expressly confirm and inform Mr. Schrader's understanding as to the scope of the Agreement…."  (LS Opp. at 7.)  The emails do not mention Mr. Schrader anywhere, nor was he a participant in the communications.  Similarly, they could not "inform" his decision to begin infringing the '252 patent because he testified in his deposition that he made that decision based *solely* on the agreement itself.  (Bose Mot., Ex. H at 133:8-135:19.)

Finally, Lightspeed ignores the fact that the balance of prejudice would be decisively against Bose were the emails admitted.  They are clearly inadmissible for purposes of the breach of contract issue, and they are irrelevant to willfulness in light of In re Seagate.  At the same time, the likelihood for the jury to become confused and let their knowledge of the emails taint their deliberations is virtually assured.  *See* DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 567 F.3d 1314, 1332 (Fed. Cir. 2009) (affirming on similar facts that, "The risk of jury confusion is apparent.").  Accordingly, the emails should be excluded entirely.

---

For Preservation of New England Antiquities, 70 Mass. App. Ct. 246, 873 N.E.2d 1159, 1165 (2007).  In this case, only Lightspeed contends that that phrase is ambiguous.  Bose has advanced a simple, plain English meaning.  (Bose Mot. at 7-9.)

4.      **Construction of the 2002 Settlement Agreement.**

The parties apparently agree that the Court should resolve the issue of law that contract

interpretation presents and instruct the jury as to the proper interpretation of the disputed contract

language.  Lightspeed just takes issue with Bose's proposed constructions.  Bose's proposed

constructions for the disputed phrases, "so long as those improvements bear no material

relationship to the claim limitations of the 5,181,252 patent," and "future improvement of those

ANR models" were presented in Bose's Motion at pages 8-9 (also citing Bose Corporation's

Memorandum in Support of its Motion for Partial Summary Judgment (Dkt. #78) at 18-20;

Plaintiff Bose Corporation's Opposition to Defendant Lightspeed Aviation Inc.'s Motion for

Summary Judgment (Dkt. #93) at 1-4; and Plaintiff Bose Corporation's Reply in Support of its

Motion for Partial Summary Judgment (Dkt. #103) at 18-19), and Bose stands on that briefing.

5.      **Reference to Inequitable Conduct Counterclaim to Jury.**

Lightspeed contends that it must be permitted to make reference to "facts" that it is using

in its inequitable conduct case as part of its invalidity case.  (LS Opp. at 9.)  The purpose, no

doubt, is to leave the jury with the inference that the '252 patent issued due only to underhanded

dealings by Bose, even if Lightspeed does not expressly utter the words "inequitable conduct."

This should not be permitted.  The facts that Lightspeed cites bear no relevance to Lightspeed's

invalidity case.  Lightspeed has ***no invalidity case with regard to the '542 patent***.  In the Joint

Pretrial Memorandum, Lightspeed identified only the following issues relevant to its invalidity

case:

B. <u>Defendant Lightspeed Aviation, Inc.</u>
                           *   *   *
2.  What priority date the '252 patent is entitled to.
3.  Whether the prior art Telex ANR headset anticipates claims 1 and 5 of the
    '252 patent.

4. Whether the prior art Bose Voyager headset anticipates the asserted claims of the '252 patent.
5. Whether the asserted claims of the '252 patent are invalid as obvious in view of the Telex ANR headset, the Voyager headset, the Wheeler thesis and other prior art.
6. Whether the prior art Telex, Voyager and Wheeler headsets (and others) practice each limitation of the asserted claims.

Lightspeed never mentioned the '542 patent as a contested issue for trial.[4]  Moreover, Lightspeed's expert never opined on invalidity vis-à-vis the '542 patent.  His only mention of the '542 patent was to offer the (legal) opinion that, "It was incumbent upon Bose to inform the Patent Office of the substantive patentability issue with respect to inventorship and the '542 patent."  (Bose Mot., Ex. C (Opening Expert Rpt. of Dr. Marshall Buck Regarding Invalidity) at 68-70.)  That related to inequitable conduct, not invalidity.

It would be grossly prejudicial to Bose to permit Lightspeed to create insinuations that Bose acted inequitably, as those insinuations may lead the jury to find against Bose to remedy the perceived inequitable conduct.  The Court should not allow Lightspeed to taint the jury's deliberations with inferences of inequitable conduct.

**6.    Lightspeed's Alleged Use of Bose's QuietComfort Trademark.**

While Bose does not dispute that "Lightspeed's [alleged] senior use of the QuietComfort mark is directly relevant to Lightspeed's claim for concurrent use of the mark, as pled in its November 2009 Amended Answer and Counterclaim," (LS Opp. at 9), Lightspeed forgets that that counterclaim is being tried to the bench:

> In the event Lightspeed' s Third Counterclaim for concurrent use rights in Bose' s "Quiet Comfort" mark remains in the case, the parties believe it should also be tried to the bench as it pertains solely to equitable relief.

---

[4] The Court should not accept Lightspeed's nebulous "and other prior art" language as satisfying its disclosure requirements.

Joint Pretrial Memorandum (Dkt. #105) at 25.  Lightspeed presents no other argument or basis

why this issue should be presented to the jury.  (*See* LS Opp. at 9-10.)  Accordingly, Bose's

motion should be granted.

**7.      Confidential Treatment of Certain Bose Financial Information.**

Lightspeed's opposition here is just a spiteful attempt to unduly burden Bose.  Bose does

not seek to hide evidence from the jury.  Bose simply wants the protection that Rule 26(c) of the

Federal Rules of Civil Procedure affords litigants—protection from the undue burden that public

disclosure of trade secrets, including sensitive financial data, would entail.  Lightspeed cites no

authority for the premise of its argument:  that a plaintiff relinquishes its rights under Rule 26(c)

when it files a complaint.  (*See* LS Opp. at 11.)  Thus, this motion should be granted.

**8.      Legal Opinions by Lightspeed's Technical Expert.**

Lightspeed does not seem to disagree with the fundamental premise of Bose's motion:

that technical experts like Dr. Buck should not be permitted to offer opinions that are legal in

nature.  (*See* LS Opp. at 11-12.)  Thus, at trial there should be no danger of Dr. Buck wandering

into areas such as what is covered or not covered by the parties 2002 Settlement Agreement,

Patent Office procedures and regulations, inequitable conduct, the applicability of European

Patent Office decisions in U.S. patent litigation, application of obviousness law in view of the

Supreme Court's opinion in <u>KSR Int'l Co. v. Teleflex, Inc.</u>, 550 U.S. 398 (2007), or other such

matters on which he felt compelled to opine in his expert report.

**9.      The European Patent Office's Decision Regarding Bose's European Patent No.
          414,479.**

It is abundantly clear that Lightspeed intends to promote the highly prejudicial inference

that, because the European counterpart to the '252 patent was revoked, the '252 patent is "less

valid."  There is simply no legal support or evidentiary justification to permit Lightspeed to

introduce the European Patent Office's decision regarding the '252 patent's European counterpart to the jury.

Lightspeed relies primarily on one case from the 8th Circuit in 1966 for the proposition that foreign tribunals' decisions regarding foreign patents are relevant to the validity of a U.S. patent.  (*See* LS Opp. at 12.)  Simultaneously, Lightspeed ignores many, more recent, controlling, and contrary decisions.  *See, e.g.*, Medtronic, Inc. v. Daig Corp., 789 F.2d 903, 908 (Fed. Cir. 1986) (German tribunal's decision not binding on patent determination by United States federal court); Stein Assocs., Inc. v. Heat and Control, Inc., 748 F.2d 653, 658 (Fed. Cir. 1984) (decision in United States not binding on British, and vise versa); Heineken Technical Servs., B.V. v. Darby, 103 F.Supp.2d 476, 479-80 (D. Mass. 2000) (Tauro, J.) (noting "the lack of deference provided to foreign patent law judgments"); *see also* Skil Corp. v. Lucerne Prods., Inc., 684 F.2d 346, 351 n.4 (6th Cir. 1982) ("Patent proceedings in other countries are not controlling, in part because the standards of patentability vary widely from country to country.") (citing Timely Prods. Corp. v. Arron, 523 F.2d 288, 295 (2d Cir. 1975); Ditto, Inc. v. Minnesota Mining and Mfg. Co., 336 F.2d 67, 71 (8th Cir. 1964) (prior determination by West German patent court not binding)); Cuno Inc., v. Pall Corp., 729 F. Supp. 234, 238 (E.D.N.Y.1989) ("Where the prior adjudication was by a foreign nation's court applying its patent law to its patents, the barriers to reliance on the foreign judgment for collateral estoppel purposes become almost insurmountable.").

Notably, the only two cases Lightspeed could muster in support of the proposition that evidence regarding foreign counterparts is relevant in a U.S. court ***did not involve juries***.  (*See* LS Opp. at 13.)  Caterpillar Tractor Co. v. Barco, S.P.A., 714 F.2d 1110, 1116 (Fed. Cir. 1983), stemmed from a bench trial.  *See* 714, F.2d at 1111.  Similarly, Seiyaku Co. v. U.S. Int'l Trade

Comm'n, 109 F.3d 726, 733 (Fed. Cir. 1997), was an appeal from a case before the International

Trade Commission, in which an Administrative Law Judge makes all factual and legal findings.[5]

109 F.3d at 727.  Furthermore, both cases involved attempts to use representations made by the

patentee in prosecution of the foreign counterpart against the patentee (only one of which was

successful).  That is not the case here.  Lightspeed does not seek to introduce statements Bose

made in foreign prosecution.  Rather, Lightspeed seeks to use the *fate* of the European

counterpart to suggest that the U.S. patent deserves the same fate.  Neither case cited by

Lightspeed involved a finding of invalidity by a foreign patent office being used to invalidate a

U.S. patent.  *See* Caterpillar, 714 F.2d at 1116 (finding patentee's statements in foreign

prosecution were *insufficient* to deny application of the doctrine of equivalents and inapplicable

to claim construction); Seiyaku, 109 F.3d at 733-34 (using patentee's representations in foreign

prosecution to make findings regarding range of equivalents patentee was entitled to under

doctrine of equivalents).

It is also not quite true that "the obviousness standard used by the EPO (*i.e.*, inventive

step) is the equivalent standard used by the PTO," as Lightspeed alleges.  *See* John Richards,

"Obviousness and Inventive Step - New Differences?," 2010 Fordham Annual IP Conference,

available at http://www.fordhamipinstitute.com/ip_conference/documents/

John_Richards_Obviousness_and_Inventive_Step_New_Differences.pdf (detailing differences

between analyses of obviousness post-KSR in the United States and inventive step in European

patent law, and noting that the obviousness analysis "scarcely fits with the EPO's approach" to

inventive step analysis).

---

[5] It should also be noted that, in general, cases in the ITC do not follow the Federal Rules of
Evidence.

Finally, as for the contention that Lightspeed has an invalidity case involving the European patent, (*see* LS Opp. at 12, 13), it must be noted again that Lightspeed listed no such issue for trial.  (*See* Joint Pretrial Memorandum (Dkt. #105) at 4-5.)  Nor has Lightspeed's expert rendered a supportable opinion on the subject.  Dr. Buck's expert report merely states that he "agree[s] with and adopt[s] each of the arguments expressed by Sennheiser."  (Bose Mot., Ex. C (Opening Expert Rpt. of Dr. Marshall Buck Regarding Invalidity) at 47.)  Yet, Dr. Buck admitted in his deposition that he never obtained or tested the headset that was used as the "invalidating" reference in Sennheiser's appeal.  (Bose Mot., Ex. B (Buck Dep. Tr.) at 236:3-7.)

Because the EPO's decision under European patent law regarding a European patent has no legal effect on the validity of the '252 patent, it would be highly prejudicial to Bose for the jury to hear attorney argument or expert testimony regarding it, as the jury would likely be confused into thinking that it has relevance.  As such, Lightspeed should be precluded form mentioning the EPO decision.

**10.    Reference to or Display of Johnson or Wurtz Telex ANR Headsets as Prior Art to Jury.**

Curiously, Lightspeed asserts that, "There is no dispute that the [Telex] headset is 'prior art' to the filing date of the '252 patent."  (LS Opp. at 13.)  That is *precisely* what is at issue. And what the jury will decide is, essentially, who invented the invention of claim 1 first.  To persuade the jury that Telex came first, Lightspeed intends to show them two headsets (the so-called Johnson and Wurtz headsets), *neither of which existed prior to the filing date of the '252 patent*.  Putting aside what Telex allegedly invented on paper, and what Telex allegedly demonstrated at Oshkosh (of which no one has found a physical sample)—issues the jury will decide—there is no dispute that the actual exhibits Lightspeed intends to show the jury (Trial Exhibits CI and CJ) were commercial versions sold *after* Bose filed for its patent.  (*See* LS Opp.

at 14 (Lightspeed conceding that "may have been manufactured shortly after Bose filed its application for the '252 patent in August 1989.").) ***They are not prior art.*** Thus, they are not evidence of anything.

The issue of who invented the invention of claim 1 first comes down to the weight of the evidence. Lightspeed has no actual headset that existed prior to the filing date of Bose's patent. Instead, Lightspeed relies on a compilation of questionable documentation connected by questionable testimony to establish that *something* existed prior to Bose's invention date that practiced claim 1. To bolster its chances, Lightspeed will show these non-prior art headsets to the jury and hope to confuse the jury that these physical embodiments are proof of prior inventorship when they are not. Lightspeed should be required to rely on its evidence such as it is, and should not be permitted to present faux prior art to the jury.

## 11.    Rodney Crawford's Opinion Testimony on the Issue of Patent Infringement Damages

Lightspeed's Opposition establishes that Lightspeed is as out-of-touch with respect to the current legal standards for determining patent infringement damages as is its expert, Rodney Crawford. Lightspeed contends, for example, that the current legal standard regarding the first *Panduit* factor (demand for the patented product) requires "that the patented invention ***must*** 'contribute . . . substantially" to consumer demand for the product." (LS Opp. at 18 (emphasis added).) In support, Lightspeed (and presumably Mr. Crawford) relies upon the District of Massachusetts's decision in <u>Haemonetics Corp. v. Baxter Healthcare Corp.</u>, an opinion that issued on January 7, 2009. Lightspeed ignores the fact that the current standard and controlling law regarding the first *Panduit* factor issued in <u>DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.</u> from the Federal Circuit on ***June 1, 2009*** – more recently than and superseding <u>Haemonetics Corp. v. Baxter Healthcare Corp.</u>   In that decision, the Federal Circuit stated, without any

ambiguity (and contrary to Lightspeed's characterization of the first *Panduit* factor) that "[t]his [first *Panduit*] factor ***does not require*** any allocation of consumer demand among the various limitations recited in a patent claim.  Instead, the first Panduit factor simply asks whether demand existed for the 'patented product,' *i.e.*, a product that is 'covered by the patent in suit'. . .".  <u>DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.</u>, 567 F.3d 1314, 1329-30 (Fed. Cir. 2009) (citations omitted) (emphasis added).  Unless Lightspeed's position is that an earlier-in-time district court opinion is controlling law over a later-in-time Federal Circuit opinion, Lightspeed is simply wrong on the law.

It is further worth noting that Lightspeed even gets the Court's holding in <u>Haemonetics Corp. v. Baxter Healthcare Corp.</u> wrong.  That court did not state "that the patented invention must 'contribute . . . substantially" to consumer demand for the product," as Lightspeed overstates.  (LS Opp. at 18.)  It held that "case law ***suggests*** that a patented invention must only 'contribute[ ] substantially' to consumer demand and that ***other factors*** may be used to demonstrate demand."  <u>Haemonetics Corp. v. Baxter Healthcare Corp.</u>, 593 F. Supp. 2d 303, 305 (D. Mass. 2009) (emphasis added).

Lightspeed's defense of Mr. Crawford's analysis of the second *Panduit* factor (absence of acceptable non-infringing substitutes) is also erroneous.  Mr. Crawford's rebuttal to Bose's damages expert (Michael Dansky) is predicated on the existence of what Mr. Crawford calls "non-infringing alternatives."  (Bose Mot., Ex. F at ¶¶ 34(b), 54-56.)  It is not sufficient to rebut the second *Panduit* factor merely by asserting "non-infringing alternatives" – rebuttal must be based on the existence "***acceptable*** noninfringing alternatives."  Not once in his entire report does Mr. Crawford analyze or conclude whether any of his asserted "non-infringing alternatives" is "acceptable."  Indeed, Mr. Crawford uses the word "acceptable" only once in the context of

lost profits analysis, when he lists the four *Panduit* factors for lost profits analysis.  (Bose Mot., Ex. F at ¶ 45.)  The word "acceptable" appears nowhere else in Mr. Crawford's lost profits analysis.  (*See id.* at ¶¶ 54-59.)  For the majority of Mr. Crawford's so-called "non-infringing alternatives," Mr. Crawford does not even analyze whether the alternative is "non-infringing." (*See* Bose Mot. at 18-19.)

Lightspeed's attorney argument that the Thirty 3G headset is an "acceptable" non-infringing alternative illustrates Lightspeed's (and Mr. Crawford's) shaky grasp of damages caselaw.  (LS Opp. at 20.)  First, nowhere in Mr. Crawford's report does Mr. Crawford conclude – as Lightspeed's lawyers now allege – that the Thirty 3G is an "acceptable" non-infringing alternative.  (*See* Bose Mot., Ex. F at ¶¶ 39(a), 55.)  Furthermore, Lightspeed's basis for concluding that the Thirty 3G is "acceptable" – "because Lightspeed has sold thousands of these headsets over the years" (LS Opp. at 20), falls short of the legal standard.  "[T]he mere existence of a competing device does not necessarily make the device an acceptable substitute." Cohesive Tech., Inc. v. Waters Corp., 543 F.3d 1351, 1373 (Fed. Cir. 2008) (quoting Standard Havens Prods., Inc. v. Gencor Indus., Inc., 953 F.2d 1360, 1373 (Fed. Cir. 1991)).  Not once does Lightspeed or Mr. Crawford analyze whether the Thirty 3G headset has the advantages of the Lightspeed Zulu headset, for example.  (*See* Bose Mot., Ex. F at ¶¶ 39(a), 55.) Stryker Corp. v. Intermedics Orthopedics, Inc., 96 F.3d 1409, 1418 (Fed. Cir. 1996).  Incredibly, Mr. Crawford admits that he has never examined an actual Lightspeed Zulu or a Lightspeed Thirty 3G.  (Bose Mot., Ex. E (Crawford Dep. Tr.) at 77:3-78:2.)  He admits that he has no knowledge of how the Thirty 3G and the Zulu compare in terms of passive attenuation, active attenuation, or clamping force (comfort).  (*Id.* at 81:7-18, 102:18-103:22.)

With respect to the fourth *Panduit* factor, Lightspeed contends that Mr. Crawford "was forced to use Lightspeed's profits as a surrogate for Bose's profits . . . ." (LS Opp. at 21.)  To be clear, no one "forced" Mr. Crawford to do anything; Mr. Crawford is unwilling to rely upon Bose's profit per headset because to do so would bring his damages calculations closer to Bose's. Furthermore, Mr. Crawford identifies no basis why Lightspeed's profit per headset is in any way probative of Bose's profit per headset.  (Bose. Mot., Ex. F at ¶ 84.)

In any event, Lightspeed's defense of Mr. Crawford's methodology does not undermine the inescapable conclusion that Mr. Crawford is measuring Bose's lost profits precisely in terms of **Lightspeed's** gained profits.  In other words, Mr. Crawford is calculating Bose's lost profits based on a disgorgement of Lightspeed's profits.  Simply put, Mr. Crawford's methodology regarding the fourth *Panduit* factor is indisputably wrong.  It is inappropriate to use the infringer's profits to compensate for the patentee's lost profits under *Panduit*.  King Instruments Corp. v. Perego, 65 F.3d 941, 948-49 (Fed. Cir. 1995).  And to subject the jury to such a flawed analysis would run the risk of misleading the jury.

Lightspeed's rationalization of Mr. Crawford's reasonable royalty analysis fails to address even the most basic problems with Mr. Crawford's reliance on the two Bose-Lightspeed settlement agreements.  Incredibly, Lightspeed concedes that Mr. Crawford assumed, for the purposes of his hypothetical licensing negotiation, that the '252 patent was not enforceable and that Lightspeed was not a willing licensee.  (LS Mot. at 21-22.)[6]  It was highly improper for Mr. Crawford to do so.  *See* IP Innovation LLC v. Red Hat, Inc., 2010 WL 986620, *1 (E.D. Tex. Mar. 2, 2010) ("Critically, the hypothetical negotiation presumes that the patentee is a willing

---

[6] As stated earlier in this Reply, Bose moves pursuant to Local Rule 7.1 to strike pages 21-22 of Lightspeed's Opposition for exceeding the 20-page limit, without having sought or receiving leave from the Court.  *See* L.R. 7.1(b)(4).  Consequently, the Court should disregard Lightspeed's argument on pages 21-22.

licensor and the alleged infringer is a willing licensee, with both parties assuming the patent was valid, enforceable, and infringed."). Lightspeed contends that the 2002 Agreement is a "compelling input[] to the range of royalties that the parties would have agreed to in a hypothetical negotiation in this case," (LS Opp. at 22), yet conspicuously fails to address the fact that the 2002 Agreement did not involve any exchange of money and therefore is not probative of any royalty rate. (Bose Mot. at 20.) Lightspeed also fails to address the fundamental distinctions between the 2006 Agreement and the hypothetical licensing negotiation in this matter. In the 2006 Agreement, Lightspeed was the licensor and the technology was an electronics patent ("auto shut-off") relating to a relatively minor feature of headsets. In the hypothetical licensing negotiation here, Bose, not Lightspeed, is the licensor, and the technology at issue with the '252 patent impacts nearly every acoustical and mechanical aspect of the headset design (passive noise cancellation, earcup size, weight and overall comfort). (Bose Mot. at 20.) Thus, Mr. Crawford's analysis is misplaced and entirely erroneous.

Lightspeed's defense of Mr. Crawford's credentials speaks for itself. At best, Lightspeed is able to muster only vague generalities regarding Mr. Crawford's ostensible experience in licensing transactions, quoting Mr. Crawford as saying, "I have been involved in valuing intellectual property," and "I have had clients that were engaged in licensing activities…and have worked with them in terms of those arrangements, and in some cases, negotiation of those arrangements." (LS Opp. at 16.) If the Court searches Mr. Crawford's CV, deposition testimony, or Lightspeed's opposition for a single example in which Mr. Crawford was involved in a patent licensing negotiation outside the context of litigation, its search will be in vain. At his deposition, Mr. Crawford was unwilling, or unable, to identify with specificity any instances in which he participated directly in a licensing negotiation, particularly one not in the context of

litigation, and Lightspeed's Opposition does not alter this conclusion.  (Bose Mot., Ex. E at 43:20-44:11, 52:8-54:16.)  It would be impossible to cross-examine Mr. Crawford regarding his alleged patent transactional experience if he is unwilling to divulge any details of that experience.  Given the scope of errors in Mr. Crawford's patent damages methodology, Lightspeed's reference to Mr. Crawford giving seminars on intellectual property valuation and damages (LS Opp. at 16) hardly inspires confidence.

Mr. Crawford's *curriculum vita* also speaks for itself.  Virtually no experience in patent transactions is to be found.  As Bose pointed out in its motion *in limine*, Mr. Crawford has scant experience with patent infringement damages calculations.  (Bose Mot. at 15.)  His CV indicates that he is a CPA who generally focuses on automotive industry clients experiencing non-IP related issues such as supply agreement disputes and bankruptcies.  (*See* Bose Mot., Ex. D.)

The pertinent inquiry, as this Court has noted in the past, is "whether the testimony of the expert would be helpful to the jury in resolving a fact in issue."  McGovern v. Brigham & Women's Hosp., 584 F. Supp. 2d 418, 423 (D. Mass. 2008; Young, J.) (quoting Cipollone v. Yale Indus. Prods., 202 F.3d 376, 380 (1st Cir. 2000)).  The answer to that inquiry as it pertains to Mr. Crawford's opinions is a resounding "no."  This Court also has noted previously that, in exercising its gatekeeping role, the Court "must examine whether the [expert] testimony rests on a reliable foundation."  McGovern, 584 F. Supp. 2d at 423.  The foundation of Mr. Crawford's damages analysis is demonstrably flawed.  The myriad problems with Mr. Crawford's damages analysis are not issues of fact, as Lightspeed would have the Court believe, but rather relate to fundamental inaccuracies with Mr. Crawford's damages *methodology* and the misapplication of damages methodology.  The demonstrable flaws in Mr. Crawford's damages methodology infect nearly all of his opinions, and it would be severely prejudicial for Mr. Crawford to represent to

the jury that his opinions are based on the proper legal standards.  For the foregoing reasons, Mr.

Crawford's testimony regarding patent infringement damages should be excluded in its entirety.


## **CONCLUSION**

For the reasons set forth above, as well as those presented in Bose's motion, Bose

respectfully requests the following *in limine* rulings:

1. Precluding non-disclosed evidence;

2. Precluding opinion testimony from individuals not designated as experts;

3. Precluding the admission and use of certain parol evidence;

4. Requesting the Court's construction of the pertinent provisions of the parties' 2002 Settlement Agreement;

5. Precluding any reference to the jury regarding alleged inequitable conduct;

6. Precluding testimony, evidence, or argument from Lightspeed concerning its alleged use of Bose's QuietComfort trademark;

7. Requesting confidential treatment of certain Bose financial information;

8. Precluding the offering of legal opinions by Lightspeed's technical expert;

9. Precluding the admission, use, or mentioning of the European Patent Office's decision regarding Bose's European Patent No. 414,479;

10. Precluding any reference to or display of the Johnson or Wurtz Telex ANR headsets as prior art; and

11. Precluding Rodney Crawford from giving opinion testimony on the issue of patent infringement damages in this case.

Respectfully submitted,

FISH & RICHARDSON P.C.

Dated:  September 3, 2010

By:  /s/ Steven A. Bowers
    Ruffin B. Cordell (admitted *pro hac*)
    Andrew R. Kopsidas (admitted *pro hac*)
    Steven A. Bowers (admitted *pro hac*)

    FISH & RICHARDSON P.C.
    1425 K Street, N.W., 11th Fl.
    Washington, D.C. 20005
    Telephone: (202) 783-5070
    Facsimile: (202) 783-2331

    Juanita R. Brooks (admitted *pro hac*)

    FISH & RICHARDSON P.C.
    12390 El Camino Real
    San Diego, CA 92130
    Telephone: (858) 678-5070
    Facsimile: (858) 678-5099

    Charles Hieken (233,640)

    FISH & RICHARDSON, P.C.
    225 Franklin Street
    Boston, MA  02110-2804
    Telephone: (617) 542-5070
    Facsimile: (617) 542-8906

    Attorneys for Plaintiff
    BOSE CORPORATION

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 3, 2010 a true and correct copy of the foregoing document was filed with the Clerk of the Court for the District of Massachusetts via the ECF System which will send notification to all registered participants of the ECF System.

<u>    /s/ Steven A. Bowers            </u>
Steven A. Bowers
