IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BOSE CORPORATION,

     Plaintiff,

    v.

LIGHTSPEED AVIATION, INC.,

     Defendant.

Civil Action No. 1:09-cv-10222-WGY

**<u>BOSE CORPORATION'S TRIAL BRIEF REGARDING BENCH ISSUES</u>**

## TABLE OF CONTENTS

I.      INEQUITABLE CONDUCT ........................................................................................... 1

    A.      The Legal Standard for Inequitable Conduct ........................................................ 1

    B.      Inventorship ........................................................................................................ 2

    C.      Failure to Disclose Material Prior Art ................................................................. 9

    D.      Proposed Findings of Fact ................................................................................. 11

    E.      Requested Rulings of Law ................................................................................. 12

II.     CONCURRENT USE ............................................................................................... 13

    A.      Lightspeed is Not Entitled to Concurrent Use Rights ......................................... 13

    B.      Proposed Findings of Fact ................................................................................. 19

    C.      Requested Rulings of Law ................................................................................. 20

# TABLE OF AUTHORITIES

**CASES**

*Akron Polymer Container Corp. v. Exxel Container*,
  148 F.3d 1380 (Fed. Cir. 1998)...........................................................................................7

*AmBrit, Inc. v. Kraft, Inc.*,
  812 F.2d 1531 (11th Cir. 1986) ........................................................................................15

*CDS, Inc. v. I.C.E.D. Management, Inc.*,
  80 U.S.P.Q.2d 1572 (T.T.A.B. 2006) ........................................................................ passim

*Central West Oil Corp. v. Continental Oil Co.*,
  135 U.S.P.Q. 469 (T.T.A.B. 1962) ...................................................................................17

*Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.*,
  892 F.2d 1021 (Fed. Cir. 1989)........................................................................................15

*Crash Dummy Movie, LLC v. Mattel, Inc.*,
  601 F.3d 1387 (Fed. Cir. 2010)........................................................................................14

*Dayco Prods., Inc. v. Total Containment, Inc.*,
  329 F.3d 1358 (Fed. Cir. 2003)........................................................................................10

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009)..........................................................................................5

*Fleming Cos. v. Thriftway, Inc.*,
  21 U.S.P.Q.2d 1451 (T.T.A.B. 1991) ..........................................................................16, 18

*Fuddruckers, Inc. v. Fudpucker's, Inc.*,
  436 F. Supp. 2d 1260 (N. D. Fla. 2006)...........................................................................14

*Gray v. Daffy Dan's Bargaintown*,
  823 F.2d 522 (Fed. Cir. 1987)..........................................................................14, 16, 17, 18

*Herbert v. Lisle Corp.*,
  99 F.3d 1109 (Fed. Cir. 1996)..........................................................................................10

*In re Beatrice Foods Co.*,
  429 F.2d 466 (C.C.P.A. 1970) .....................................................................................16, 18

*In re Place for Vision, Inc.*,
  196 U.S.P.Q. 267 (T.T.A.B. 1977) ...................................................................................17

*Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*,
  863 F.2d 867 (Fed. Cir. 1988)..................................................................................4, 6, 10

*Over the Rainbow, Ltd. v. Over the Rainbow, Inc.*,
227 U.S.P.Q. 879 (T.T.A.B. 1985) ...................................................................17

*Peyrat v. L. N. Renault & Sons, Inc.*,
247 F. Supp. 1009 (S.D.N.Y. 1965)................................................................15

*Praxair, Inc. v. ATMI, Inc.*,
543 F.3d 1306 (Fed. Cir. 2008)........................................................................1

*Ring Plus, Inc. v. Cingular Wireless Corp.*,
--- F.3d ---, 2010 WL 3064354 (Fed. Cir. Aug. 6, 2010) .............................2, 5, 10

*Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*,
537 F.3d 1357 (Fed. Cir. 2008).................................................................1, 2, 7

*Symantec Corp. v. Computer Assocs. Int'l, Inc.*,
522 F.3d 1279 (Fed. Cir. 2008)......................................................................7, 9

*T & T Mfg. Co. v. A. T. Cross Co.*,
587 F.2d 533 (1st. Cir. 1978)..........................................................................15

*Texas Meat Packers, Inc. v. Rueckert Meat Co.*,
143 U.S.P.Q. 325 (T.T.A.B. 1964) ...................................................................17

**STATUTES**

15 U.S.C. § 1052(d) ...............................................................................14, 16, 17, 18

15 U.S.C. § 1127 ...........................................................................................14, 15

35 U.S.C. § 102(b) ...............................................................................................9

35 U.S.C. § 102(e) .........................................................................................4, 11

**OTHER AUTHORITIES**

37 C.F.R. § 2.99(e)..............................................................................................16

3 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 17:1 (4th ed.
2007) ...............................................................................................................15

Pursuant to the Court's Procedural Order of July 13, 2010 (Dkt. #104), Plaintiff Bose

Corporation respectfully submits the following trial brief on those issues that will be tried to the

bench, *i.e.*, inequitable conduct (Lightspeed Fourth and Fifth Counterclaims) and concurrent use

of Bose's QUIET COMFORT trademark (Lightspeed's Third Counterclaim).

## I.      INEQUITABLE CONDUCT

Lightspeed's Fourth and Fifth Counterclaims request that the Court find the asserted

patent unenforceable for inequitable conduct.  (Defendant's Amended Answer to Complaint,

Affirmative Defenses, Counterclaim and Jury Demand (Dkt. # 28) (hereinafter, "Am. Answer")

at 12-14.)  In the Fourth Counterclaim, Lightspeed alleges that Bose committed inequitable

conduct by misrepresenting the patent's inventorship.  (*Id.* at 12-13.)  In the Fifth Counterclaim,

Lightspeed alleges that Bose committed inequitable conduct by intentionally withholding a

material prior art reference from the U.S. Patent & Trademark Office ("PTO"), namely Bose's

Voyager headset.  Both counterclaims fail on the evidence as well as the law.

### A.      The Legal Standard for Inequitable Conduct

To prove inequitable conduct, Lightspeed "must present evidence that the applicant (1)

made an affirmative misrepresentation of material fact, failed to disclose material information, or

submitted false material information, and (2) intended to deceive the [PTO]."  *Star Scientific,*

*Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008) (citation omitted).

Lightspeed must prove "at least a threshold level of each element—*i.e.*, both materiality and

intent to deceive . . . by clear and convincing evidence."  *Id.*  One cannot be inferred from the

existence of the other.  *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1313 (Fed. Cir. 2008) ("a

showing of materiality alone does not give rise to a presumption of intent to deceive.").  The

Federal Circuit has characterized this as an "elevated evidentiary burden" on the party alleging

inequitable conduct. *Star Scientific*, 537 F.3d at 1365. Even if Lightspeed meets this elevated evidentiary burden with respect to both materiality and intent, "the district court must still balance the equities to determine whether the applicant's conduct before the PTO was egregious enough to warrant holding the entire patent unenforceable." *Id*. "The need to strictly enforce the burden of proof and elevated standard of proof in the inequitable conduct context is paramount because the penalty for inequitable conduct is so severe…." *Id.* Even where materiality and intent are both established by clear and convincing evidence, the court may still decline to render the patent unenforceable. *Id.* The Court's factual findings as to materiality and deceptive intent will be reviewed for clear error, and the ultimate decision on inequitable conduct will be reviewed for abuse of discretion. *Ring Plus, Inc. v. Cingular Wireless Corp.*, --- F.3d ---, 2010 WL 3064354 at *2 (Fed. Cir. Aug. 6, 2010).

### B.     Inventorship

In its Fourth Counterclaim, Lightspeed contends that Bose committed inequitable conduct by deceiving the PTO about the true inventorship of the '252 patent. (Am. Answer at 12-13.) This counterclaim fails because, at no time, did Bose intend to deceive the PTO, and because Bose's actions with respect to the inventorship of the '252 patent were not even material to the patentability of the '252 patent.

#### 1)     Factual Background

The original filed patent application for the '252 patent listed two inventors: Roman Sapiejewski and John Breen. (Tr. Ex. 2 at Bose-LS 000017.) During prosecution, the Patent Examiner rejected certain claims based on a prior art Bose patent ("the '542 patent"). (*Id.* at Bose-LS 000039.) The '542 patent is concerns the use of active noise cancellation in headphones, but it does not disclose the concept of a high compliance driver. (*See* Tr. Ex. 137.)

In response to the Patent Examiner's rejection, Bose's prosecution counsel, Mr. Chuck Hieken, argued *inter alia* that the '542 patent does not disclose a high compliance driver.  (Tr. Ex. 2 at Bose-LS 000048-52.)  Mr. Hieken simultaneously sought to moot the Patent Examiner's argument by claiming priority to the '542 patent, thus making it ineligible to be used as prior art against the '252 patent application.  (*Id*. at Bose-LS 000046-47, 49.)  The Patent Examiner did not permit the priority claim because the '542 patent listed only Mr. Sapiejewski as an inventor while the '252 patent application listed both Messrs. Sapiejewski and Breen as inventors.  (*Id*. at Bose-LS 000063-64.)  He also responded to Mr. Hieken's argument that the '542 patent does not disclose a high compliance driver by combining it with another prior art reference, a combination which, the Patent Examiner argued, rendered claim 1 obvious.  (*Id*. at Bose-LS 000065-66.)

In response, Mr. Hieken deleted dependent claim 4, which he believed to be Mr. Breen's only contribution, and modified the named inventors on the patent to include only Mr. Sapiejewski, making the '252 patent application's inventorship identical to that of the '542 patent.  (*Id*. at Bose-LS 000073, 75.)  This move, perfectly permissible under PTO procedures, cleared the way for him to claim priority to the '542 patent.  (*See id*. at Bose-LS 000080.)

However, instead of allowing the patent to issue, the Patent Examiner rejected the claims by substituting a different prior art Bose patent ("the '675 patent") for the '542 patent.  The new rejection was, in substance, identical to the previous rejection based on the '542 patent.  Mr. Hieken successfully traversed this rejection on the merits, arguing as before that the cited prior art did not disclose a high compliance driver (*id*. at Bose-LS 000138-43), and the Patent Examiner allowed the '252 patent to issue (*id*. at Bose-LS 000145.).

When the '252 patent issued, it listed both Messrs. Sapiejewski and Breen on its face as inventors, despite Mr. Hieken's cancellation of claim 4 and removal of Mr. Breen.  Seeing this as

an error, Mr. Hieken brought it to the PTO's attention, filing a certificate of correction. (*Id*. at

Bose-LS 000155-56.) The PTO granted the certificate of correction.

Mr. Breen was deposed in a litigation involving the '252 patent in 2008, and he testified

that he contributed to the invention of claims 2 and 3 (which were never cancelled). In response

to this new information, Mr. Hieken filed another certificate of correction to re-add Mr. Breen as

an inventor. (*Id*. at Bose-LS 374536-40.) The certificate of correction was granted and the PTO

issued a notice stating that the error had occurred "with no deceptive intent." (*Id*. at Bose-LS

374541.)

### 2)      Bose Did Not Commit Inequitable Conduct

It is important to define at the outset what Lightspeed contends is the deceitful act Bose

committed, for without clear and convincing evidence of one, there can be no inequitable

conduct. In its Amended Answer, Lightspeed alleged that, "By filing the amendment and

petition to delete John Breen as a joint inventor of claim 2 [*sic*, claim 4], Bose and/or Messrs.

Sapiejewski, Breen and Hieken intentionally deceived the PTO to overcome the rejection under

35 U.S.C. § 102(e) over the '542 Patent."[1] (Am. Answer at 13.) This allegation necessarily

---

[1] In responding to Bose's motion for summary judgment, Lightspeed indicated that its inequitable conduct theory was based on the fact that Bose "did not inform the PTO of the impact that removing Mr. Breen had to the original prosecution, namely overcoming a rejection to secure allowance of the '252 patent over certain prior art." (Lightspeed's Opp. to Bose's Motion for Summary Judgment (Dkt. #95) at 16.) This is a different act than the one Lightspeed pled. That allegation is not included in Lightspeed's Amended Answer, although it would have been required to be included in pleading the claim. *See* Fed. R. Civ. P. 9. Instead, Lightspeed is limited to what it pled. Furthermore, once Bose learned that Mr. Breen was truly an inventor, Bose complied with its duty of candor before the PTO in seeking a new certificate of correction. Bose was not under an obligation to "inform the PTO of the impact" of that move by seeking reexamination of the patent. *Cf. Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 875-76 (Fed. Cir. 1988) (no obligation on patentee's part to seek reissue). In fact, there was no need to inform the Examiner because the Examiner who reviewed the certificate of correction was the same Examiner who originally prosecuted the patent application. (*Compare* Tr. Ex. 2 at Bose-LS 000070 *with id*. at 374541.)

requires that Messrs. Sapiejewski, Breen and/or Hieken knew that Mr. Breen was being deleted

despite being an inventor of more than just claim 4, and purposefully withheld knowledge of Mr.

Breen's contribution to the other claims with specific intent to deceive the PTO. That allegation

is not supported by any evidence. In fact, it is contradicted by the evidence.

Lightspeed must establish—by clear and convincing evidence—that Bose "specifically

intended to deceive the PTO" by knowingly misrepresenting the patent's inventorship. *See Ring*

*Plus*, --- F.3d ---, 2010 WL 3064354 at \*4; *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d

1312, 1327 at n.3 (Fed. Cir. 2009). The only evidence on this point establishes unmistakably

that that was not the case:

> Q.   Mr. Hieken, when you took actions to remove
> Mr. Breen as an inventor, did you intend to
> deceive the patent office?
>
> A.   No.

(Hieken Dep. Tr. at 69:25-70:3.) Indeed, Mr. Hieken confirmed that his actions were informed

by what he believed to be the truth:

> Q.   Okay. Now, so as of the time you had made
> that amendment you felt that there were no claims
> that covered any inventor contribution by Breen?
>
> A.   That was my understanding.

(*Id.* at 21:19-23.)

> Q.   Okay. On page 75, under remarks, you said
> that the -- you've amended to delete Inventor
> Breen because his only contribution was to claim
> 4 cancelled in the amendment, correct?
>
> A.   I said, the identification of inventors has
> been amended to delete Inventor Breen because his
> only contribution was to claim 4 cancelled in
> this amendment in conformity with 37 CF4, section
> 148. **And that was an accurate statement as I**
> **understood it at the time**.
>
> Q.   Okay. Now, so as of the time you had made
> that amendment you felt that there were no claims
> that covered any inventor contribution by Breen?

```
A.   That was my understanding.
```

(*Id.* at 21:7-23 (emphasis added).)  He further confirmed that the amendments he made were

made so that the patent would reflect what he believed to be its proper inventorship:

```
Q.   If I look at Exhibit 6, it says you are
making the correction because Mr. Breen indicated
during his deposition that he was a co-inventor
of claim 3.

A.   That is correct.

Q.   Why did you do that?

A.   Because we wanted to have the patent reflect
the proper inventors.
```

(*Id.* at 66:13-20.)

   In the absence of evidence, Lightspeed relies entirely on insinuations and inferences to

portray an honest mistake as something which warrants the most severe penalty.  But honest

mistakes do not even approach the requisite specific intent to deceive the PTO.  *Kingsdown Med.*

*Consultants v. Hollister, Inc.*, 863 F.2d 867, 876 (Fed. Cir. 1988) (*en banc* in relevant part)

(holding that even "gross negligence does not of itself justify an inference of intent to deceive").

Lightspeed's Rule 30(b)(6) witness with respect to Lightspeed's inequitable conduct

counterclaim admitted that Lightspeed has no evidence of an intent to deceive by Bose:

```
Q. So my question is: What is the evidence that
Bose and/or Messrs. Sapiejewski, Breen, and
Hieken intentionally deceived the PTO?

THE WITNESS: Are you going to object?

MR. LeROY: Object on foundation, but you can go
ahead and answer.

THE WITNESS: I'm not personally aware of any
specific evidence to support the "intentionally
deceived" statement.
                    *   *   *
Q.  Sure.  In making this counterclaim, does
Lightspeed have any evidence that the filing of
the amendment and petition to delete John Breen
as a joint inventor was a consequence of
oversight or mistake as opposed to intent to
```

deceive the PTO?

                        *    *    *

THE WITNESS: Oh, *I'm not aware of any*.

(Schrader Dep. Tr. at 169:15-170:19 (emphasis added).)

Lightspeed's inferences cannot replace actual evidence. *Star Scientific*, 537 F.3d at 1365 (claimant must prove "at least a threshold level of each element—*i.e.*, both materiality and intent to deceive . . . by clear and convincing evidence.").  Moreover, any inference of deceptive intent must be "the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard." *Id.* at 1366.  "When examining intent to deceive, a court must weigh all the evidence, including evidence of good faith." *Akron Polymer Container Corp. v. Exxel Container*, 148 F.3d 1380, 1384 (Fed. Cir. 1998).  Here, the evidence compels an inference that Mr. Hieken simply made an innocent mistake when he believed Mr. Breen's only contribution was to claim 4.  For example, once the patent issued listing Mr. Breen as an inventor, incorrectly as Mr. Hieken believed, Mr. Hieken went out of his way to correct the error. (Tr. Ex. 2 at Bose-LS 000155-56.)  There would have been no need to do that had Mr. Hieken intended to deceive the PTO about inventorship simply to avoid a prior art reference.  More importantly, there is *no* evidence—direct or circumstantial—to support an inference that this was anything more than an innocent mistake.  Lightspeed's case simply cannot amount to clear and convincing evidence of a "specific intent to deceive."

Finally, Bose's actions with respect to inventorship were not even material to the patentability of the '252 patent.  Information is material when "a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent." *Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1297 (Fed. Cir. 2008).  Mr. Hieken substantively refuted the Patent Examiner's argument that the '542 patent was invalidating prior

art and, in response, the Examiner substituted the primary reference in his rejection from the

'542 patent to the '675 patent.  Thus, Mr. Hieken's change in inventorship did not make the '252

patent application patentable.  Rather, his substantive explanation of why the Examiner's

rejection based on **the '675 patent** was insufficient is what allowed the patent to issue.  (Tr. Ex. 2

at Bose-LS 000138-43, 145.)

 A side-by-side comparison of the examiner's rejections shows that the Examiner treated

the '675 and '542 patents as interchangeable:

| [The '542 patent] discloses a headset comprising: | [The '675 patent] discloses a headset comprising: |
|---|---|
|  an earcup (16) having a front cavity (12) and rear cavity (26) characterized (insofar as such is understood) by front cavity and rear cavity compliances respectively; |  at least one earcup (fig. 1) having a front cavity (12) and rear cavity (the space between the baffle 21 and the housing 13) with front cavity and rear cavity compliances respectively, |
|  a baffle (20) separating the front (12) and rear (26) cavities; |  a baffle (21) separating the front and rear cavities, |
|  a high compliance driver having a diaphragm (48) joined to the voice coil (inherent unit of a driver, e.g., speaker) normally residing in a gap mounted on the baffle; and |  a high compliance driver (17) having a diaphragm (14) joined to a voice coil (inherent unit of a driver, e.g., speaker) normally residing in a gap mounted on the baffle; and |
|  an active noise reduction system (Figure 1). |  an active noise reduction system (fig. 2). |
| [The '542 patent] differs from claim 1 of the present invention in that it does not specifically disclose the driver compliance which is greater than the rear cavity compliance.  However, Yamagishi teaches the concept of maximizing the compliance of the driver and minimizing the compliance of the rear cavity for cancelling low frequency noise … . | [The '675 patent] differs from claim 1 of the present invention in that it does not specifically disclose the driver compliance which is greater than the rear cavity compliance.  However, Yamagishi teaches the concept of mazimizing the compliance of the driver an minimizing the compliance of the rear cavity for cancelling low frequency noise… ." |

(*Compare* Tr. Ex. 2 at Bose-LS 00070 *with id*. at Bose-LS 000124-25.)   Because the '542 patent was clearly cumulative to the '675 patent, removing it as prior art was not material to the patentability of the '542 patent.

Lightspeed has no actual evidence to the contrary, and insinuations and innuendo are insufficient.  Judgment must be rendered in Bose's favor on Lightspeed's Fourth Counterclaim.

### C.        Failure to Disclose Material Prior Art

In its Fifth Counterclaim, Lightspeed alleges that Bose "made a material misrepresentation by not disclosing the various public uses, displays and demonstrations of Voyager headset before August 23, 1989."  (Am. Answer at 14.)  This assertion hinges critically on Lightspeed's allegation that, "The Voyager headset was a noise cancelling headset having a driver compliance greater than the rear cavity compliance."  (*Id.*).  That allegation has now been found to be untrue.  Mem. & Order of Jul. 30, 2010 (Dkt. #111) at 10 ("no real doubt exists but that the Voyager headset does not meet the high compliance driver limitation.").  Information is material when "a reasonable examiner would consider it important in deciding whether to allow the application to issue as a patent."  *Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279, 1297 (Fed. Cir. 2008).  Because the Voyager does not practice the claims of the patent, it cannot be material.  Furthermore, because it does not practice the patent's claims, "the various public uses, displays and demonstrations of Voyager headset before August 23, 1989" matter for nothing, as they could not constitute invalidating events under 35 U.S.C. § 102(b).

To be sure, a reference need not practice every limitation of a claim in order to be considered "material."  However, the prosecution history of the '252 patent includes multiple references which disclose all of the limitations of claim 1 except for the high compliance driver limitation.  For example, U.S. Patent No. 4,644,581 is a Bose patent which discloses a headset

with cavities separated by a baffle and including active noise reduction as in the Voyager.  (Tr. Ex. 135 at 2:24-3:44 & Figs. 1-3.)  Indeed, the '581 patent stemmed from Bose's work on Voyager and it describes, in essence, the Voyager headset.[2]  (*See generally* Tr. Ex. 135.)  The '581 patent, like Voyager, does not include a high compliance driver.  (*See id.* at 2:24-3:44 & Figs. 1-3.)  Similarly, European Patent 0195641, like Voyager, shows an active noise reducing headphone with front and rear cavities separated by a baffle but no high compliance driver.  (*See* Tr. Ex. 2 at Bose-LS 00450-63.)  Thus, the Voyager headset is, at best, cumulative of other references cited by Bose in prosecution of the '252 patent, and it had no more materiality to the claims of the '252 patent than other references the Patent Examiner considered.

Even if the failure to disclose and materiality requirements were established, Lightspeed's argument would fail nonetheless because Lightspeed cannot establish that Bose, in withholding the Voyager reference, "specifically intended to deceive the PTO."  *Ring Plus*, --- F.3d ---, 2010 WL 3064354 at *4.  Critically, the "intent" element of inequitable conduct is not simply intent to take the action or omission complained of, but a ***specific intent to deceive*** the Patent Office.  *Dayco Prods., Inc. v. Total Containment, Inc.*, 329 F.3d 1358, 1367 (Fed. Cir. 2003).  That is, "one must have ***intended to act inequitably***."  *Kingsdown*, 863 F.2d at 872 (emphasis added).  Intent to deceive cannot be inferred solely from the fact that information was not disclosed, even material information.  *Herbert v. Lisle Corp.*, 99 F.3d 1109, 1116 (Fed. Cir. 1996).  "[T]here must be a factual basis for a finding of deceptive intent."  *Id.*

Here, Lightspeed cannot establish the requisite specific intent to deceive.  Bose's prosecution counsel, Mr. Chuck Hieken, testified in his deposition that he did not disclose the actual Voyager headset to the PTO because he believed (correctly) that it was not material prior

---

[2] In light of this fact, it cannot accurately be said that the Voyager headset was not considered by the Examiner during prosecution.

art since it did not practice any of the claims:

> Q.   Yes.   During the prosecution of the '252
> patent there was no mention made of the Voyager
> product.  Do you recall if there was a reason why
> it wasn't told to the patent office?
>
>              *    *    *
>
> A.   I had no thought of even including it.   It
> was not relevant.

(Hieken Dep. Tr. at 11:18-12:1.)  Mr. Hieken further confirmed that he never intended to act

inequitably:

> Q.   At any time during the prosecution of the
> '252 patent, did you ever intend to deceive the
> patent office?
>
> A.   No.

(*Id.* at 70:4-7.)

     Lightspeed has no evidence to the contrary.  The Voyager headset was not material prior

art and there was no intent to deceive the PTO in not disclosing the actual headset.

Consequently, judgment must be rendered in Bose's favor on Lightspeed's Fifth Counterclaim.

### D.   Proposed Findings of Fact

     1.      Lightspeed has alleged that, "By filing the amendment and petition to

delete John Breen as a joint inventor of claim 2 [sic, claim 4], Bose and/or Messrs. Sapiejewski,

Breen and Hieken intentionally deceived the PTO to overcome the rejection under 35 U.S.C. §

102(e) over the '542 Patent."   (Am. Answer at 13.)

     2.      The deletion by Bose's patent prosecution counsel of Mr. Breen as an

inventor was not material to the patentability of the '252 patent.

     3.      The evidence shows that the Sapiejewski '542 patent that was removed

from consideration by deleting Mr. Breen was not material to patentability because it was

cumulative to the Bose '675 patent.

4.      The evidence shows that Bose did not intend to deceive the PTO in either the deletion of Mr. Breen as an inventor on the '252 patent, or in subsequently re-adding him as an inventor.

5.      The evidence in this case compels the conclusion that Mr. Hieken simply made an innocent mistake when he believed Mr. Breen's only contribution was to claim 4.

6.      In its Amended Answer and Counterclaims, Lightspeed alleged that "The Voyager headset was a noise cancelling headset having a driver compliance greater than the rear cavity compliance."  (Am. Answer at 14.)  That allegation has been found to be untrue.  Mem. & Order of Jul. 30, 2010 (Dkt. #111) at 10 ("no real doubt exists but that the Voyager headset does not meet the high compliance driver limitation.").

7.      The Voyager headset does not practice any claims of the '252 patent.

8.      The Voyager headset is, at best, cumulative of other references cited by Bose in prosecution of the '252 patent, and it had no more materiality to the claims of the '252 patent than other references the Patent Examiner considered.

9.      The Voyager headset is not material prior art to the '252 patent.

10.     The evidence shows that Bose did not intend to deceive the PTO in not disclosing the Voyager headset to the PTO.

### E.      Requested Rulings of Law

1.      Bose did not commit inequitable conduct in regard to the inventorship of the '252 patent.

2.      Judgment in Bose's favor on Lightspeed's Fourth Counterclaim.

3.      Bose did not commit inequitable conduct in not disclosing the Voyager headset to the PTO.

4.      Judgment in Bose's favor on Lightspeed's Fifth Counterclaim.

## II.     CONCURRENT USE

### A.      Lightspeed is Not Entitled to Concurrent Use Rights

Lightspeed's Third Counterclaim requests that the Court "instruct the Director of the Trademark Office that Lightspeed is entitled a concurrent right to use its 'QUIET COMFORT' mark in commerce." (Am. Answer at 11.) In support, Lightspeed claims that "but for" the 2002 settlement agreement, "Lightspeed would have continued to use its QUIET COMFORT mark in commerce." (*Id*.)

Lightspeed's allegations are nothing more than a desire to re-work history that have no support in the evidence. Regardless of any prior rights Lightspeed *may* have had in the QUIET COMFORT mark, and regardless of Lightspeed's assertion that it would have continued to use the mark in commerce but for its settlement with Bose, the fact remains that Lightspeed covenanted to "phase out"—*i.e.*, to *cease use* of—the QUIET COMFORT mark within six months of executing the settlement agreement with Bose in December 2002. Lightspeed proffers no evidence contradicting the fact that it did indeed cease use of the QUIET COMFORT mark sometime in 2003 and has never readopted the mark. In fact, Lightspeed admits as much in its counterclaim when it states that but for the settlement agreement with Bose, Lightspeed "*would have* continued to use its QUIET COMFORT mark." (*Id*. at 11 (emphasis added).) The only inference that can be drawn from this statement by Lightspeed is that it has not used the QUIET COMFORT mark since 2003.

Consequently, Lightspeed's request that the Court grant it a "concurrent right to use" the QUIET COMFORT mark must be denied because a determination of "concurrent rights" in a

trademark that will support a "concurrent use registration"[3] inherently requires that the two parties presently be *concurrently using* the same or a confusingly similar mark. *See Fuddruckers, Inc. v. Fudpucker's, Inc.*, 436 F. Supp. 2d 1260, 1271 (N. D. Fla. 2006). Lightspeed fails to meet this threshold requirement.

Additionally, "where a claim is made of concurrent rights, such [lawful] use [in commerce] must begin prior to the filing date of any application by a conflicting claimant to the mark." *Gray v. Daffy Dan's Bargaintown*, 823 F.2d 522, 526 (Fed. Cir. 1987). Not only has Lightspeed failed to demonstrate any current use of the QUIET COMFORT mark, it cannot demonstrate that it owns rights that extend back to before the filing date of Bose's QUIETCOMFORT application in 2000,[4] because any rights Lightspeed may have had at that time were subsequently abandoned and stand extinguished.

A mark is deemed "abandoned" when its "use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127. Moreover, "[n]onuse for 3 consecutive years shall be *prima facie* evidence of abandonment." *Id.*; *see also Crash Dummy Movie, LLC v. Mattel, Inc.*, 601 F.3d 1387, 1391 (Fed. Cir. 2010). In this case, Lightspeed's nonuse has been continuous for over six (6) years, from the time Lightspeed expressly agreed to "phase out" use of the QUIET COMFORT mark, within six months from signing the parties' 2002 Settlement Agreement.

---

[3] Whether and to what degree a party has concurrent rights to the same trademark used by another may be determined by the Director of the PTO, or by a court of competent jurisdiction. *See* 15 U.S.C. § 1052(d). Upon determination of such rights the Director may issue concurrent use registrations to the parties, identifying the "conditions and limitations as to the mode or place of use of the mark or the goods on or in connection with which such mark is registered to the respective persons." *See* 15 U.S.C. § 1052(d)(3).

[4] Bose's QUIETCOMFORT mark was filed on December 28, 2000, issued under Registration No. 2539951 on February 19, 2002, and is incontestable. (*See* Tr. Ex. 173 (Combined Declaration of Use and Incontestability Under Sections 8 & 15 for Bose's "QUIETCOMFORT" trademark, available at www.uspto.gov); *see also* http://tarr.uspto.gov/tarr?regser=registration&entry=2539951&action=Request+Status).

Thus, there is no question that Lightspeed "discontinued with intent not to resume…use" of the QUIET COMFORT mark, and cannot now reclaim whatever rights it previously may have held. 15 U.S.C. § 1127; *see also* 3 J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u> § 17:1 (4th ed. 2007) (a person who has abandoned a mark has no rights in it). Additionally, the subsequent re-adoption of a previously abandoned mark represents a new and separate use that cannot retroactively cure a prior abandonment.  *See AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1550 (11th Cir. 1986); *Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.*, 892 F.2d 1021, 1026 (Fed. Cir. 1989).

Thus, any rights that Lightspeed may have had in the QUIET COMFORT mark are defunct, and Lightspeed cannot claim concurrent rights with Bose over the QUIET COMFORT mark.  Even were Lightspeed to prevail in its breach of contract claim with respect to the Settlement Agreement, this would not alter the conclusion that Lightspeed cannot prevail on Counterclaim III and cannot obtain concurrent rights in the QUIET COMFORT mark, because any such use by Lightspeed would cause consumer confusion with Bose's ongoing use of the QUIETCOMFORT mark for goods that are identical to Lightspeed's.  *See T & T Mfg. Co. v. A. T. Cross Co.*, 587 F.2d 533, 538 (1st. Cir. 1978) (weighing the "public interest concerning trademarks against the interest in contract enforcement"); *see also Peyrat v. L. N. Renault & Sons, Inc.*, 247 F. Supp. 1009, 1014 (S.D.N.Y. 1965) ( "The parties to a trademark controversy may contract between themselves for any legal purpose… so long as no injury is caused to the public.").  Lightspeed's claim of concurrent rights in the QUIET COMFORT mark is further flawed by the fact that Lightspeed cannot meet the additional legal requirements necessary to establish and define the scope of its alleged concurrent rights in the mark, and has produced no evidence in support of such a right.  Lightspeed bears the burden to establish that it is entitled to

concurrent use rights.  *See* 37 C.F.R. § 2.99(e); *Daffy Dan's*, 823 F.2d at 524-25 (Fed. Cir.

1987); *Fleming Cos. v. Thriftway, Inc.*, 21 U.S.P.Q.2d 1451, 1456 (T.T.A.B. 1991).  The relevant

portion of the Lanham Act provides:

> That if the Director determines that **confusion, mistake, or deception is not likely to result** from the continued use by more than one person of the same or similar marks **under conditions and limitations as to the mode or place of use of the marks** or the goods on or in connection with which such marks are used, concurrent registrations **may** be issued to such persons **when they have become entitled to use such marks** as a result of their concurrent lawful use in commerce prior to (1) the earliest of the filing dates of the applications pending or of any registration issued under this chapter…. Concurrent registrations may also be issued by the Director when a court of competent jurisdiction has finally determined that more than one person is entitled to use the same or similar marks in commerce.  In issuing concurrent registrations, **the Director shall prescribe conditions and limitations** as to the mode or place of use of the mark or the goods on or in connection with which such mark is registered to the respective persons.

15 U.S.C. § 1052(d) (emphasis added).  This portion of the statute has been construed by the

Federal Circuit and its predecessor court as setting forth two "conditions precedent" that

Lightspeed must establish to show that it is entitled to concurrent use rights: (1) that Lightspeed

lawfully is using a similar mark in commerce outside of Bose's mode or place of use; and (2)

that there be no likelihood of confusion, mistake or deception in the market place as to the source

of the goods resulting from the continued concurrent use of the trademark.  *In re Beatrice Foods*

*Co.*, 429 F.2d 466, 473-74 (C.C.P.A. 1970); *Daffy Dan's*, 823 F.2d at 525-26.  Failure by

Lightspeed to establish either of these conditions precedent is in itself fatal to Lightspeed's

counterclaim.  *See Beatrice Foods*, 429 F.2d at 473.

 With respect to the first condition precedent—that Lightspeed is using a similar mark in

commerce outside of Bose's mode or place of use—Lightspeed's counterclaim suffers from a

fatal deficiency of evidence.  Lightspeed has neither alleged nor has it developed any evidence to

show that it is using (or would be willing to use) the QUIET COMFORT mark in commerce

outside of Bose's area of use.  There exists not a single exhibit that proves Lightspeed's prior or

current use of a QUIET COMFORT mark.  *A fortiori*, there is no evidence that Lightspeed has

ever used or is currently using the QUIET COMFORT mark in a mode or place distinct from the

mode or place in which Bose uses its QUIETCOMFORT mark.  Even if Lightspeed could

establish that it used the QUIET COMFORT mark in commerce prior to Bose's application for

its QUIETCOMFORT mark, or that its past abandonment of the QUIET COMFORT mark could

be "cured" in some way, and therefore meets the threshold requirement of a concurrent use right,

Lightspeed still cannot show that such use could be distinct from Bose's use.

Under the Trademark Act, even when a court determines that a party is entitled to use the

same or similar mark as is used by another, the Director of the PTO still "***shall*** prescribe

conditions and limitations as to the mode or place of use of the mark…."  15 U.S.C. § 1052(d)

(emphasis added).  In other words, to avoid public confusion, the concurrent user (*i.e.*,

Lightspeed) can only use a similar mark in a manner or place where the registered owner (*i.e.*,

Bose) is not using the mark.  *Id.*  Courts and the Trademark Trial and Appeal Board have

consistently rejected claims of concurrent rights where the territories of the concurrent users

overlap.  *See, e.g., Daffy Dan's*, 823 F.2d 522, 525 (Fed. Cir. 1987); *Over the Rainbow, Ltd. v.

Over the Rainbow, Inc.*, 227 U.S.P.Q. 879 (T.T.A.B. 1985); *In re Place for Vision, Inc.*, 196

U.S.P.Q. 267, 269-70 (T.T.A.B. 1977); *Texas Meat Packers, Inc. v. Rueckert Meat Co.*, 143

U.S.P.Q. 325, 329 (T.T.A.B. 1964); *Central West Oil Corp. v. Continental Oil Co.*, 135 U.S.P.Q.

469, 472 (T.T.A.B. 1962).

Lightspeed has made no representation that it would even be willing to limit its use of the

QUIET COMFORT mark in the future to a particular geographic region where Bose does not use

the Bose QUIETCOMFORT mark.  (*See* Am. Answer at 11.)  This alone is sufficient to support

a finding in Bose's favor.  *See Daffy Dan's*, 823 F.2d at 526.  Moreover, no such geographic

limitation by Lightspeed is even possible, because the evidence establishes that Bose uses its

QUIETCOMFORT mark in commerce on a nationwide, indeed on a worldwide, basis.  (Tr. Ex.

172 ("A year later, the Quietcomfort Noise-Cancelling headphones were introduced to

consumers nationwide."); Tr. Ex. 65 (U.S. sales of QuietComfort 2 and QuietComfort 3

headsets); *see also* www.bose.com (locations for Bose retail stores nationwide at

http://www.bose.com/controller?url=/locator/bose_stores/index.jsp); Bose online store at

www.bose.com/controller?url=/shop_online/index.jsp.)

Thus there is no geographic arena within the United States where Bose's

QUIETCOMFORT mark is not used and where Lightspeed can use a QUIET COMFORT mark.

*See id.*  Thus, it is impossible that Lightspeed could be granted concurrent use rights by the

Director, because *any* use by Lightspeed of a QUIET COMFORT mark in the U.S. would

necessarily overlap with Bose's use.  *See Daffy Dan's*, 823 F.2d at 526.

The second condition precedent—that there be no likelihood of confusion occasioned by

the concurrent use—is the "touchstone" of concurrent rights.  *In re Beatrice Foods Co.*, 429 F.2d

466, 473-74 (C.C.P.A. 1970).  "Only in satisfying this standard, can the Patent Office be sure

that both the rights of the individual parties and those of the public are being protected."  *Id.*  It is

*Lightspeed's* burden to establish that there would be *no* likelihood of confusion, *Daffy Dan's*,

823 F.2d at 524-25; *Fleming Cos.*, 21 U.S.P.Q.2d at 1456, and Lightspeed has adduced

absolutely no evidence in support of such a conclusion.  In fact, the opposite conclusion must be

drawn:  the simultaneous use by Lightspeed of a QUIET COMFORT mark and by Bose of its

QUIETCOMFORT mark, both on noise cancelling headphones, with no geographic restrictions,

is likely to cause confusion, mistake, and/or deception among the consuming public.  *See* 15

U.S.C. § 1052(d); *CDS, Inc. v. I.C.E.D. Management, Inc.*, 80 U.S.P.Q.2d 1572, 1583 (T.T.A.B. 2006) (finding that "obviously…there would be a likelihood of confusion" if the marks COPY CLUB and THE COPY CLUB were used for the same services without geographic restrictions).

Because Lightspeed's Counterclaim III fails for numerous independent reasons, the Court should find in Bose's favor and deny Lightspeed's request for a declaration of concurrent use rights to use a QUITE COMFORT trademark.

### B.    Proposed Findings of Fact

1.    In approximately 2003, Lightspeed discontinued use of the QUIET COMFORT mark with intent to not resume such use.

2.    Lightspeed has not used the QUIET COMFORT mark for more than three consecutive years.

3.    Lightspeed expressly covenanted to discontinue any use of the QUIET COMFORT mark within six months of execution of the parties' 2002 Settlement Agreement, and in fact did so.

4.    Lightspeed is not presently using the QUIET COMFORT mark in commerce.

5.    Lightspeed has developed no evidence to support its allegations that it used a QUIET COMFORT mark in commerce prior to Bose's registration of the QUIETCOMFORT mark in 2002.

6.    Lightspeed has developed no evidence to support any claim that its use of a QUIET COMFORT mark was or is outside of Bose's area or mode of use of the same mark.

7.    Lightspeed has made no representation that it would be willing to limit use of a QUIET COMFORT mark to geographic regions where Bose does not use the mark in

commerce, were such use even possible.

8.      The evidence shows that Bose uses its QUIETCOMFORT mark in commerce on a nationwide basis

9.      The evidence shows no area of the U.S. where Bose does not use its QUIETCOMFORT mark, and where Lightspeed uses or could use its QUITE COMFORT mark and not overlap Bose's use.

10.      Any use by Lightspeed of a QUIET COMFORT mark in the U.S. will overlap with Bose's use of the virtually identical mark.

11.      Lightspeed has adduced no evidence that prevents the legal conclusion that Lightspeed's use of a QUIET COMFORT mark on noise cancelling headsets will cause a likelihood of consumer confusion with the QUIETCOMFORT trademark used by Bose on identical goods.

### C.      Requested Rulings of Law

1.      Lightspeed abandoned any rights it may have had in the QUIET COMFORT mark sometime in 2003.

2.      Lightspeed has failed to meet its burden of proof that it lawfully used a QUIET COMFORT mark in commerce outside of Bose's area of use of the Bose QUIETCOMFORT mark, prior to Bose's registration in 2002.

3.      Lightspeed has failed to meet its burden of proof that there would be no likelihood of confusion caused by Lightspeed's use of a QUIET COMFORT mark on noise cancelling headphones and Bose's use of the Bose QUIETCOMFORT mark on noise cancelling headphones.

4.      Judgment in Bose's favor on Lightspeed's Third Counterclaim.

Respectfully submitted,

Dated:  September 3, 2010                    /s/ *Andrew R. Kopsidas*
                                            Ruffin B. Cordell (admitted *pro hac vice*)
                                            Andrew R. Kopsidas (admitted *pro hac vice*)
                                            Steven A. Bowers (admitted *pro hac vice*)

                                            FISH & RICHARDSON P.C.
                                            1425 K Street, N.W., 11th Floor
                                            Washington, D.C. 20005
                                            Telephone: (202) 783-5070
                                            Facsimile: (202) 783-2331

                                            Juanita R. Brooks (admitted *pro hac*)

                                            FISH & RICHARDSON P.C.
                                            12390 El Camino Real
                                            San Diego, CA 92130
                                            Telephone: (858) 678-5070
                                            Facsimile: (858) 678-5099

                                            Charles Hieken (233,640)

                                            FISH & RICHARDSON P.C.
                                            225 Franklin Street
                                            Boston, MA  02110-2804
                                            Telephone: (617) 542-5070
                                            Facsimile:  (617) 542-8906

                                            Attorneys for Plaintiff
                                            BOSE CORPORATION

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2010 a true and correct copy of the foregoing document was filed with the Clerk of the Court for the District of Massachusetts via the ECF System which will send notification to all registered participants of the ECF System.

*/s/ Andrew R. Kopsidas*
Andrew R. Kopsidas
