IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BOSE CORPORATION,

       Plaintiff,

v.

LIGHTSPEED AVIATION, INC.,

       Defendant.

Civil Action No. 1:09-cv-10222-WGY

## BOSE CORPORATION'S PROPOSED JURY INSTRUCTIONS

## <u>TABLE OF CONTENTS</u>

*PROPOSED PRELIMINARY INSTRUCTIONS* ...........................................................2

    1.    WHAT A PATENT IS AND HOW ONE IS OBTAINED ................................3

    2.    THE PATENT INVOLVED IN THIS CASE ......................................................6

    3.    THE POSITIONS OF THE PARTIES ...............................................................8

    4.    GLOSSARY OF PATENT AND TECHNICAL TERMS .................................10

    5.    OVERVIEW OF APPLICABLE LAW.............................................................11

    6.    OUTLINE OF TRIAL .....................................................................................14

*PROPOSED FINAL INSTRUCTIONS*..............................................................................16

    1.    CONTENTIONS OF THE PARTIES ...............................................................17

    2.    GENERAL INSTRUCTIONS ..........................................................................19

        **A.**    Purpose of Jury Charge.........................................................................19

        **B.**    The Role of the Jury:  Judges of the Facts............................................19

        **C.**    The Role of the Judge: Instructor as to the Law ...................................20

        **D.**    Consider the Whole Charge...................................................................20

        **E.**    Role of the Attorneys............................................................................21

        **F.**    How to Approach the Body of Evidence ................................................22

        **G.**    Explanation of the Verdict Form ...........................................................27

    3.    OVERVIEW OF PATENTS.............................................................................28

    4.    THE MEANING OF CLAIM TERMS.............................................................31

    5.    INVALIDITY .................................................................................................32

        **A.**    Invalidity—Generally ...........................................................................32

        **B.**    Lightspeed's Burden of Proof................................................................32

        **C.**    Anticipation—Publicly Used or Known................................................32

        **D.**    Anticipation—Made or Invented by Someone Else ..............................34

        **E.**    Obviousness .........................................................................................35

6.      INFRINGEMENT...................................................................................41

        **A.**    Bose's Burden of Proof..............................................................41

        **B.**    Literal Infringement ...................................................................42

        **C.**    Infringement Under the Doctrine of Equivalents.....................42

        **D.**    Open-Ended or "Comprising" Claims .....................................43

        **E.**    Infringement of Dependent Claims...........................................44

        **F.**    Willful Infringement ..................................................................45

7.      DAMAGES ............................................................................................46

        **A.**    Generally....................................................................................46

        **B.**    Burden of Proof..........................................................................46

        **C.**    When Damages Begin.................................................................47

        **D.**    Lost Profits.................................................................................47

        **E.**    Reasonable Royalty ...................................................................47

8.      CONTRACT...........................................................................................50

9.      CONCLUSION.......................................................................................51

Pursuant to the Court's Procedural Order of July 13, 2010 (Dkt. #104), Plaintiff Bose Corporation and Defendant Lightspeed Aviation Inc. jointly submit the following proposed jury instructions.

*PROPOSED PRELIMINARY INSTRUCTIONS*

## 1.   WHAT A PATENT IS AND HOW ONE IS OBTAINED

This case involves a dispute over a United States patent.  Before summarizing the positions of the parties and the legal issues involved in the dispute, I want to explain what a patent is and how one is obtained.

The United States Constitution provides for patent protection to inventors.  A patent gives to the inventors, or their successors in interest, a period of exclusivity for the use of their invention. And that simply means that no one may use the patented invention without first getting permission from the people who hold the patent.  And the patent owner is entitled to refuse to give anyone else permission to practice the invention.

Why do we give the inventor this right, this exclusive right to practice the patent for a period of years?  It is a trade-off.  The federal government says to the inventor under the law we will give you the exclusive right, the exclusive use of this invention for a period of years.  But, in return you have to teach the world how to make this invention, how to use this invention.

And why do we want that?  We want that as a matter of social policy because we want inventors.  We give the period of exclusivity as a reward.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO").  A valid United States patent gives the patent holder certain rights for up to 20 years from the date the patent application was filed.  The patent holder may prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States without the patent holder's permission.  A violation of the patent holder's rights is called infringement.  The patent holder may try to enforce a patent against persons believed to be infringers by filing a lawsuit in federal court.

The process of obtaining a patent is called "patent prosecution."  To obtain a patent, one must file an application with the PTO.  The PTO is an agency of the federal government and

employs trained examiners who review applications for patents.  The application includes a section called the "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, and how to make and use it, in such full, clear, concise, and exact terms so that others skilled in the field will know how to make and use it.  The specification concludes with one or more numbered sentences.  These are the patent "claims."  If the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.  Claims can be independent or dependent.  An independent claim is self-contained.  A dependent claim refers back to an earlier claim and includes the requirements of the earlier claim.

After the applicant files a patent application, a PTO patent examiner reviews it to determine whether the claims are patentable and whether the specification adequately describes the invention claimed.  In examining a patent application, the patent examiner may review "prior art."  Prior art is defined by law, and, at a later time, I will give you specific instructions on what constitutes prior art.  In general, though, prior art includes things that existed before the claimed invention, that were publicly known or used in this country, or that were patented or described in a publication in any country.  The examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious when compared with the prior art.  A patent lists the prior art the examiner considered; this list is called the "cited references."  The cited references include the prior art found by the examiner as well as any prior art submitted to the PTO by the applicant.

After the prior art search and examination of the application, the patent examiner then informs the applicant in writing what the examiner has found and whether any claim is patentable, and thus will be "allowed."  This writing from the patent examiner is called an

"office action."  If the examiner rejects any of the claims, the applicant then responds and sometimes changes the claims or submits new claims.  This process, which takes place only between the examiner and the patent applicant, may go back and forth for some time until the examiner believes that the application and claims meet the requirements for a patent.  The papers generated during this time of communicating back and forth between the patent examiner and the applicant make up what is called the "prosecution history."  All of this material becomes available to the public no later than the date when the PTO grants the patent.

Just because the PTO grants a patent does not necessarily mean that any invention claimed in the patent is, in fact, legally entitled to the protection of a patent.  One or more claims may, in fact, not be patentable under the law.  A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is not entitled to patent protection because it does not meet the requirements for a patent.  In other words, an accused infringer may defend a suit for patent infringement on the grounds that the patent is invalid.

Source:  Adapted from Federal Circuit Bar Association Model Patent Jury Instructions (Nov. 12, 2009) (hereinafter "Fed. Cir. Bar Assoc. Model Instructions"); *Ambit Corp. v. Delta Airlines, Inc.*, Civ. Action No. 09-10217-WGY; and Model Patent Jury Instruction No. 1.1, The National Jury Instruction Project, June 17, 2009.

## 2.      THE PATENT INVOLVED IN THIS CASE

Let's take a moment to look at the patent in this case.  The cover page of the patent identifies the date the patent was granted and patent number in the upper right corner, as well as the inventor's names, the filing date, and a list of the prior art references the PTO considered prior to allowing the patent.  The patent at issue in this case is United States Patent 5,181,252, which we will refer to as "the '252 patent."  It is titled "High Compliance Headphone Driving," and the inventors are listed as Roman Sapiejewski and John J. Breen.  You will also see that the patent has been assigned to Bose Corporation.

The specification of the patent begins with an abstract, also found on the cover page.  The abstract is a brief statement about the subject matter of the invention.  Next come the drawings.  The drawings illustrate various aspects or features of the invention.  The written description of the invention appears next and is organized into two columns on each page.  The specification ends with numbered paragraphs.  These are the patent claims.

The drawings and specification provide a context for the claims but it is the claims that define how broad or narrow the patent's coverage is.  The claims define the area of exclusivity.  The claims are the patent owner's legal rights.

You will first need to understand what each claim covers in order to decide whether there is infringement of the claim and to decide whether the claim is invalid.  The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case.  Therefore, as I explained to you at the start of the case, I have determined the meaning of the claims and will provide you with my definitions of certain claim terms.  You must accept my definitions of these words in the claims as being correct.  It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

<u>Source:</u>  Adapted from Fed. Cir. Bar Assoc. Model Instructions; *Ambit Corp. v. Delta Airlines, Inc.*, Civ. Action No. 09-10217-WGY; and Model Patent Jury Instruction No. 1.2, The National Jury Instruction Project, June 17, 2009.

3.      **THE POSITIONS OF THE PARTIES**

To help you follow the evidence, I will now give you a summary of the positions of the parties.  The parties in this case are Bose Corporation, a company based in Framingham, Massachusetts, and Lightspeed Aviation, Inc., a company based in Lake Oswego, Oregon.  The case involves a patent obtained by Bose Corporation, the '252 patent.

Bose alleges that Lightspeed has infringed claims 1, 2, 3, 5, and 6 of the '252 patent by making a product that includes all of the requirements of those claims.  Lightspeed alleges that the asserted claims are not infringed and are also invalid.  I have already determined that claim 1 has been infringed.  You need not decide infringement of that claim.  To fulfill your duties as jurors, you must decide whether claims 2, 3, 5, and 6 of the '252 patent have been infringed.  You must also decide whether claims 1, 2, 3, 5, and 6 are invalid.  If you decide that any claim of the '252 patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Bose to compensate for that infringement.  You will also need to decide whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damage award you give.  I will take willfulness into account later in the proceedings.  Finally, Lightspeed has alleged that the accused product is covered by a 2002 agreement between Bose and Lightspeed.  You will need to decide whether that is true.

It is my job as judge to determine the meaning of any claim language that needs interpretation.  You must accept the meanings I give you and use them when you decide whether any claim of the patent has been infringed and whether any claim is invalid.  I will go over the meanings of the claim terms shortly and I will provide you with a copy of those meanings [Attachment A].

<u>Source:</u>  Adapted from Fed. Cir. Bar Assoc. Model Instructions; *Ambit Corp. v. Delta Airlines, Inc.*, Civ. Action No. 09-10217-WGY; and Model Patent Jury Instruction No. 1.3, The National

Jury Instruction Project, June 17, 2009; Complaint (Feb. 13, 2009); Def.'s Am. Answer and Counterclaims (Nov. 13, 2009); Mem. & Order of July 30, 2010.

**4.      GLOSSARY OF PATENT AND TECHNICAL TERMS**

To assist you in your deliberations, I have attached a Glossary of Patent and Technical Terms that identifies terms used in patent matters and gives you a definition of those terms [Attachment B].

Source:   Adapted from Model Patent Jury Instruction No. 1.6, The National Jury Instruction Project, June 17, 2009.

**5.     OVERVIEW OF APPLICABLE LAW**

In deciding the issues I just discussed, you will be asked to consider specific legal standards.  I will give you an overview of those standards now and will review them in more detail before the case is submitted to you for your verdict.  You will notice that in describing invalidity and infringement, I refer to the individual claims of the patent.  This is because you must determine whether each claim is valid and infringed, not whether the patent as a whole is valid and infringed.

**A.     Patent Validity, Infringement, and Damages**

1)     Validity

The first issue you will be asked to decide is whether the claims of the '252 patent are invalid.  Validity is assessed on a claim-by-claim basis, and the claims of the '252 patent are presumed to be valid.  However, a patent may be invalid because it claims subject matter that is not new or is obvious.  For a claim to be invalid because it is not new, Defendant Lightspeed must show, by clear and convincing evidence, that is to say proof that it is highly probable, that all of the elements of a claim are present in a single previous device, or sufficiently described in a single previous printed publication published before Bose made the invention of the '252 patent.  The older references are sometimes called prior art.  If a claim is not new, it is said to have been anticipated.

Another way a claim may be invalid is if it would have been obvious.  Even though every element of a claim is not shown or sufficiently described in a single piece of "prior art," the claim may still be invalid if it would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time.  You will need to consider a number of questions in deciding whether the inventions claimed in the '252 patent are obvious.  I will provide you detailed instruction on these questions at the conclusion of the case.

Lightspeed must prove invalidity by clear and convincing evidence.  That means you have to be left with a clear and abiding conviction that the fact has been proven.  Lightspeed must make invalidity clear to you.  This is a higher standard than the preponderance of the evidence standard by which Bose must prove infringement, which I will now explain to you.

2)     Infringement

You will also be asked to decide whether Lightspeed has infringed claims 2, 3, 5, and 6 of the '252 patent.  Infringement, like validity, is assessed on a claim-by-claim basis.  Therefore, there may be infringement as to one claim but not infringement as to another.  In general, Lightspeed might infringe the '252 patent by making, using, selling or offering for sale in the United States a product that is covered by a claim of the '252 patent.  I will provide you with more detailed instructions on the requirements for infringement at the conclusion of the case.

Bose has to prove infringement by a preponderance of the evidence.  A preponderance of the evidence means that the evidence in favor of that fact being true is sufficient to tip the scale, even if just slightly, in its favor.  This is a lower standard than the clear and convincing evidence standard by which Lightspeed must prove invalidity.

3)     Damages

If you find infringement, you will also need to decide any money damages to be awarded to Bose.  The amount of those damages must be adequate to compensate Bose for the infringement.  A damages award should put Bose in approximately the same financial position that it would have been in had the infringement not occurred, but in no event may the damages award be less than a what Bose would have received had it been paid a reasonable royalty.  The damages you award are meant to compensate the patent holder and not to punish an infringer.  You may not include in your award any additional amount as a fine or penalty, above what is

necessary to compensate Bose for the infringement, in order to punish Lightspeed.  I will give

you more detailed instructions on the calculation of damages at the conclusion of the case.


Source:  Adapted from Fed. Cir. Bar Assoc. Model Instructions; *Ambit Corp. v. Delta Airlines, Inc.*, Civ. Action No. 09-10217-WGY; Complaint (Feb. 13, 2009); Def.'s Am. Answer and Counterclaims (Nov. 13, 2009); Mem. & Order of July 30, 2010; Joint Pretrial Memorandum (Jul. 26, 2010).

6.      **OUTLINE OF TRIAL**

The trial will now begin.  First, each side may make an opening statement regarding the validity of the claims of the '252 patent.  An opening statement is not evidence.  It is simply an outline by the lawyers to help you understand what that party expects the evidence will show.

After the opening statements, Lightspeed will present its evidence in support of its contention that the claims of the '252 patent are invalid.  To prove any claim is invalid, Lightspeed must persuade you by clear and convincing evidence that the claim is invalid. Plaintiff Bose will then have an opportunity to present its evidence that the claims of the '252 patent are not, in fact, invalid.  This is referred to as "rebuttal" evidence.

Next, we will proceed to the infringement and damages phase of the trial.  Each side will have an opportunity to present an opening statement as to infringement and damages.  After the opening statements, Bose will present its evidence in support of its contention that claims 2, 3, 5, and 6 of the '252 patent have been infringed by Lightspeed.  To prove infringement of any claim, Bose must persuade you that it is more likely than not that Lightspeed infringed that claim.  Bose will also have an opportunity to present evidence regarding the appropriate amount of damages that Defendants should pay for their infringing actions.  Then, Lightspeed may put on their rebuttal evidence that they have not infringed claims 2, 3, 5, and 6 of the '252 patent, or if they have, the amount of damages they believe Lightspeed should pay for infringing the claims of the '252 patent.  Finally, we will conclude with closing arguments by the attorneys regarding all of the issues.  These closing arguments are not evidence.

During the presentation of the evidence, the attorneys may be allowed brief opportunities to explain what they believe the evidence has shown or what they believe upcoming evidence will show.  The attorneys comments are not evidence and the attorneys are being allowed to comment solely for the purpose of helping you to understand the evidence.  You will be allowed

to take notes during the trial and have your notebooks with you during deliberations.  But your notes are for you and you alone - do not show your notes to anyone else.  Your notes are not evidence.

After the evidence has been presented, I will give you final instructions on the law that applies to the case.  After the instructions and closing arguments, you will then decide the case.

<u>Source:</u>  Adapted from Fed. Cir. Bar Assoc. Model Instructions; *Ambit Corp. v. Delta Airlines, Inc.*, Civ. Action No. 09-10217-WGY.

*PROPOSED FINAL INSTRUCTIONS*

1.      **CONTENTIONS OF THE PARTIES**

Bose contends that Lightspeed makes, uses, offers to sell, sells or imports a product that infringes claims 1, 2, 3, 5, and 6 of the '252 patent.  That product is Lightspeed's Zulu Aviation Headset.

Lightspeed does not dispute that it infringes claim 1 of Bose's '252 patent, if that claim is valid, by making, using, offering to sell, selling or importing into the United States a product that has each of the requirements of claim 1 of Bose's patent.  Lightspeed, however, contends that claim 1 is invalid.

Lightspeed denies that it is infringing claims 2, 3, 5, and 6 of the '252 patent.  Lightspeed also contends that claims 2, 3, 5, and 6 of the '252 patent are invalid.  In particular, Lightspeed contends that claims 1 and 5 were anticipated by the Telex ANR headset, and that claims 1, 2, 3, 5, and 6 were obvious in view of a thesis by Peter David Wheeler, titled "Voice Communications in the Cockpit Noise Environment – The Role of Active Noise Reduction," from the University of Southampton in England.

Invalidity is a defense to infringement.  Therefore, even though the PTO examiner has allowed the claims of the '252 patent, you, the jury, must decide whether the claims of the '252 patent are invalid.

Your job is to decide whether the asserted claims of the '252 patent have been infringed and whether any of the asserted claims of the '252 patent are invalid.  If you decide that any claim of the patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Bose as compensation for the infringement.  You will also need to decide whether the infringement was willful.  If you decide that any infringement was willful, that decision should not affect any damage award you make.  I will take willfulness into account

later.  Finally, Lightspeed has alleged that the accused product is covered by a 2002 agreement

between Bose and Lightspeed.  You will need to decide whether that is true.


Source:   Model Patent Jury Instruction No. 2.1, The National Jury Instruction Project, June 17, 2009; Complaint (Feb. 13, 2009); Def.'s Am. Answer and Counterclaims (Nov. 13, 2009); Mem. & Order of July 30, 2010; Joint Pretrial Memorandum (Jul. 26, 2010).

## 2.   GENERAL INSTRUCTIONS

### A.   Purpose of Jury Charge

We come now to that part of the case where I charge you, I explain to you the law that you must follow in arriving at a fair, impartial, and just verdict in this case.  You are asked to do justice in this case.  You are required to follow the law.  Since you are required to follow the law, you must understand what the law is.

Let me just say a word about the mechanics of the charge.  The judge's charge is like a law school class.  In other words, I am going to teach you now all the law that you need to know to have a legal framework within which you, and you alone, are going to answer the questions that we put to you, the factual questions which are for you in this case.  Like any class, you may ask questions.  In fact, I encourage you to ask questions about my legal charge.  It must be formal, in the sense that you have to write it out.  If you do not understand something about the law, by all means, write out a question, and I will explain the law in more detail.  So have no question that this is interactive.

I start my charges with a brief explanation of what your role is, from there we will go into the tools you have to do the job, and then we will go directly into what the law is that governs this case.

### B.   The Role of the Jury:  Judges of the Facts

First your role.  You are the judges of the facts.  You are the only judges of the facts.  That is not my function.  And I, as well as the lawyers, and their clients, must respect your judgment as to the facts.  You will determine the facts in this case solely and entirely on the evidence as you have seen it and heard it right here in this courtroom.  The verdict has to be unanimous.  And that means you all genuinely have to agree.  It is not eight of you thinking one

thing, two of you thinking something else, and whoever thinks the other thing goes along.  That is not a verdict.  The verdict must be unanimous as to each issue that we give you, based entirely on the evidence, without any bias or prejudice or sympathy.

I'll give you the verdict form soon.  But generally, I've set it up like a matrix and I've given you each of the claims.  Everything plays off the claims:  are they valid?  Are they infringed?  And so for each one, we say invalid/valid, not infringed/infringed.  And you'll put a checkmark for one or the other.  I'll tell you who has to prove what, I'll remind you of that.  I'll remind you of what they have to prove.  But when you come to put checkmarks on this verdict slip, you all have to agree.

### C.       The Role of the Judge: Instructor as to the Law

Now, I am the judge of the law.  I have said that a number of times.  I simply mean to point out to you that in this courtroom I am the one who has the responsibility of teaching you the law.  You cannot quarrel with the law as I explain it to you.  I am going to tell you who has to prove what in this case.  I am going to tell you the burden of proof that each side bears.  You cannot ignore that.  Moreover, you cannot add to their burden or subtract from their burden.  When I say they have got to prove something, then they have to prove that.

### D.       Consider the Whole Charge

As I've already said, you have to follow the law the way I explain it to you.  But I want to give you some cautions on that.  I have to charge you as to every issue that's possibly in the case.  That does not mean that I think anything is proved or not proved.  I have no opinion on the disputed issues of fact in this case.  Do not seize on one part of it and say, "Aha, the case turns on this or that."  Listen to the whole charge and consider all aspects of the charge together.  So

do not think that because I am explaining in detail this or that that I think it is proved or that I think it is not proved.  I simply am trying to build for you a complete mental framework so that you will understand the law which you have to follow.  So listen to my whole charge from start to finish.

If you think that I think anything at all about this case, anything at all - and I have not been silent - when it has been necessary to give you legal guidance and legal instruction, I've jumped right in and, to the best of my ability, I've done it in a what I hope is a fair way.  If you think because I've jumped in and I said something, or if you think because of the way I'm saying something here now that I think this one or that one has the better of this or that position, I most earnestly instruct you to disregard it.

And I tell you as honestly as I know how, I have no views about this case.  It has been a privilege to preside over this case, but the truth is I do not talk to anyone about who is having the better of it or anything like that.  Just as I've told you not to discuss the case, the only thing I discuss with my law clerks are legal business.  And the honest truth is, I do not have a view about this case.  I will wait eagerly, as they will, to see what your verdict is.  I do not have a view about it.  I did not have a view going in, and I do not have a view now.  So do not take any clues from me.  I have none to give you.  My job is to teach you the law and that is all.


### E.      Role of the Attorneys

Now, one last thing before I get into the specifics here.  I'm going to say a couple of words about something that's not evidence and I want you to pay careful attention to it.  And you say what's he talking about?  Why's he talking about something that's not evidence?  Soon, the attorneys in this case will provide the closing arguments.  They'll argue their hearts out.  But they weren't there observing the facts.  They're teachers.  They're good teachers.  But you're

going to decide the case based upon the evidence.  If they're teaching, their arguments help you, persuade you, that's what they're intended to do.  And that's fine.  I just don't want you acting in any way because you respond positively or negatively to the lawyers as a person.  That's just not fair.  If the way this examination has gone on, some of it has grated you, you say, "Oh, you know, I'm disturbed by how they're behaving."  That's up to me.  That's my responsibility.  And I'm here to tell you they've tried a fine case.

But even if it's grated on you, put it out of your mind and look beyond that to the evidence.  And likewise, if any lawyer or lawyers, the way their manner or behaviors has particularly commended itself to you, well, don't give them anything special for it.  It's all based on the evidence.

### F.      How to Approach the Body of Evidence

Now, I have emphasized that you must confine your analysis to the evidence.  So let us take a moment and go over the evidence in this case, not witness by witness but rather type by type, so you know what tools you have.

#### 1)      Fact Witnesses

The first thing I think of is the testimony of the witnesses.  You have the power to believe everything that any witness said to you here from the witness stand.  To believe it all.  Equally, you have the power to disbelieve and disregard everything a witness said as though that witness never testified.  Between those two extremes you have the power to believe some things a witness says but to disbelieve other things the witness says.  You are not prevented from reaching a verdict because one witness has testified to one version of an event and another witness has testified to another version of the same event and both witnesses are under oath.  You can believe one or believe the other.  You can decide where the truth lies.

How do you do it?  You use your common sense as you are reasonable men and women. You may use everything you know about the witness.  How did these witnesses present, both on direct and cross-examination?  What was the opportunity of the particular witness to perceive, to comprehend, to understand, to recall adequately, to explain those things about which the witness testified?  Ask yourself, too, is the witness's testimony backed up, corroborated, lawyers say, by other evidence in the case, the documentary evidence, the evidence from other witnesses, the earlier statements by that same witness on deposition?  Or does that other evidence undercut it? Does it take away from it?  Does it make the evidence less believable?

You are entitled to take into account the relationship or independence of any witness with one side or the other in this case.  Did that color the witness's testimony?  Do any of the witnesses stand to gain or lose anything, depending upon how the case comes out?  Did that color the witness' testimony?  You can sum that up.

<u>2)      Opinion Witnesses</u>

Some witnesses have been allowed to give their opinion about certain things.  The law provides that when a witness has a background, experience, or training that judges and juries do not have, we will let that witness render his or her opinion to the jury to aid the jury in doing their function.  I call these witnesses, "opinion witnesses."

Like any other witness, your powers with respect to their opinions are no different.  That is, if I have allowed you to hear an opinion you may believe it; but equally you may disregard it. You may decide that its just not believable or credible.  Or you could believe part of what a witness says and disbelieve other parts of an opinion given by a witness.  It is left to your good judgment.

I suggest to you that in evaluating opinions given by witnesses you want to look at what under-girds them or underlies them.  What was the witness relying on?  Do you believe that?  If you believe that, it makes it more likely that the opinion makes sense.  Also, consider how did the witness come to its opinion?  Both by their experience, generally having nothing to do with this case, but also what do they know about things having to do with this case upon which their opinion rests.

### 3) Deposition Testimony

Also, we have deposition testimony.  What witnesses said in depositions, that is evidence, just like the evidence given here in court.  The law makes no distinction between that deposition evidence and the evidence given here in court.

In some instances, the witness could not be here at the trial.  In that case, video for the witness's deposition was played. While the witness could not be here at the trial, what he or she said at the deposition is evidence, just like the evidence given here in court.  And some deposition testimony was read on cross-examination, read by the lawyer, but the answers read by the lawyer, that is evidence.  The point is that what witnesses said in depositions, that is evidence, just like the evidence given here in court.  The law makes no distinction between the deposition evidence and the evidence given here in court.

Now, you can do a variety of things with that evidence, just as you could with the evidence presented here in court.  You can believe it, you can disbelieve it, and you can use it to compare to the live testimony of the witnesses.  Does that make the live testimony more likely or less likely?  Does it affect the credibility of the witness?

4)    Exhibits

Then we have all these exhibits.  And you are going to get them in the jury room.
Exhibits are like the testimony of witnesses and your powers are exactly the same.  You will
want to look over the exhibits.  And when you look at the exhibits, you have the right to believe
everything that is in an exhibit.  Equally, you have the power to disbelieve and disregard
everything that is in a particular exhibit if you do not think it makes sense, if you do not think it
is credible, if you do not think it is believable.

5)    Stipulations

You have some stipulations in this case.  And they are designed to shorten the time and
make things clear to you.  Stipulations are agreements among the lawyers, as they represent their
clients.  That is evidence.  But that is a special type of evidence, it is not disputed.  So you do not
have the right to just disregard it.  You take that as given.  It is evidence.

6)    Transcript

Thanks to the enormous skill of Mr. Womack, we can give you portions of the transcript
of this trial.  But if you send out a message saying, give us the whole trial transcript, I will not do
it.  Your requests for transcript have to be the product of deliberation.  I have let you take notes.
You have got to be more discrete.  Tell me what person or persons that you want, not just the
whole trial transcript.

7)    Notebooks

You will have your notebooks during the deliberation.  Your notebooks are for you.  Now
you will be discussing the case among yourselves.  And, of course, you may use your notebooks
to refresh your recollection.  Just do not pass your notebooks around to your fellow jurors. Just
like the arguments of the lawyers are not evidence of anything, your notebooks are not evidence

of anything.  They are your notebooks, personal to you.  As a matter of fact, no one will ever see them.  Ms. Smith will destroy them when the case is over.  They are to refresh your recollection so you can discuss matters with your fellow jurors.

      8)     <u>Analyze the Body of Evidence with Common Sense, Drawing Reasonable Inferences When Appropriate</u>

Now, that is the body of evidence that you have in this case.  A few words about what you do with it, how you analyze it.  You use your common sense.  You do not check your common sense at the door to the jury room.  Rather, I charge you to apply your common sense to the evidence in this case to the end that justice may be done.

At the same time, you do not go in there and guess.  But you can use your common sense to draw, what are called, reasonable inferences.  A reasonable inference is a logical deduction.  It is common sense.  And I am going to give you an example that has nothing to do with this case to better illustrate what a reasonable inference is and also to illustrate how far you can take it.

Here is my example: A lady testifies that she is walking along a country road and she looks out and she sees a field of barley.  Also, she sees that the barley is lying down in an irregular course through that field.  That is the testimony.  And you believe it.  Now, from that testimony, standing alone, you can believe something went through that field.  Because if it had been a windstorm, all the barley would be knocked over.  No, something went through the field.  That is the reasonable inference.  But if that is the only evidence you have on the point, you cannot tell what it was, adult, child, animal of some sort, big or small, somebody on a dirt bike.  You need more evidence to tell you what it was that went through the field.  So, yes, reasonable, commonsense inferences, but no guesswork and no speculation.

### G.      Explanation of the Verdict Form

Now, I think it's a good time, because we're going to get into the specifics, to pass out the jury verdict form and to look it over.  Now, the lawyers and I have worked together to make this just as straightforward as we possibly can.  So let's just step back, before I get into the specifics, and look at this verdict form as a whole.

As I mentioned before, the verdict form is set up as a matrix, one entry for each specific claim that's in dispute, and you should understand that you have to take each specific claim separately.

[EXPLAIN VERDICT FORM]


Source:  Adapted from *Ambit Corp. v. Delta Airlines, Inc.*, Civ. Action No. 09-10217-WGY.

**3.**      **OVERVIEW OF PATENTS**

This is a patent case.  The United States Constitution provides for patent protection to inventors.  A patent gives to the inventors, or their successors in interest, a period of exclusivity for the use of their invention.  And that simply means that no one may use the patented invention without first getting permission from the people who hold the patent.  And the patent owner is entitled to refuse to give anyone else permission to practice the invention.

Why do we give the inventor this right, this exclusive right to practice the patent for a period of years?  It is a trade-off.  The federal government says to the inventor under the law we will give you the exclusive right, the exclusive use of this invention for a period of years.  But, in return you have to teach the world how to make this invention, how to use this invention.

And why do we want that?  We want that as a matter of social policy because we want inventors.  We give the period of exclusivity as a reward.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO").  A valid United States patent gives the patent holder certain rights for up to 20 years from the date the patent application was filed.  The patent holder may prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States without the patent holder's permission.  A violation of the patent holder's rights is called infringement.  The patent holder may try to enforce a patent against persons believed to be infringers by filing a lawsuit in federal court.

The process of obtaining a patent is called "patent prosecution."  To obtain a patent, one must file an application with the PTO.  The PTO is an agency of the federal government and employs trained examiners who review applications for patents.  The application includes a section called the "specification," which must contain a written description of the claimed invention telling what the invention is, how it works, and how to make and use it, in such full,

clear, concise, and exact terms so that others skilled in the field will know how to make and use it. The specification concludes with one or more numbered sentences. These are the patent "claims." If the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries. Claims can be independent or dependent. An independent claim is self-contained. A dependent claim refers back to an earlier claim and includes the requirements of the earlier claim.

After the applicant files a patent application, a PTO patent examiner reviews it to determine whether the claims are patentable and whether the specification adequately describes the invention claimed. In examining a patent application, the patent examiner may review "prior art." Prior art is defined by law, and, at a later time, I will give you specific instructions on what constitutes prior art. In general, though, prior art includes things that existed before the claimed invention, that were publicly known or used in this country, or that were patented or described in a publication in any country. The examiner considers, among other things, whether each claim defines an invention that is new, useful, and not obvious when compared with the prior art. A patent lists the prior art the examiner considered; this list is called the "cited references." The cited references include the prior art found by the examiner as well as any prior art submitted to the PTO by the applicant.

After the prior art search and examination of the application, the patent examiner then informs the applicant in writing what the examiner has found and whether any claim is patentable, and thus will be "allowed." This writing from the patent examiner is called an "office action." If the examiner rejects any of the claims, the applicant then responds and sometimes changes the claims or submits new claims. This process, which takes place only between the examiner and the patent applicant, may go back and forth for some time until the

examiner believes that the application and claims meet the requirements for a patent.  The papers generated during this time of communicating back and forth between the patent examiner and the applicant make up what is called the "prosecution history."   All of this material becomes available to the public no later than the date when the PTO grants the patent.

Just because the PTO grants a patent does not necessarily mean that any invention claimed in the patent is, in fact, legally entitled to the protection of a patent.  One or more claims may, in fact, not be patentable under the law.  A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is not entitled to patent protection because it does not meet the requirements for a patent.  In other words, an accused infringer may defend a suit for patent infringement on the grounds that the patent is invalid.

Source:  Adapted from Fed. Cir. Bar Assoc. Model Instructions; *Ambit Corp. v. Delta Airlines, Inc.*, Civ. Action No. 09-10217-WGY; and Model Patent Jury Instruction No. 1.1, The National Jury Instruction Project, June 17, 2009.

4.      THE MEANING OF CLAIM TERMS

I have defined certain words and phrases in the patent claims.  During your deliberations

you must apply these meanings [Attachment A]:

| Claim | Term | Court's Construction |
|---|---|---|
| 1 | Rear cavity | the cavity within the headphone cup structure that is farther from the user and attached to the rear of the baffle. |
| 2 | Limiting structure | a structure that limits diaphragm excursion to allow the voice coil to reside at least partially in a gap mounted on the baffle without interfering with the normal range of motion of the diaphragm. |
| 5 | Means for recovering from collapse of the diaphragm" | a structure such as indentations, grooves, or corrugations for assisting the diaphragm in recovering its shape following collapse. |

For any words in the claim for which I have not provided you with a definition, you

should apply their plain English meaning.  If you do not understand what a claim means, by all

means, ask a question.  It is legal.  It is a matter of law.  That is not a dispute that the various

opinion witnesses can dispute about.  What the language means is for me.  It is how the law

works.  I must discharge it.

Source:   Adapted from Model Patent Jury Instruction No. 3.3, The National Jury Instruction Project, June 17, 2009; *Ambit Corp. v. Delta Airlines, Inc.*, Civ. Action No. 09-10217-WGY; Mem. & Order of Apr. 26, 2010.

5.      **INVALIDITY**

A.      **Invalidity—Generally**

Patent invalidity is a defense to patent infringement.  Even though the PTO examiner has allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are valid.  Invalidity is determined on a claim-by-claim basis.

I will now instruct you on the invalidity issues you should consider.  As you consider these issues, remember that Lightspeed bears the burden of proving that it is highly probable that the claims are invalid.

Source:  Adapted from Model Patent Jury Instruction No. 5.1, The National Jury Instruction Project, June 17, 2009; the '252 patent.

B.      **Lightspeed's Burden of Proof**

To prove that any claim of a patent is invalid, Lightspeed must persuade you of invalidity by clear and convincing evidence.  That means, Lightspeed has to make things clear to you.  If it is not clear, you cannot declare a particular claim invalid.  Otherwise stated, the Defendant must provide you with "evidence that produces, in your mind, an abiding conviction that the truth of the factual contentions at issue is highly probable."

Source:  Adapted from Fed. Cir. Bar Assoc. Model Instructions; *Ambit Corp. v. Delta Airlines, Inc.*, Civ. Action No. 09-10217-WGY.

C.      **Anticipation—Publicly Used or Known**

Lightspeed contends that claims 1 and 5 of the '252 patent are invalid because the claimed invention is not new.  For a claim to be invalid because it is not new, all of its requirements must have existed in a single device or method that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention.  In patent law, such previous device, method, publication or patent is called a "prior

art reference."  If a patent claim is not new we say it is "anticipated" by a prior art reference. Lightspeed must prove that it is highly probable that the claim was anticipated.

The disclosure in the prior art reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field of acoustics looking at that one reference would be able to make and use at least one embodiment of the claimed invention.

For a prior art reference to anticipate, it must enable one to practice the claimed invention.  That is, if you followed what was in the single prior art reference, you would practice this invention, as claimed, and it would work.  Something that describes, but does not teach how to make and use, cannot anticipate.  For example, a TV show like Star Trek might describe a lot of fictional things, but it does not teach how to make and use them, and therefore it cannot anticipate.

Lightspeed can show that a patent claim was not new if the claimed invention was already publicly known or publicly used by others in the United States before Bose invented it. If a patent claim is not new as explained above, you must find that claim invalid.

Since it is in dispute, you must determine a date of invention for the invention of the '252 patent and determine whether that date is before the date on which the Telex ANR headset became publicly known or publicly used by others in the United States.

To establish that the claimed invention is invalid as anticipated, Lightspeed must establish by clear and convincing evidence that the invention is not new.  That is, based on the evidence presented to you in this case, you must be left with a clear conviction that the claim is not new.  If it is not clear, you cannot declare a claim invalid.  The burden is less easily carried when the prior art was considered by the examiner.

<u>Source:</u>   Adapted from Model Patent Jury Instruction No. 5.5, The National Jury Instruction Project, June 17, 2009; Fed. Cir. Bar Assoc. Model Instructions; *Ambit Corp. v. Delta Airlines, Inc.*, Civ. Action No. 09-10217-WGY; Joint Pretrial Memorandum (Jul. 26, 2010).

## D.       Anticipation—Made or Invented by Someone Else

Lightspeed contends that claims 1 and 5 of the '252 patent are invalid as anticipated because the invention was first made or invented by someone else.  If someone other than Bose made or invented the invention described in one or more such patent claims involved in this lawsuit, then each such claim was "anticipated" by the other invention, and each such claim is invalid.  Lightspeed must prove that it is highly probable that each such claim was anticipated by the other invention.

Here is a list of the ways that Lightspeed can show that a patent claim was not new because the invention described in such claim was first made or invented by someone else:

- if the claimed invention was already made by someone else in the United States before Bose invented it, if that other person had not abandoned the invention or kept it secret;

- if Bose and Lightspeed dispute who is a first inventor, the person who first conceived of the claimed invention and first reduced it to practice is the first inventor; if one person conceived of the claimed invention first, but reduced it to practice second, that person is the first inventor only if that person (a) began to reduce the claimed invention to practice before the other party conceived of it and (b) continued to work with reasonable diligence to reduce it to practice from a time just before the other party's conception.

Since priority of invention is in dispute in this case, you must determine a date of conception and reduction to practice for the invention of the '252 patent and the Telex ANR headset, and whether Telex was reasonably diligent in reducing the invention to practice. Conception is the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is to be applied in practice.  Reduction to practice occurs either as of the filing of the patent application or when the invention was actually made and was

shown to work for its intended purpose.  Reasonable diligence means that the inventor worked continuously on reducing the invention to practice.  Interruptions necessitated by the everyday problems and obligations of the inventor or others working with him or her do not prevent a finding of reasonable diligence.

In order to prove prior invention in this case, Lightspeed is required to present additional evidence beyond the testimony of the prior inventor.  However, you must evaluate all pertinent evidence, including that testimony, and make a sound determination that the evidence credibly establishes prior invention.  Ultimately, Lightspeed bears the burden of proving that it is highly probable that the patent claims are invalid.

If the invention of a patent claim was first made or invented by someone else as explained above, you must find the patent claim invalid.

Source:  Model Patent Jury Instruction No. 5.6, The National Jury Instruction Project, June 17, 2009; Joint Pretrial Memorandum (Jul. 26, 2010).

### E.      Obviousness

In this case, Lightspeed contends claims 1, 2, 3, 5, and 6 of the '252 patent are invalid as obvious.  Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable the invention must also not have been objectively obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

Lightspeed may establish that a patent claim is invalid by showing clear and convincing evidence that the claimed invention would have been obvious to persons of ordinary skill in the art at the time the invention was made.  For the claim to be invalid as obvious you must first evaluate the following factors:

- What is the scope and content of the prior art;

- What are the differences, if any, between the invention and the prior art;

- What was the level of ordinary skill in the art at the time the invention was made; and

- What evidence is there, if any, of certain additional considerations relating to the obviousness or non-obviousness of the invention?

You must decide, in view of the evidence presented to you on these factors, whether the invention, considered as a whole, would have been obvious to one having ordinary skill in the art at the time the invention was made. You must make this determination separately for each of the inventions described in each of claims 1, 2, 3, 5, and 6.

Before doing so, however, you must keep in mind that it is not permissible to use hindsight in assessing whether the invention is invalid for obviousness. You cannot look at the invention knowing what persons of ordinary skill in the art know today. Rather, you must place yourself in the shoes of a person having ordinary skill in the field of technology of the patent at the time the invention was made.

In this case, Lightspeed contends that the inventions are obvious in view of a combination of more than one "prior art" reference. An invention comprised of several elements or limitations is not proved obvious merely by demonstrating that each of its elements was separately known in the prior art. For an invention to be obvious, a person of ordinary skill in the art must have had some reason at the time to combine the prior art references in a way that would result in the claimed invention. The burden of proving obviousness is less easily carried when the prior art was considered by the examiner.

The test of obviousness is not whether it would be obvious to try to make the invention, but rather whether successful practice of the claimed invention, actually doing it, would have been obvious to a person of ordinary skill in the art at the time of the invention.

I will now provide you with a more detailed description of the factors you must consider.

### 1)   Scope and Content of the Prior Art

The first question you must answer in determining whether or not an invention was obvious is the scope and content of the prior art at the time the invention was made.  You must decide whether specific references relied upon in this case are "prior art" to the inventions described in claims 1-17 of the '858 patent.

"Prior art" includes previous devices, articles and methods that were offered for sale, printed publications or patents that disclose the inventions or elements of the inventions.  Once you decide whether or not specific references are prior art, you must also decide what those references would have disclosed or taught to one having ordinary skill in the field of technology of the patent at the time the inventions were made.

Prior art must have come before the date of invention.  Accordingly, you may consider anything that was known to or used by others in the United States before the date of invention.  An invention is known when the information about it was reasonably accessible to the public on that date.  Again, it is not enough that something was privately known, or known by only a small handful of people.  It must be generally available to the public, part of the common knowledge.

You may also consider anything that has been patented or described in a printed publication, anywhere in the world, before Bose's date of invention.  A document is a "printed publication" only if it was publicly accessible.  An invention was patented by another if the other patent describes the same invention claimed by Bose to a person having ordinary skill in the technology.  You may also consider anything that was publicly used, sold, or offered for sale in the United States more than one year before Bose's date of invention.  An invention was publicly used when it was either accessible to the public or commercially exploited.  An invention was sold or offered for sale when it was offered commercially and what was offered was ready to be

patented, *i.e.*, a description to one having ordinary skill in the field of the technology could have made and used the claimed invention, even if it was not yet reduced to practice. You may also consider anything that was described in a published patent application filed by another in the United States or under the PCT system and designated the United States, and was published in English before the date of invention.

Now, art that is dated after the patent application date, that's not prior art. Anything that was conducted secretly, and not publicly disclosed in a patent or printed publication, that's not prior art either.

In order for a reference to be relevant for you to consider in deciding whether or not the claimed inventions would have been obvious, the reference must be within the field of the inventors' endeavor, or if it is from another field of endeavor, the reference must be reasonably related to the particular problems or issues the inventors faced or addressed when making the inventions described in claims 1, 2, 3, 5, and 6 of the '252 patent. A reference from a field of endeavor other than the inventors' is reasonably related to the problems or issues the inventors faced if the reference is one which, because of the matter with which the reference deals, logically would have commended itself to the attention of the inventors when considering the problems or issues they faced in this case. It is for you to decide what the problems or issues were that the inventors faced at the time the inventions in claims 1, 2, 3, 5, and 6 were made.

## 2)   Differences Over the Prior Art

The second question you must answer in determining whether or not the inventions were obvious at the time they were made is what differences there are, if any, between the prior art and the patented inventions. In analyzing this issue, do not focus solely on the differences between the prior art and the inventions because the test is not whether there are differences.

Rather, the test is whether or not each invention, as a whole, would have been obvious to one having ordinary skill in view of all the prior art at the time each invention was made.  This is because invention are typically combinations of existing principles or features, and it is improper to discount the value of combining various existing features or principles in a new way to achieve a new result - often the essence of invention.

<u>3)</u>      <u>Level of Ordinary Skill in the Art</u>

The third question you must consider is what was the level of ordinary skill in the art, at the time of the invention.  It is for you to decide what the level of ordinary skill was at the time the inventions were made based on the evidence presented to you in this case.  In doing so, you may consider any evidence relating to this issue that is introduced at trial, including:

- The educational levels and experience of the inventors at the time the inventions were made;

- The education levels and experience of other persons working in the field of the inventions at the time the inventions were made;

- The types of problems encountered in the field at the time the inventions were made;

- The sophistication of the technology in the field at the time the inventions were made;

- The teachings and disclosures of prior art references such as patents and publications; and

- The teachings and disclosures of any references that, while not prior art to the inventions, nonetheless contain teachings or disclosures of what the level of ordinary skill in the field may have been at the time the inventions were made.

Bose contends that the level of ordinary skill in the field of the invention was an undergraduate degree in either engineering, physics, or a similar technical field together with two to three years of experience designing, testing, implementing or otherwise working with audio components.  Alternatively, ordinary skill could be achieved with a more advanced degree and less experience, such as a master's degree in the same disciplines with one year of similar

experience.  Lightspeed contends that the level of ordinary skill in the field was mechanical and electronic engineering knowledge and experience relating to acoustics and transducer design, as well as several years experience in acoustics and transducer design.

### 4)      Objective Indicia of Non-Obviousness

The fourth question you must answer in making your assessment of obviousness is whether there are any objective indicial of non-obviousness. Objective indicia of nonobviousness include:

- Evidence of the commercial success of the products covered by the patent claims or made by the patented process;

- Evidence of a long-felt but unmet need for this invention;

- Evidence that others tried but failed to accomplish the result achieved by the invention;

- Whether unexpected results were achieved by the invention;

- Contemporaneous expression of a surprise or a claim by those skilled in the art following the invention;

- That other people took licenses to this patented process or claim; or

- The attempts to copy the invention by others.

Source:  Adapted from Fed. Cir. Bar Assoc. Model Instructions; *Ambit Corp. v. Delta Airlines, Inc.*, Civ. Action No. 09-10217-WGY; Joint Pretrial Memorandum (Jul. 26, 2010); Opening Expert Report of Dr. Marshall Buck Regarding Invalidity; Rebuttal Expert Report of Dr. Gary H. Koopmann.

## 6.      INFRINGEMENT

I will now instruct you how to decide whether Lightspeed has infringed the patent. Infringement is assessed on a claim-by-claim basis.  Therefore, there may be infringement as to one claim but not infringement as to another.

### A.      Bose's Burden of Proof

Bose contends that Lightspeed infringed the patent through its manufacture, use, sale, offer for sale, or importation into the United States of the Zulu Aviation Headset.  Specifically, Bose contends that Lightspeed has infringed claims 2, 3, 5, and 6.  There are two types of infringement: (1) "literal" infringement and (2) infringement under the "doctrine of equivalents." Bose contends that the Zulu headset infringes the asserted claims of the '252 patent under both types of infringement.

In order to prove infringement, Bose must prove the requirements, which I will describe momentarily, by a preponderance of the evidence.  A preponderance of the evidence means that the evidence that the Zulu headset meets all the limitations of any of the asserted claims is sufficient to tip the scale, even if slightly, in favor of finding infringement.  Otherwise stated, Bose has to prove infringement is more likely true than not true.

Now I will take a moment to define the requirements for both literal infringement and infringement under the doctrine of equivalents.  Then, I will describe the infringement analysis for dependent claims.

<u>Source:</u>  Adapted from Fed. Cir. Bar Assoc. Model Instructions; *Ambit Corp. v. Delta Airlines, Inc.*, Civ. Action No. 09-10217-WGY; Model Patent Jury Instruction No. 3.1, The National Jury Instruction Project, June 17, 2009.

## B.      Literal Infringement

You must decide whether Lightspeed has made, used, sold, or offered for sale within the United States, or imported into the United States, a product covered by claims 2, 3, 5, and/or 6 of the '252 patent.   You must compare each claim to Lightspeed's Zulu headset to determine whether every requirement of the claim is included in the Zulu headset.

To prove literal infringement, Bose must prove that it is more probable than not that the Zulu headset includes every requirement in Bose's patent claim.  If the Zulu headset omits any requirement recited in Bose's patent claim, Lightspeed does not infringe that claim.

For literal infringement, Bose is not required to prove that Lightspeed intended to infringe or knew of the patent.

Source:   Adapted from Model Patent Jury Instruction No. 3.2, The National Jury Instruction Project, June 17, 2009.

## C.      Infringement Under the Doctrine of Equivalents

Bose has the same burden of proof on the doctrine of equivalents, fair preponderance of the evidence.   The doctrine of equivalents is an equitable doctrine, what we call a fairness doctrine.   It prevents people from escaping infringement by making an insubstantial change in a patented invention.   The doctrine of equivalents is designed to catch that.

Under the doctrine of equivalents, a product or process satisfies a claim if, for each and every limitation of the claim that is not literally present in the accused product or process, the accused product or process has some corresponding alternative feature that is "equivalent" to the unmet claim requirement.

And here is what Bose has to prove, and they have to take each claim, claim by claim, and they have to take each element of the specific claim.   And they have to prove by a fair preponderance of the evidence that as to that element of the specific claim, the Zulu headset

performs substantially the same function in substantially the same way to achieve substantially the same result.   In other words, an alternative is considered to be "equivalent" to an unmet requirement of a claim if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" at the time the alleged infringement began.   You may also consider whether, at the time of the alleged infringement, a person having ordinary skill in the field of technology of the patent would have known of the interchangeability of the alternative feature and the unmet requirement of the claim.

In making your decision as to whether the Zulu headset is equivalent under the doctrine of equivalents, you must look at each and every limitation of that claim and decide whether the Zulu headset either meets that limitation or has some alternative feature that is "equivalent" to the unmet limitation.   If it does, the Zulu headset satisfies the claim under the doctrine of equivalents.

If instead, (1) the Zulu headset has an alternative to the unmet requirement but the alternative is not "equivalent" to the unmet requirement; or (2) the Zulu headset has no corresponding alternative feature to the unmet requirement, you must find that the requirement is not satisfied under the doctrine of equivalents and there is no infringement under the doctrine of equivalents.

Source:   Adapted from Fed. Cir. Bar Assoc. Model Instructions; *Ambit Corp. v. Delta Airlines, Inc.*, Civ. Action No. 09-10217-WGY.

### D.     Open-Ended or "Comprising" Claims

The beginning, or preambles, of claims 2, 3, 5, and 6 use the word "comprising" or "comprises."   "Comprising" means "including" or "containing but not limited to."   That is, if you decide that Lightspeed's product includes all the requirements in claims 2, 3, 5, and 6, the claims are infringed.   This is true even if the accused product includes components in addition to those

requirements.  For example, a claim to a table *comprising* a tabletop, legs, and glue would be infringed by a table that includes a tabletop, legs, and glue, even if the table also includes wheels on the table's legs.

Source:  Model Patent Jury Instruction No. 3.4, The National Jury Instruction Project, June 17, 2009; the '252 patent.

## E.      Infringement of Dependent Claims

Claim 1 of the '252 patent is known as an independent claim because it stands on its own. There are also dependent claims.  Claims 2, 3, 5, and 6 of the '252 patent are dependent claims. A dependent claim includes each of the requirements of the independent claim to which it refers, claim 1 in this case, and one or more additional requirements.

Ordinarily, in order to find infringement of dependent claims 2, 3, 5, and 6 of the '252 patent, you must first determine whether independent claim 1 of the patent has been infringed. However, in this case, I have already determined that claim 1 is infringed and you must accept that as true.  You must determine whether each additional requirement of the dependent claims has also been included in the accused product.  If each additional requirement has been included, then the dependent claim has been infringed.

Note that dependent claim 3 depends from dependent claim 2.  For dependent claim 3 to be infringed, you must first find that the requirements of dependent 2 are present in the accused product.  If you decide that dependent claim 2 has not been infringed, then dependent claim 3 cannot have been infringed.

Bose must prove that it is more probable than not that a patent claim has been infringed.

Source:  Model Patent Jury Instruction No. 3.7, The National Jury Instruction Project, June 17, 2009; the '252 patent.

### F.        Willful Infringement

In this case, Bose argues that Lightspeed willfully infringed the claims of Bose's patent.

The issue of willful infringement relates to the amount of damages Bose is entitled to recover in this lawsuit.  If you decide that Lightspeed willfully infringed the claims of Bose's patent, then it is my job to decide whether or not to award increased damages to Bose.  You should not take this factor into account in assessing the damages, if any, to be awarded to Bose.

To prove willful infringement, Bose must persuade you that it is highly probable that before the filing date of the complaint, Lightspeed acted with reckless disregard of the claims of Bose's patent.  To show "reckless disregard," Bose must satisfy a two-part test: the first concerns Lightspeed's conduct, the second concerns Lightspeed's state of mind.

When considering Lightspeed's conduct, you must decide whether Bose has proven it is highly probable that Lightspeed's conduct was reckless; that is, that Lightspeed proceeded with the allegedly infringing conduct with knowledge of the patent, and in the face of an unjustifiably high risk that it was infringing the claims of a valid and enforceable patent.  Because this is an objective issue, the state of mind of Lightspeed is not relevant to it.  Legitimate or credible defenses to infringement, even if ultimately not successful, demonstrate a lack of recklessness.

If you conclude that Bose has proven that Lightspeed's conduct was reckless, then you need to consider the second part of the test.  You must determine whether Bose proved it is highly probable that the unjustifiably high risk of infringement was known or so obvious that it should have been known to Lightspeed.  In deciding whether Lightspeed satisfied the state-of-mind part of the test, you should consider all facts surrounding the alleged infringement.

Source:  Model Patent Jury Instruction No. 4.1, The National Jury Instruction Project, June 17, 2009; Complaint (Feb. 13, 2009).

**7.     DAMAGES**

**A.     Generally**

I will now instruct you on damages.  If you find that Lightspeed has infringed one or more valid claims of the '252 patent you must determine the amount of money damages to which Bose is entitled.  By instructing you on damages, I do not suggest that one or the other party should prevail.  These instructions are provided to guide you on the calculation of damages in the event you find infringement of a valid patent claim and thus must address the damages issue.

The amount of damages must be adequate to compensate Bose for the infringement, but it may not be less than a "reasonable royalty."  At the same time, your damages determination must not include additional sums to punish Lightspeed or to set an example.  You may award compensatory damages only for the loss that Bose proves was more likely than not caused by Lightspeed's infringement.

Source:  Model Patent Jury Instruction No. 6.1, The National Jury Instruction Project, June 17, 2009; Joint Pretrial Memorandum (Jul. 26, 2010).

**B.     Burden of Proof**

Where the parties dispute a matter concerning damages, it is Bose's burden to prove that it is more probable than not that Bose's version is correct.  Bose must prove the amount of damages with reasonable certainty, but need not prove the amount of damages with mathematical precision.  However, Bose is not entitled to damages that are remote or speculative.

When the amount of damages cannot be ascertained with precision due to poor record keeping by Lightspeed, any doubts regarding the amount should be resolved against Lightspeed.

Source:  Model Patent Jury Instruction No. 6.2, The National Jury Instruction Project, June 17, 2009; Joint Pretrial Memorandum (Jul. 26, 2010).

### C.      When Damages Begin

In this case, you should assess damages beginning in July 2007. Bose and Lightspeed

have agreed upon this date.

Source:  Model Patent Jury Instruction No. 6.3, The National Jury Instruction Project, June 17, 2009; Joint Pretrial Memorandum (Jul. 26, 2010).

### D.      Lost Profits

In this case, Bose seeks to recover lost profits resulting from Lightspeed's infringement.

One way Bose may establish lost profits is by proving it is more probable than not that:

1.      there was demand for the patented product;

2.      there were no acceptable noninfringing alternatives, or, if there were, that Bose

lost some sales as a result of the infringing activity;

3.      Bose had the manufacturing and marketing capacity to make any infringing sales

actually made by Lightspeed; and

4.      the amount of profit Bose would have made if Lightspeed had not infringed.

For those infringing sales where Bose does not seek, or does not prove, lost profits

damages, the law requires that you award Bose a reasonable royalty.  I will now instruct you on

how to calculate reasonable royalty damages.

Source:  Model Patent Jury Instruction No. 6.4, The National Jury Instruction Project, June 17, 2009; Joint Pretrial Memorandum (Jul. 26, 2010).

### E.      Reasonable Royalty

If Bose has not proved its claim for lost profits, or has proved its claim for lost profits for

only a portion of the infringing sales, then Bose should be awarded a reasonable royalty for all

infringing sales for which it has not been awarded lost profits damages.

A royalty is a payment made to a patent holder in exchange for rights to make, use or sell the claimed invention. A reasonable royalty is the payment that would have resulted from a negotiation between a patent holder and the infringer taking place just before the time when the infringing sales first began. In considering the nature of this negotiation, the focus is on what the expectations of the patent holder and infringer would have been had they entered into an agreement at that time and acted reasonably in their negotiations. However, you must assume that both parties believed the patent was valid, infringed and enforceable. In addition, you must assume that patent holder and infringer were willing to enter into an agreement; your role is to determine what that agreement would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

In determining the royalty that would have resulted from the hypothetical negotiation you may consider real world facts including the following to the extent they are helpful to you:

- Licenses or offers to license the patent at issue in this case;

- Licenses involving comparable patents;

- The licensing history of the parties;

- Licensing practices in the relevant industry;

- Whether the patent owner had an established policy of refusing to license the patent at issue;

- The relationship between the patent owner and alleged infringer, including whether or not they were competitors;

- The significance of the patented technology in promoting sales of the alleged infringer's products and earning it profit;

- Alternatives to the patented technology and advantages provided by the patented technology relative to the alternatives;

- The portion of the alleged infringer's profit that should be credited to the invention as distinguished from non-patented features, improvements or contributions; and

- Any other economic factor that a normally prudent businessperson would, under similar circumstances, take into consideration in negotiating the hypothetical license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.

Source:  Model Patent Jury Instruction Nos. 6.5, 6.6, The National Jury Instruction Project, June 17, 2009; Joint Pretrial Memorandum (Jul. 26, 2010).

## 8.    CONTRACT

Finally, I will instruct you on the law of contracts.  You must determine whether Lightspeed's Zulu headset was included in the parties 2002 Settlement Agreement.  In order for you to make that determination, I will tell you what certain phrases in the Agreement mean.  You must apply these meanings in your deliberations.

| Phrase | Court's Construction |
|---|---|
| future improvement of those ANR models | |
| so long as those improvements bear no material relationship to the claim limitations of the 5,181,252 patent | |

For any words in the Agreement for which I have not provided you with a definition, you should apply their plain English meaning.  If you do not understand what a word or phrase means, ask a question.  It is legal.  It is a matter of law.

For you to find Bose liable to Lightspeed, you must find that Bose breached its contract with Lightspeed.  A party may breach a contract by failing to perform a contractual obligation when that performance is called for, unless that performance is otherwise excused.

If you find that the Zulu headset was included in the parties 2002 Agreement, you must find for Lightspeed.  If you find that the Zulu headset was not included in the parties 2002 Agreement, you must find for Bose.

Source:  Adapted from Massachusetts Jury Instructions—Civil, Issue 2 § 2.12 (1999); Model Patent Jury Instruction No. 3.3, The National Jury Instruction Project, June 17, 2009; Def.'s Am. Answer and Counterclaims (Nov. 13, 2009).

**9.      CONCLUSION**

This concludes my instructions on the law.  If I have any additions or corrections, I will

give them to following closing arguments, and then the case will be in your hands.

**ATTACHMENT A**

| Claim | Term | Court's Construction |
|-------|------|----------------------|
| 1 | Rear cavity | the cavity within the headphone cup structure that is farther from the user and attached to the rear of the baffle. |
| 2 | Limiting structure | a structure that limits diaphragm excursion to allow the voice coil to reside at least partially in a gap mounted on the baffle without interfering with the normal range of motion of the diaphragm. |
| 5 | Means for recovering from collapse of the diaphragm" | a structure such as indentations, grooves, or corrugations for assisting the diaphragm in recovering its shape following collapse. |

## ATTACHMENT B

## GLOSSARY OF PATENT TERMS

**Application** – The initial papers filed by the applicant with the United States Patent and Trademark Office (also called the Patent Office or PTO).

**Claims** – The numbered sentences appearing at the end of the patent that define the invention. The words of the claims define the scope of the patent holder's exclusive rights during the life of the patent.  Claims can be independent or dependent. An independent claim is self-contained.  A dependent claim refers back to an earlier claim and includes the requirements of the earlier claim.

**License** – Permission to use or make the patented invention, or perform any of the other exclusive rights granted by the patent, which may be granted by a patent holder in exchange for a fee called a "royalty" or other types of payment.

**Office action** – Communication from the patent examiner regarding the patent application.

**Patent examiners** – Personnel employed by the PTO who examine patent applications, each in a specific technical area, to determine whether the claims of a patent application are patentable and whether the specification adequately describes and enables the claimed invention.

**Prior art** – Prior art is not art as one might generally understand the word art.  Rather, prior art is a technical term relating to patents.  In general, it includes things that existed before the claimed invention and might typically be a patent or a printed publication. I will give you a more specific definition of prior art later.

**Prosecution history** – The written record of proceedings between the applicant and the PTO, including the original patent application and later communications between the PTO and applicant.  It is also sometimes referred to as the patent's "file wrapper."

**Specification** – The information that appears in the patent and concludes with one or more claims. The specification includes the written text and the drawings. In the specification, the inventor should provide a description telling what the invention is, how it works, and how to make and use it so as to enable others skilled in the art to do so, and what the inventor believed at the time of filing to be the best way of making the invention.

**Ordinary skill in the art** – The level of experience, education, and/or training that those individuals who worked in the area of the invention ordinarily possessed at the time of the effective filing date of the patent application.

Respectfully submitted,

Dated:  September 3, 2010

/s/ *Andrew R. Kopsidas*

Ruffin B. Cordell (admitted *pro hac vice*)
Andrew R. Kopsidas (admitted *pro hac vice*)
Steven A. Bowers (admitted *pro hac vice*)

FISH & RICHARDSON P.C.
1425 K Street, N.W., 11th Floor
Washington, D.C. 20005
Telephone: (202) 783-5070
Facsimile: (202) 783-2331

Juanita R. Brooks (admitted *pro hac*)

FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130
Telephone: (858) 678-5070
Facsimile: (858) 678-5099

Charles Hieken (233,640)

FISH & RICHARDSON P.C.
225 Franklin Street
Boston, MA  02110-2804
Telephone: (617) 542-5070
Facsimile:  (617) 542-8906

Attorneys for Plaintiff
BOSE CORPORATION

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 3, 2010 a true and correct copy of the foregoing document was filed with the Clerk of the Court for the District of Massachusetts via the ECF System which will send notification to all registered participants of the ECF System.

<u>     */s/ Andrew R. Kopsidas*          </u>
Andrew R. Kopsidas