IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

BOSE CORPORATION,

     Plaintiff,

v.

LIGHTSPEED AVIATION, INC.,

     Defendant.

Civil Action No. 1:09-cv-10222-WGY

# LIGHTSPEED'S PROPOSED FINAL JURY INSTRUCTIONS

# TABLE OF CONTENTS

1.1   WHAT A PATENT IS AND HOW ONE IS OBTAINED ........................................1
1.2   THE PATENT INVOLVED IN THIS CASE ........................................................4
1.3   SUMMARY OF CONTENTIONS .......................................................................5
1.4   OVERVIEW OF APPLICABLE LAW ...............................................................6
1.5   OUTLINE OF TRIAL ......................................................................................9

2.1   SUMMARY OF CONTENTIONS / ROLE OF THE CLAIMS ...............................10
2.2   EXPLANATION OF VERDICT FORM.............................................................12

3.1   VALIDITY – BURDEN OF PROOF ................................................................13
3.2   ANTICIPATION – PUBLICLY KNOWN OR USED BEFORE BOSE...................14
3.3   ANTICIPATION – MADE OR INVENTED BY SOMEONE ELSE
      BEFORE BOSE ............................................................................................15
3.4   ANTICIPATION – STATUTORY BAR .............................................................17
3.5   OBVIOUSNESS ............................................................................................18

4.1   PERMISSION UNDER 2002 AGREEMENT BETWEEN BOSE AND
      LIGHTSPEED ...............................................................................................22
4.2   INFRINGEMENT...........................................................................................22
4.3   BREACH OF CONTRACT ..............................................................................23
4.4   BREACH OF CONTRACT – DAMAGES ..........................................................23

5.1   DAMAGES ..................................................................................................24
5.2   DATE DAMAGES BEGIN TO ACCRUE AND CEASE........................................25
5.3   LOST PROFITS DAMAGES – THE "BUT FOR" TEST ........................................26
5.4   REASONABLE ROYALTY .............................................................................27

6.1   WILLFULNESS ...........................................................................................30

ATTACHMENT A ...................................................................................................1A

ATTACHMENT B ...................................................................................................2A

## 1.1   WHAT A PATENT IS AND HOW ONE IS OBTAINED

This case involves a dispute over a United States patent. Before summarizing the positions of the parties and the legal issues involved in the dispute, I want to explain what a patent is and how one is obtained.

The United States Constitution provides for patent protection to inventors. A patent gives to the inventors, or their successors in interest, a period of exclusivity for the use of their invention. And that simply means that no one may use the patented invention without first getting permission from the people who hold the patent. And the patent owner is entitled to refuse to give anyone else permission to practice the invention.

Why do we give the inventor this right, this exclusive right to practice the patent for a period of years? It is a trade-off. The federal government says to the inventor under the law we will give you the exclusive right, the exclusive use of this invention for a period of years. But, in return you have to teach the world how to make this invention, how to use this invention, and you have to do this in a timely manner.

And why do we want that? We want that as a matter of social policy because we want inventors and inventions. Inventions are things that are new, useful and not obvious to those with ordinary skill in the pertinent technical field. We give the period of exclusivity as a reward.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). A valid United States patent gives the patent holder certain rights for up to 20 years from the date the patent application was filed. The patent holder may prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States without the patent holder's permission. A violation of the patent holder's rights is called infringement. The patent holder may try to enforce a patent against persons believed to be infringers by filing a lawsuit in federal court.

The process of obtaining a patent is called "patent prosecution."  To obtain a patent, one must file an application with the PTO.  The PTO is an agency of the federal government and employs trained examiners who review applications for patents.  The application includes a section called the "specification," which contains a written description of the claimed invention telling what the invention is, how it works, and how to make and use it.  The specification concludes with one or more numbered sentences.  These are the patent "claims."  If the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.  Claims can be independent or dependent.  An independent claim is self-contained.  A dependent claim refers back to an earlier claim and includes the requirements of the earlier claim.

After the applicant files a patent application, a PTO patent examiner reviews it to determine whether the claims are patentable and whether the specification adequately describes the invention claimed.  In examining a patent application, the patent examiner may review "prior art."  Prior art is defined by law, and, at a later time, I will give you specific instructions on what constitutes prior art.  In general, prior art includes information that demonstrates the state of technology that existed before the patent application was filed with the PTO.  For example, prior art includes things that existed before the claimed invention, that were publicly known or used in this country, or that were patented or described in a publication in any country.  The examiner considers, among other things, whether each claim defines an invention that is that is truly an advance over the state of art at the time.  A patent lists the prior art the examiner considered; this list is called the "cited references."  The cited references include the prior art found by the examiner as well as any prior art submitted to the PTO by the applicant.

After the prior art search and examination of the application, the examiner then informs the applicant in writing what the examiner has found and whether any claim is patentable, and thus will be "allowed." This writing from the patent examiner is called an "office action." If the examiner rejects any of the claims, the applicant then responds to the examiner to try and persuade the examiner to allow the claims. Sometimes the applicant will sometimes change the claims or submits new claims. This process, which takes place only between the examiner and the patent applicant, may go back and forth for some time until the examiner believes that the application and claims meet the requirements for a patent. The papers generated during this time of communicating back and forth between the patent examiner and the applicant make up what is called the "prosecution history."

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent is, in fact, legally entitled to the protection of a patent. One or more claims may, in fact, not be patentable under the law. For example, the PTO may not have had available to it all the prior art that will be presented to you, either because the applicant failed to submit it or the examiner failed to find it during his or her search, or the PTO did not properly consider the prior art before the examiner because of assertions made by the applicant. A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is not entitled to patent protection because it does not meet the requirements for a patent. In other words, an accused infringer may defend a suit for patent infringement on the grounds that the patent is invalid. Simply because a patent claim was allowed by the PTO does not mean that the claim is valid.

Source:  Adapted from Federal Circuit Bar Association Model Patent Jury Instructions (Nov. 12, 2009) (hereinafter "Fed. Cir. Bar Assoc. Model Instructions"); *Ambit Corp. v. Delta Airlines, Inc.*, Civ. Action No. 09-10217-WGY; and Model Patent Jury Instruction No. 1.1, The National Jury Instruction Project, June 17, 2009.

## 1.2    THE PATENT INVOLVED IN THIS CASE

Let's take a moment to look at the patent in this case.  The cover page of the patent identifies the date the patent was granted and patent number in the upper right corner, as well as the inventor's names, the filing date, and a list of the prior art references the PTO considered prior to allowing the patent.  The patent at issue in this case is United States Patent 5,181,252, which we will refer to by the last three numbers as "the '252 patent."  It is titled "High Compliance Headphone Driving."  Bose originally told the PTO that Mr. Sapiejewski and Mr. Breen were co-inventors.  Bose then told the PTO that Mr. Sapiejewski was the only inventor to obtain allowance of the '252 patent.  That was not true.  Just prior to filing this lawsuit in 2009, Bose admitted this and added Mr. Breen back as an inventor.  The parties will get into these facts in more detail.  On the front page, you will also see that the patent has been assigned to Bose Corporation.  The patent expired on. January 19, 2010.

The specification of the patent begins with an abstract, also found on the cover page.  The abstract is a brief statement about the subject matter of the invention.  Next come the drawings.  The drawings illustrate various aspects or features of the invention.  The written description of the invention appears next and is organized into two columns on each page.  The specification ends with numbered paragraphs.  These are the patent claims.

The drawings and specification provide a context for the claims but it is the claims that define how broad or narrow the patent's coverage is.  The claims define the area of exclusivity.  The claims are the patent owner's legal rights.

You will first need to understand what each claim covers in order to decide whether the claim is invalid or whether there is an infringement.  The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case.  Therefore, I have determined the meaning of the claims and will provide you

with my definitions of certain claim terms.  You must accept my definitions of these words in the

claims as being correct.  It is your job to take these definitions and apply them to the issues that

you are deciding, including the issues of invalidity and infringement.

<u>Source</u>:  Adapted from Fed. Cir. Bar Assoc. Model Instructions; *Ambit Corp. v. Delta Airlines, Inc.*, Civ. Action No. 09-10217-WGY; and Model Patent Jury Instruction No. 1.2, The National Jury Instruction Project, June 17, 2009.


**1.3     SUMMARY OF CONTENTIONS**

To help you follow the evidence, I will now give you a summary of the positions of the

parties.   The parties in this case are Bose Corporation, a company based in Framingham,

Massachusetts, and Lightspeed Aviation, Inc., a company based in Lake Oswego, Oregon.  The

case involves a patent obtained by Bose Corporation, the '252 patent.

Bose filed suit in this court seeking money damages from Lightspeed for allegedly

infringing the '252 patent by selling an aviation headset called the Zulu.

Lightspeed contends that claims 1, 2, 3, 5 and 6 of the '252 patent are invalid.  This will

be the first presentation to the jury and you will need to decide whether claims 1, 2, 3, 5 and 6

are invalid.

Bose contends that Lightspeed has infringed claims 1, 2, 3, 5, and 6 of the '252 patent by

making a product that includes all of the requirements of those claims without authority from

Bose.  In this case, you must decide whether a 2002 agreement between Bose and Lightspeed

provided Lightspeed authority to use the '252 patent with its Zulu headset  If you decide that any

claim of the '252 patent is valid and has been infringed by the Zulu headset without authority

from Bose, you will then need to decide any money damages to be awarded to Bose to

compensate for that infringement.  You will also need to decide whether the infringement was

willful.  If you decide that any infringement was willful, that decision should not affect any damage award you give.  I will take willfulness into account later in the proceedings.

<u>Source</u>:  Adapted from Fed. Cir. Bar Assoc. Model Instructions; *Ambit Corp. v. Delta Airlines, Inc.*, Civ. Action No. 09-10217-WGY; and Model Patent Jury Instruction No. 1.3, The National Jury Instruction Project, June 17, 2009; Complaint (Feb. 13, 2009); Def.'s Am. Answer and Counterclaims (Nov. 13, 2009); Mem. & Order of July 30, 2010.


**1.4     OVERVIEW OF APPLICABLE LAW**

In deciding the issues I just discussed, you will be asked to consider specific legal standards.  I will give you an overview of those standards now and will review them in more detail before the case is submitted to you for your verdict.  You will notice that in describing invalidity and infringement, I refer to the individual claims of the patent.  This is because you must determine whether each claim is valid and infringed, not whether the patent as a whole is valid and infringed.

**A.     Patent Validity, Infringement, and Damages**

You will be asked to determine whether the claims of the '252 patent are invalid, whether the claims are infringed, and if a claim is valid and infringed you will need to determine whether damages attributable to the infringement.   While it is your job to make these determinations, it is my job to as judge to determine the meaning of any claim that needs interpretation.  I will provide you with a copy of those meanings, which you must follow. [Attachment A].  I will also provide you with a glossary that identifies terms used in patent matters and gives you a definition of those terms.  [Attachment B.]

1)      Validity

The first issue you will be asked to decide is whether the claims of the '252 patent are invalid.  Validity is assessed on a claim-by-claim basis.  A patent may be invalid for a number of reasons, including because it claims subject matter that is not new or is obvious to one having ordinary skill in the pertinent technical field.  For a claim to be invalid because it is not new, Defendant Lightspeed must show, by clear and convincing evidence, that is to say proof that it is highly probable, that all of the elements of a claim are present in a single previous device, or sufficiently described in a single previous printed publication published before Bose made the invention of the '252 patent.  The older references are sometimes called prior art.  If a claim is not new, it is said to have been anticipated..  In this case, Lightspeed contends that the Telex ANR headset anticipates claims 1 and 5 of the '252 patent.  I have already decided that the Telex ANR headset includes every limitation of claim 1, so it will be incumbent upon you to determine whether the Telex ANR headset is prior art and whether it satisfies the limitations of claim 5.  A patent claim can also be invalid if the applicant for patent was not filed within one year of when the invention was first used publicly.

Another way a claim may be invalid is if it would have been obvious.  Even though every element of a claim is not shown or sufficiently described in a single piece of "prior art," the claim may still be invalid if it would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time.  You will need to consider a number of questions in deciding whether the inventions claimed in the '252 patent are obvious.  I will provide you detailed instruction on these questions at the conclusion of the case.

2)      Infringement

As I mentioned before, Lightspeed does not contest that the Zulu headset includes every element of claim 1 as I construed the claim.  But, Lightspeed does contend that it had permission to sell such a product based on the 2002 License Agreement between Bose and Lightspeed. Therefore, you will be asked to decide whether the Zulu headset is within the scope of the 2002 License Agreement. You will also be asked to decide whether Lightspeed has infringed claims 2, 3, 5, and 6 of the '252 patent.  Infringement, like validity, is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but not infringement as to another.   In general, Lightspeed might infringe the '252 patent by making, using, selling or offering for sale in the United States a product that is covered by a claim of the '252 patent.  I will provide you with more detailed instructions on the requirements for infringement at the conclusion of the case.

3)      Damages

If you find a claim valid and infringed, you will also need to decide any money damages to be awarded to Bose to compensate it for the infringement.  A damages award should put Bose in approximately the same financial position that it would have been in had the infringement not occurred, but in no event may the damages award be less than what Bose would have been paid a reasonable royalty.  The damages you award are meant to compensate the patent holder and not to punish an infringer. You may not include in your award any additional amount as a fine or penalty, above what is necessary to compensate Bose for the infringement, in order to punish Lightspeed.  I will give you more detailed instructions on the calculation of damages at the conclusion of the case.

<u>Source</u>:  Adapted from Fed. Cir. Bar Assoc. Model Instructions; *Ambit Corp. v. Delta Airlines, Inc.*, Civ. Action No. 09-10217-WGY; Complaint (Feb. 13, 2009); Def.'s Am. Answer and Counterclaims (Nov. 13, 2009); Mem. & Order of July 30, 2010; Joint Pretrial Memorandum (Jul. 26, 2010).

## 1.5    OUTLINE OF TRIAL

The trial will now begin.  First, each side may make an opening statement regarding the validity of the claims of the '252 patent.  An opening statement is not evidence.  It is simply an outline by the lawyers to help you understand what that party expects the evidence will show.

After the opening statements, Lightspeed will present its evidence in support of its contention that the claims of the '252 patent are invalid.  To prove any claim is invalid, Lightspeed must persuade you by clear and convincing evidence that the claim is invalid.  Plaintiff Bose will then have an opportunity to present its evidence that the claims of the '252 patent are not, in fact, invalid.  This is referred to as "rebuttal" evidence.

Next, we will proceed to the infringement and damages phase of the trial.  Each side will have an opportunity to present an opening statement as to infringement and damages.  After the opening statements, Bose will present its evidence in support of its contention that it did not grant permission in the 2002 Agreement for Lightspeed to make and sell the Zulu headset and that claims 2, 3, 5, and 6 of the '252 patent have been infringed by Lightspeed.  To prove infringement of any claim, Bose must persuade you that it is more likely than not that Lightspeed infringed that claim.  Bose will also have an opportunity to present evidence regarding the appropriate amount of damages that Lightspeed should pay for their infringing actions.  Then, Lightspeed may put on their rebuttal evidence that they have not infringed any claims of the '252 patent, or if they have, the amount of damages they believe Lightspeed should pay for infringing

the claims of the '252 patent.  Finally, we will conclude with closing arguments by the attorneys regarding all of the issues.  These closing arguments are not evidence.

During the presentation of the evidence, the attorneys may be allowed brief opportunities to explain what they believe the evidence has shown or what they believe upcoming evidence will show.  The attorneys comments are not evidence and the attorneys are being allowed to comment solely for the purpose of helping you to understand the evidence.  You will be allowed to take notes during the trial and have your notebooks with you during deliberations.  But your notes are for you and you alone - do not show your notes to anyone else.  Your notes are not evidence.

After the evidence has been presented, I will give you final instructions on the law that applies to the case.  After the instructions and closing arguments, you will then decide the case.

Source:  Adapted from Fed. Cir. Bar Assoc. Model Instructions; *Ambit Corp. v. Delta Airlines, Inc.*, Civ. Action No. 09-10217-WGY.


## 2.1.   SUMMARY OF CONTENTIONS / ROLE OF THE CLAIMS

As I did at the start of the case, I will first give you a summary of each side's contentions. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I previously told you, Bose seeks money damages from Lightspeed for allegedly infringing the '252 patent by selling its Zulu headset that Bose argues is covered by the claims 1, 2, 3, 5, and 6 of the '252 patent.  Lightspeed contends that those claims are invalid, and that Bose has the contractual right to practice those claims pursuant to its 2002 agreement with Bose. Lightspeed contends that Bose breached that agreement when it sued Lightspeed.

Before you can decide the issues of patent invalidity and patent infringement, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers.

You will first need to understand what each asserted claim covers in order to decide whether or not the claim is invalid or infringed.  My role is to define the terms of the claims and your role is to apply my definitions to the validity and infringement questions that you are asked to decide.  I have determined the meaning of certain claim terms as follows:

[ATTACHMENT A][1]

The remaining terms of the claims that I have not construed are to be given their plain and ordinary meaning as understood by a person of ordinary skill in the art.  It is your job to take these definitions and apply them to the validity and infringement issues that you are deciding.

Now, the '252 patent has several claims. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed claim-by-claim. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a product meets all of the requirements of a claim, the claim is said to "cover" that product, and that product is said to "fall" within the scope of that claim. In other words, a claim covers a product only if each of the claim elements or limitations are present in that product.

The asserted claims of the '252 patent are claims 1, 2, 3, 5, and 6.  Claim 4 is not asserted.  Claim 1 is referred to as an "independent" claim because it includes all the elements or limitations covered by that claim.  The remaining claims are referred to as "dependent" claims because they each depend from claim 1 or another claim.  A dependent claim includes all of the

---

[1]Lightspeed maintains its objection to the Claim Constructions of the '252 patent ordered by the Court.

requirements of the claim(s) to which it refers.  The dependent claim then adds its own additional limitations.

Now, it is your job to determine whether the asserted claims are invalid and whether the asserted claims are infringed, on a claim by claim basis.

Source:  Federal Circuit Bar Association Model Patent Jury Instructions (Feb. 2010): B.1 and B.2.


## 2.2     EXPLANATION OF VERDICT FORM

Before getting into the specific instructions, it is a good time to pass out the jury verdict for and to look it over.  The verdict form includes the questions that you, the jury must answer.  In your deliberations, you may discuss any issues that you wish in any order that you wish.  I have set up this verdict form order because it makes sense to me, but you may deliberate however you as a jury deem it appropriate.

First, you will be asked to determine whether the asserted claims of the '252 patent are invalid.  You will determine whether the claims are invalid as "anticipated" or whether they are invalid because they are "obvious."  I will explain the meaning of these terms in a few minutes.  Since invalidity is a claim by claim analysis, we have set the verdict form up in a matrix form which is where you place your answer.  You must answer the anticipation and obviousness question for each asserted claim of the '252 patent.  If you find each claim either anticipated or obvious, you may stop and sign the verdict form.

If you do not find the claims invalid, you must determine whether they are infringed by Lightspeed's "Zulu" headset.  As I explained earlier, infringement is the use of a claimed invention without authority from the patent owner.  In this case, there is an agreement between

Bose and Lightspeed concerning Lightspeed's use of the '252 patent. So, at the threshold, you must decide whether Lightspeed's Zulu was authorized under the agreement. If you find that the agreement authorized Lightspeed to make and sell the Zulu headset, you can stop and sign the verdict form.

If you do not find that Lightspeed was authorized under the agreement to make and sell the Zulu headset, you must proceed to determine whether the headset infringes the asserted claims of the '252 patent. If you find that a claim has been infringed, and that the claim is not anticipated or obvious, you should proceed to determine the amount of damages, and whether the infringement was willful.

We will now go through the legal standards that you must apply in your analysis.

Source: 35 U.S.C. § 271(a); Jury charge in *Ambit Corp. v. Delta Airlines*, Civ. Action No. 09-10217-WGY.


## 3.1    VALIDITY—BURDEN OF PROOF

Patent invalidity is a defense to patent infringement. Even though the U.S. Patent & trademark Office has allowed the claims of a patent, Lightspeed was not allowed to participate in that process and the examiner that allowed the patent did not have all of the information that you have before you. You have the ultimate responsibility for deciding whether the claims of the patent are invalid.

To prove that any claim of a patent is invalid, Lightspeed must persuade you of invalidity by clear and convincing evidence. In other words, you must be left with a clear conviction that the claim is invalid. This standard is more easily meet when the information at issue was not

before the U.S. Patent & trademark Office examiner at the time the patent was originally examined.

<u>Source</u>:[2]  Adapted from Fed. Cir. Bar Assoc. Model Instructions; *Ambit Corp. v. Delta Airlines, Inc.*, Civ. Action No. 09-10217-WGY.  *Am. Hoist & Derrick Co., v. Sowa & Sons, Inc*., 725 F.2d 1350, 1359-60 (Fed. Cir. 1984); *KSR Int'l Co. v. Teleflex Inc.,* 550 U.S. 398 (2007).

## 3.2    ANTICIPATION – PUBLICLY KNOWN OR USED BEFORE BOSE

Lightspeed contends that claims 1 and 5 of the '252 patent are invalid because all of the requirements of those claims were publicly known and used before the '252 inventors, John Breen and Roman Sapiejewski, invented them on August 23, 1989.  In patent law, such public knowledge or use is called "prior art."  If claims 1 or 5 were publicly known or used before August 23, 1989, we say that the claim is invalid as "anticipated" by the prior art.

The disclosure of the prior art can be a product or document, and does not have to use the same words as the claim.  However, all of the requirements of the claim must be present, either stated or necessarily implied, so that someone of ordinary skill in the field of acoustics looking at that one reference would be able to make and use at least one embodiment of the claimed invention.

Anticipation also occurs when the claimed invention inherently (necessarily) results from practice of the prior art, even if the inherent disclosure was unrecognized or unappreciated by one of ordinary skill in the field of the invention.

Lightspeed contends that claims 1 and 5 are anticipated by the Telex ANR headset.  The Court has already determined that the Telex headset practices every element of claim 1.  You

---

[2]Lightspeed objects to the burden of proof.  While the burden proposed is typical of an issued patent, all claims of the '252 patent of inventors Sapiejewski and Breen was rejected by the Patent Office.  (Tr. Ex. 2.)  Bose has never overcome that rejection, so there should be no presumption of validity.  In fact, it should be Bose's burden to prove that all claims of the '252 patent of inventors Sapiejewski and Breen are valid.

must determine whether the Telex headset practices claim 5 of the '252 patent, and whether the

Telex headset was publicly known or publicly used in the United States before '252 inventors,

John Breen and Roman Sapiejewski, invented them on August 23, 1989.  If you determine that

these claims are anticipated, you must find them invalid.

Source:  Adapted from Model Patent Jury Instruction No. 5.5, The National Jury Instruction
Project, June 17, 2009;Joint Pretrial Memorandum (Jul. 26, 2010).


## 3.3      ANTICIPATION – MADE OR INVENTED BY SOMEONE ELSE BEFORE BOSE

Lightspeed contends that claims 1 and 5 of the '252 patent are invalid as anticipated

because the invention was first made or invented by Joel Johnson of Telex, someone other than

'252 inventors Sapiejewski and Breen. If Joel Johnson made or invented the invention described

in claims 1 and 5 before '252 inventors Sapiejewski and Breen did on August 23, 1989, then

each claim was "anticipated" by Joel Johnson, and each claim is invalid.

Here is a list of the ways that Lightspeed can show that claims 1 or 5 were first made or

invented by someone else:

- if the claimed invention was already made by Joel Johnson in the United States
  before '252 inventors Sapiejewski and Breen invented it, if Joel Johnson had not
  abandoned the invention or kept it secret;

- if Bose and Lightspeed dispute who is a first inventor, the person who first conceived
  of the claimed invention and first reduced it to practice is the first inventor; if one
  person conceived of the claimed invention first, but reduced it to practice second,
  that person is the first inventor only if that person (a) began to reduce the claimed
  invention to practice before the other party conceived of it and (b) continued to work
  with reasonable diligence to reduce it to practice from a time just before the other
  party's conception.

Since priority of invention is in dispute in this case, you must know that Bose contended

in this case that its conception and reduction to practice occurred on August 23, 1989 when it

filed its application for the '252 patent.  You must determine a date of conception and reduction

to practice for the invention of the Telex ANR headset, and whether Mr. Johnson was reasonably diligent in reducing the invention to practice.  Conception is the formation in the mind of the inventor, of a definite and permanent idea of the complete and operative invention, as it is to be applied in practice.  Reduction to practice occurs when the invention was actually made and was shown to work for its intended purpose.  Reasonable diligence means that the inventor worked continuously on reducing the invention to practice.  Interruptions necessitated by the everyday problems and obligations of the inventor or others working with him or her do not prevent a finding of reasonable diligence.

Maintaining the development of a product in confidence, in the ordinary course of business, is not concealment of the idea so long as the public release of the product is diligently pursued.

In order to prove the date of an invention in this case, whether it be by Lightspeed or Bose, the party is required to present tangible corroborating evidence, such as documents or products.  Mere testimony, without more, cannot establish a date of invention.  You must evaluate all pertinent evidence, including testimony, and make a sound determination that the evidence credibly establishes a date of invention.

If the invention of claims 1 or 5 was first made or invented by Joel Johnson as explained above, you must find the patent claims invalid.

<u>Source</u>:  Model Patent Jury Instruction No. 5.6, The National Jury Instruction Project, June 17, 2009; Joint Pretrial Memorandum (Jul. 26, 2010).

## 3.4      ANTICIPATION – STATUTORY BAR

Lightspeed may prove that claims 1, 2, 3, 5 and 6 of the '252 patent are invalid by showing that it is highly probable that each such claim failed to meet one of the several statutory provisions in the patent laws.  These provisions are called "statutory bars."  For a patent claim to be invalid because of a statutory bar, all of its requirements must have been present in one device more than one year before the filing date of the patent application, in this case that is August 23, 1988.

Here is a list of ways Lightspeed can show that the patent application was not timely filed, that is, filed within one year of the occurrence of any of the following events:

- If the claimed invention was already patented or described in a printed publication anywhere in the world before August 23, 1988.

- If the claimed invention was already being publicly or commercially used in the United States before August 23, 1988 and that use was not primarily experimental use controlled by the inventor to test whether the invention worked for its intended purpose;

- If a device using the claimed invention was sold or offered for sale in the United States, and that claimed invention was ready for patenting, before August 23, 1988. The claimed invention is ready for patented if it was actually built or the inventor had prepared drawings or other descriptions of the claimed invention that were sufficiently detailed to enable a person of ordinary skill in the field of the invention to make and use the invention based on them.

Such a reference or an act invalidates a patent claim when the claimed invention necessarily results from practice of the subject of the prior art reference or act, even if the result was unrecognized and unappreciated by one of ordinary skill in the field of the invention.

If you find a patent claim failed to meet a statutory bar, you must find the patent claim invalid.

Source:  Model Patent Jury Instruction No. 5.6, The National Jury Instruction Project, June 17, 2009.

## 3.5    OBVIOUSNESS

In this case, Lightspeed contends claims 1, 2, 3, 5 and 6 of the '252 patent are invalid as obvious. A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field of the invention as of August 23, 1989. This means that even if all the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim or constitute a statutory bar to that claim, a person of ordinary skill in the field of the invention who knew about all of the prior art would nonetheless have considered the claimed invention to be obvious.

A patent claim composed of several requirements is not proved obvious merely by demonstrating that each of its requirements was independently known in the prior art. Although common sense directs one to look with care at a patent application that claims as innovation the combination of known requirements according to their established functions to produce a predictable result, it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the requirements in the way the claimed new invention does. This is so because inventions in most, if not all, instances rely upon building

blocks long since undiscovered and claimed discoveries almost of necessity will be combinations

of what, in some sense, is already known. Accordingly, you may evaluate whether there was

some teaching, suggestion, or motivation to arrive at the claimed invention before the time of the

claimed invention, although proof of this is not a requirement to prove obviousness. Teachings,

suggestions, and motivations may be found in written references including the prior art itself.

However, teachings, suggestions, and motivations may also be found within the knowledge of a

person with ordinary skill in the art including inferences and creative steps that a person of

ordinary skill in the art would employ. Additionally, teachings, suggestions, and motivations

may be found in the nature of the problem solved by the claimed invention, or any need or

problem known in the field of the invention at the time of and addressed by the invention.

Therefore, in evaluating whether such a claim would have been obvious, you should

consider a variety of factors:

1. Whether Lightspeed has identified a reason that would have prompted a person of ordinary skill in the field of the invention to combine the requirements or concepts from the prior art in the same way as in the claimed invention. There is no single way to define the line between true inventiveness on one hand (which is patentable) and the application of common sense and ordinary skill to solve a problem on the other hand(which is not patentable). For example, market forces or other design incentives may be what produced a change, rather than true inventiveness.
.
2. Whether the claimed invention applies a known technique that had been used to improve a similar device or method in a similar way.
.
3. Whether the claimed invention would have been obvious to try, meaning that the claimed innovation was one of a relatively small number of possible approaches to the problem with a reasonable expectation of success by those skilled in the art.

But you must be careful not to determine obviousness using hindsight; many true

inventions can seem obvious after the fact. You should put yourself in the position of a person of

ordinary skill in the field of the invention at the time the claimed invention was made, and you should not consider what is known today or what is learned from the teaching of the patent.

The ultimate conclusion of whether a claim is obvious should be based on your determination of several factual issues:

1.   You must decide the level of ordinary skill in the field of the invention that someone would have had at the time the claimed invention was made.

2.   You must decide the scope and content of the prior art. In determining the scope and content of the prior art, you must decide whether a reference is pertinent, or analogous, to the claimed invention. Pertinent, or analogous, prior art includes prior art in the same field of endeavor as the claimed invention, regardless of the problems addressed by the reference, and prior art from different fields reasonably pertinent to the particular problem with which the claimed invention is concerned. Remember that prior art is not limited to patents and published materials, but includes the general knowledge that would have been available to one of ordinary skill in the field of the invention.

3.   You must decide what difference, if any, existed between the claimed invention and the prior art.

Finally, you should consider any of the following factors that you find have been shown by the evidence:

A.   Factors tending to show nonobviousness include:

1.   commercial success of a product due to the merits of the claimed invention;

2.   a long-felt, but unsolved, need for the solution provided by the claimed invention;

3.   unsuccessful attempts by others to find the solution provided by the claimed invention;

4.   copying of the claimed invention by others;

5.   unexpected and superior results from the claimed invention;

6.      acceptance by others of the claimed invention as shown by praise from others in the field of the invention or from the licensing of the claimed invention; and

7.      disclosures in the prior art that criticize, discredit, or otherwise discourage the claimed invention and would therefore tend to show that the invention was not obvious.

B.    Factors tending to show obviousness include:

1.      common sense;

2.      independent invention of the same thing by others at about the same time;

3.      a combination of familiar elements according to known methods that yields predictable results;

4.      an arrangement of old elements with each performing their traditional function;

5.      an arrangement of elements or variations prompted by market forces or recognized design needs;

6.      a technique that has been used to improve similar devices in a similar way; and

7.      whether there existed at the time of invention a known problem for which there was an obvious solution encompassed by the patent's claims.

Although you should consider any evidence of these factors, the relevance and importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

If you find that a claimed invention was obvious as explained above, you must find that claim invalid.

Source:[3]  Model Patent Jury Instruction No. 5.6, The National Jury Instruction Project, June 17, 2009.

---

[3] OBJECTION:  The Court directed the parties that the jury was going to provide a decision on obviousness. Obviousness is a question of law based on underlying factual considerations. KSR Int'l Co. v. Teleflex, Inc., 550

**4.1    PERMISSION UNDER 2002 AGREEMENT BETWEEN BOSE AND LIGHTSPEED**

As I mentioned before, infringement of a patent occurs when a product covered by the patent is sold without authority from the patent owner, Bose in this case.  In this case, you have heard about the 2002 agreement between Bose and Lightspeed.  You will need to determine whether the 2002 agreement authorizes Lightspeed to make and sell its Zulu headset.

If you find that Lightspeed had authority from Bose to make and sell the Zulu headset, you must find that Lightspeed did not infringe the '252 patent.

Source:  35 U.S.C. §271(a); 2002 Agreement.

**4.2    INFRINGEMENT**

I will now instruct you how to decide whether or not Lightspeed has infringed the '252 patent.  As explained before, you will not have to determine infringement if you determine that the claims are invalid, or if you determine that Lightspeed had permission from Bose to make and sell the Zulu headset.

Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another.  The Court has already determined that the Zulu headset practices each of the limitations of claim 1, so you will only need to determine whether the Zulu headset infringes the asserted dependent claims, claims 2, 3, 5 and 6.  Note that claim 3 depends from claim 2, so claim 3 cannot be infringed unless claim 2 is also infringed.

In order to prove infringement, Bose must prove that the Lightspeed Zulu headset meets all of the requirements of the asserted claims by a preponderance of the evidence.  In other

---

U.S. 398 (2007). Moreover, the clear and convincing burden of proof should only apply to the underlying factual findings, not the ultimate decision on obviousness. *See, e.g.*, Model Patent Jury Instruction No. 5.6, The National Jury Instruction Project, June 17, 2009.

words, Bose must prove that it is more likely than not that the Zulu headset includes all of the requirements of claims 2, 3, 5 and 6.

<u>Source</u>:  Federal Circuit Bar Association Model Patent Jury Instructions (Feb., 2010), B.3.


**4.3      BREACH OF CONTRACT**

Lightspeed alleges that Bose breached its 2002 contract with Lightspeed by filing this lawsuit.  Lightspeed bears the burden of proof on this claim by a preponderance of the evidence. A party may breach a contract by failing to comply with a contractual obligation in the agreement.  To prove that Bose has breached the 2002 contract, Lightspeed must prove that it is more likely than not that Bose failed to comply with a contractual obligation in that agreement.

<u>Source</u>:  *Teragram Corp. v. Marketwatch.com, Inc.*, 444 F.3d 1, 27 (1st Cir. 2006); Restatement (Second) of Contracts §§ 224, 225; Massachusetts Jury Instructions – Civil § 2.12 Breach of Contract, Definition (2000).


**4.4      BREACH OF CONTRACT – DAMAGES**

If you determine that Bose has breached its agreement with Lightspeed, you must determine the amount of money which will reasonably and fairly compensate Lightspeed for the damage it sustained as a result of Bose's breach.

Lightspeed claims that its damages are its attorney fees and expenses associated with this case.  Through September, those fees were <<INSERT>>.  Lightspeed is incurring additional attorney fees by attending trial in this matter.

**5.1     DAMAGES**

If you find that Lightspeed infringed any valid claim of the '252 patent, without Bose's permission, you must then consider what amount of damages to award to Bose. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. I simply need to provide you will all of the instructions at this juncture in the case.

The damages you award must be adequate to compensate Bose for the infringement that you find. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put Bose in approximately the same financial position that it would have been in had the infringement not occurred.

Bose has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Bose establishes that it more likely than not suffered.

Bose is entitled to recover no less than a reasonable royalty for any infringement. Bose is not entitled to any damages that are remote or speculative.

Bose has two alternative damages theories.  First, Bose seeks lost profits.  Bose also seeks damages in the form of a reasonable royalty.

Lost profits consist of any actual reduction in business profits Bose suffered as a result of Lightspeed's infringement. A reasonable royalty is defined as the money amount Bose and Lightspeed would have agreed upon as a reasonable fee for Lightspeed's use of the invention at the time infringement began.

Source: Federal Circuit Bar Association Model Patent Jury Instructions (Feb., 2010), B.6; *See* 35 U.S.C. § 284.

**5.2     DATE DAMAGES BEGIN TO ACCRUE AND CEASE**

It is your job to determine when damages begin to accrue in this case.  Damages do not necessarily begin to accrue at the time the alleged infringement began.

If you find that Bose sells a product that includes the claimed invention, you must determine whether Bose has "marked" that product with the patent number. "Marking" is placing either the word "patent" or the abbreviation "pat." with the patent's number on substantially all of the products that include the patented invention. Bose has the burden of establishing that it substantially complied with the marking requirement. This means Bose must show that it marked substantially all of the products it made, offered for sale, or sold under the '252 patent, and that Bose made reasonable efforts to ensure that its licensees who made, offered for sale, or sold products under the '252 patent marked the products.

If Bose or its licensees have not marked those product with the patent number, you must determine the date that Lightspeed received actual notice of the '252 patent and the specific product alleged to infringe.  Actual notice means that Bose communicated to Lightspeed a specific charge of infringement of the '252 patent by a specific accused product or device. The filing of the complaint in this case qualified as actual notice, so the damages period begins no later than the date the complaint was filed.

For the purposes of this instruction, a party is a licensee under the '252 patent if Bose has entered into a contract with that party agreeing not to sue for infringement for selling a product that is covered by the '252 patent.

Any damages cease accruing on January 19, 2010 when the '252 patent expired.

<u>Source</u>: Federal Circuit Bar Association Model Patent Jury Instructions (Feb., 2010), B.6, *See* 35 U.S.C. § 287; *Amstead Industries Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 179, n. 2 (Fed.Cir.

1994) citing with approval In re Yarn Processing Patent Validity Litigation, 602 F.Supp. 159 (1984)("Section 287 applies to all "persons" who make or sell "for or under" the authority of the patentee and thus applies to authorizations by patentee of other persons to make and sell patented articles regardless of whether the authorizations are "settlement agreements," "covenants not to sue" or licenses.")

## 5.3   LOST PROFITS DAMAGES — THE "BUT FOR" TEST

In this case, Bose seeks to recover lost profits for some of Lightspeed's sales of the Zulu headset, and a reasonable royalty on the rest of Lightspeed's sales.

To recover lost profits, Bose must show a causal relationship between the infringement and Bose's loss of profit. In other words, Bose must show that, but for the infringement, there is a reasonable probability that Bose would have earned higher profits. To show this, Bose must prove that, if there had been no infringement, it would have made some portion of the sales that Lightspeed made of the Zulu headset.

Bose is only entitled to lost profits if it establishes each of the following:

(1) That there was a market demand for a product that includes each and every limitation of the claim(s) found to be infringed, and not invalid.

(2) That there were no available, acceptable, noninfringing substitute products.   An alternative product may be considered "available" even if the product was not actually on sale during the infringement period.   Factors suggesting the alternative was available include whether the material, experience, and know-how for the alleged substitute were readily available at the time of infringement.

(3) That Bose had the manufacturing and marketing capacity to make any infringing sales actually made by Lightspeed and for which Bose seeks an award of lost profits—in other words, that Bose was capable of satisfying the demand.

(4) The amount of profit that Bose would have made if Lightspeed had not infringed.

If Bose establishes it would have made some, but not all, of an alleged infringer's sales but for the infringement, the amount of sales that the patent holder lost may be shown by proving

the patent holder's share of the relevant market, excluding infringing products. A patent holder may be awarded a share of profits equal to its market share even if there were noninfringing substitutes available. In determining a patent holder's market share, the market must be established first, which requires determining which products are in that market. Products are considered in the same market if they are considered "sufficiently similar" to compete against each other. Two products are sufficiently similar if one does not have a significantly higher price than, or possess characteristics significantly different from, the other.

Source:   Federal Circuit Bar Association Model Patent Jury Instructions (Feb., 2010), B.6.

## 5.4      REASONABLE ROYALTY

If you find that Bose has established infringement, Bose is entitled to at least a reasonable royalty to compensate it for that infringement. If you find that Bose has not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales, then you may award Bose a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages.

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and the patent holder and infringer were willing to enter into an agreement. The

reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1) The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2) The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3) The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4) The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5) The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6) The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7) The duration of the patent and the term of the license.

(8) The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9) The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10) The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11) The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12) The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13) The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14) The opinion and testimony of qualified experts.

(15) The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people. The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

Source: Federal Circuit Bar Association Model Patent Jury Instructions (Feb., 2010), B.6; 35 U.S.C. § 284.

**6.1     WILLFULNESS**

Bose argues both that Lightspeed infringed and, further, that Lightspeed infringed willfully. If you have decided that Lightspeed has infringed, you must go on and address the additional issue of whether or not this infringement was willful.

Willfulness requires you to determine by clear and convincing evidence that Lightspeed acted recklessly. To prove that Lightspeed acted willfully, Bose must prove two things by clear and convincing evidence: First, that there was a high likelihood that Lightspeed's actions infringed a valid patent. In making this determination, you may not consider Lightspeed's state of mind, but you may take into account the normal standards of commerce. Second, if you find this threshold is satisfied, you must also find by clear and convincing evidence that this objectively defined risk was either known or so obvious that it should have been known to Lightspeed.

To do this, you must consider all of the facts, which may include but are not limited to whether or not there is a reasonable basis to believe that Lightspeed did not infringe or had a reasonable defense to infringement such as an invalidity or a contract defense.

<u>Source</u>: Federal Circuit Model Patent Jury Instructions, §3.8; *In re Seagate Tech., L.L.C.*, 497 F.3d 1360 (Fed. Cir. 2007).

**ATTACHMENT A**

| Claim | Term | Court's Construction |
|---|---|---|
| 1 | Rear cavity | the cavity within the headphone cup structure that is farther from the user and attached to the rear of the baffle. |
| 2 | Limiting structure | a structure that limits diaphragm excursion to allow the voice coil to reside at least partially in a gap mounted on the baffle without interfering with the normal range of motion of the diaphragm. |
| 5 | Means for recovering from collapse of the diaphragm | a structure such as indentations, grooves, or corrugations for assisting the diaphragm in recovering its shape following collapse. |

## ATTACHMENT B

## GLOSSARY OF PATENT TERMS

**Application** – The initial papers filed by the applicant with the United States Patent and Trademark Office (also called the Patent Office or PTO).

**Claims** – The numbered sentences appearing at the end of the patent that define the invention. The words of the claims define the scope of the patent holder's exclusive rights during the life of the patent. Claims can be independent or dependent. An independent claim is self-contained. A dependent claim refers back to an earlier claim and includes the requirements of the earlier claim.

**License** – Permission to use or make the patented invention, or perform any of the other exclusive rights granted by the patent, which may be granted by a patent holder in exchange for a fee called a "royalty" or other types of payment.

**Office action** – Communication from the patent examiner regarding the patent application.

**Patent examiners** – Personnel employed by the PTO who examine patent applications, each in a specific technical area, to determine whether the claims of a patent application are patentable and whether the specification adequately describes and enables the claimed invention.

**Prior art** – Prior art is not art as one might generally understand the word art. Rather, prior art is a technical term relating to patents. In general, it includes things that existed before the claimed invention and might typically be a prior device, a patent, or a printed publication. I will give you a more specific definition of prior art later.

**Prosecution history** – The written record of proceedings between the applicant and the PTO, including the original patent application and later communications between the PTO and applicant.  It is also sometimes referred to as the patent's "file wrapper."

**Specification** – The information that appears in the patent and concludes with one or more claims. The specification includes the written text and the drawings. In the specification, the inventor should provide a description telling what the invention is, how it works, and how to make and use it so as to enable others skilled in the art to do so, and what the inventor believed at the time of filing to be the best way of making the invention.

**Ordinary skill in the art** – The level of experience, education, and/or training that those individuals who worked in the area of the invention ordinarily possessed at the time of the effective filing date of the patent application.