IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BOSE CORPORATION,<br><br>            Plaintiff,<br><br>    v.<br><br>LIGHTSPEED AVIATION, INC.,<br><br>            Defendant. | Civil Action No. 1:09-cv-10222-WGY |

**LIGHTSPEED'S PROPOSED PRELIMINARY JURY INSTRUCTIONS**

1. **WHAT A PATENT IS AND HOW ONE IS OBTAINED**

This case involves a dispute over a United States patent. Before summarizing the positions of the parties and the legal issues involved in the dispute, I want to explain what a patent is and how one is obtained.

The United States Constitution provides for patent protection to inventors. A patent gives to the inventors, or their successors in interest, a period of exclusivity for the use of their invention. And that simply means that no one may use the patented invention without first getting permission from the people who hold the patent. And the patent owner is entitled to refuse to give anyone else permission to practice the invention.

Why do we give the inventor this right, this exclusive right to practice the patent for a period of years? It is a trade-off. The federal government says to the inventor under the law we will give you the exclusive right, the exclusive use of this invention for a period of years. But, in return you have to teach the world how to make this invention, how to use this invention, and you have to do this in a timely manner.

And why do we want that? We want that as a matter of social policy because we want inventors and inventions. Inventions are things that are new, useful and not obvious to those with ordinary skill in the pertinent technical field. We give the period of exclusivity as a reward.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). A valid United States patent gives the patent holder certain rights for up to 20 years from the date the patent application was filed. The patent holder may prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States without the patent holder's permission. A violation of the patent holder's rights is called infringement. The patent holder may try to enforce a patent against persons believed to be infringers by filing a lawsuit in federal court.

The process of obtaining a patent is called "patent prosecution." To obtain a patent, one must file an application with the PTO. The PTO is an agency of the federal government and employs trained examiners who review applications for patents. The application includes a section called the "specification," which contains a written description of the claimed invention telling what the invention is, how it works, and how to make and use it. The specification concludes with one or more numbered sentences. These are the patent "claims." If the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries. Claims can be independent or dependent. An independent claim is self-contained. A dependent claim refers back to an earlier claim and includes the requirements of the earlier claim.

After the applicant files a patent application, a PTO patent examiner reviews it to determine whether the claims are patentable and whether the specification adequately describes the invention claimed. In examining a patent application, the patent examiner may review "prior art." Prior art is defined by law, and, at a later time, I will give you specific instructions on what constitutes prior art. In general, prior art includes information that demonstrates the state of technology that existed before the patent application was filed with the PTO. For example, prior art includes things that existed before the claimed invention, that were publicly known or used in this country, or that were patented or described in a publication in any country. The examiner considers, among other things, whether each claim defines an invention that is that is truly an advance over the state of art at the time  A patent lists the prior art the examiner considered; this list is called the "cited references." The cited references include the prior art found by the examiner as well as any prior art submitted to the PTO by the applicant.

After the prior art search and examination of the application, the patent examiner then informs the applicant in writing what the examiner has found and whether any claim is

patentable, and thus will be "allowed." This writing from the patent examiner is called an "office action." If the examiner rejects any of the claims, the applicant then responds to the examiner to try and persuade the examiner to allow the claims. Sometimes the applicant will change the claims or submits new claims. This process, which takes place only between the examiner and the patent applicant, may go back and forth for some time until the examiner believes that the application and claims meet the requirements for a patent. The papers generated during this time of communicating back and forth between the patent examiner and the applicant make up what is called the "prosecution history." All of this material becomes available to the public no later than the date when the PTO grants the patent.

Just because the PTO grants a patent does not necessarily mean that any invention claimed in the patent is, in fact, legally entitled to the protection of a patent. One or more claims may, in fact, not be patentable under the law. For example, the PTO may not have had available to it all the prior art that will be presented to you in this case, either because the applicant failed to submit it or the examiner failed to find it during his or her search, or the PTO did not properly consider the prior art before the examiner because of assertions made by the applicant. A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is not entitled to patent protection because it does not meet the requirements for a patent. In other words, an accused infringer may defend a suit for patent infringement on the grounds that the patent is invalid. Simply because a patent claim was allowed by the PTO does not mean that the claim is valid.

Source: Adapted from Federal Circuit Bar Association Model Patent Jury Instructions (Nov. 12, 2009) (hereinafter "Fed. Cir. Bar Assoc. Model Instructions"); *Ambit Corp. v. Delta Airlines, Inc.*, Civ. Action No. 09-10217-WGY; and Model Patent Jury Instruction No. 1.1, The National Jury Instruction Project, June 17, 2009.

## 2.     THE PATENT INVOLVED IN THIS CASE

Let's take a moment to look at the patent in this case. The cover page of the patent identifies the date the patent was granted and patent number in the upper right corner, as well as the inventor's names, the filing date, and a list of the prior art references the PTO considered prior to allowing the patent. The patent at issue in this case is United States Patent 5,181,252, which we will refer to by the last three numbers as "the '252 patent." It is titled "High Compliance Headphone Driving." Bose originally told the PTO that Mr. Sapiejewski and Mr. Breen were co-inventors. Bose then told the PTO that Mr. Sapiejewski was the only inventor to obtain allowance of the '252 patent. Just prior to filing this lawsuit in 2009, Bose added Mr. Breen back as an inventor. The parties will get into these facts in more detail. On the front page, you will also see that the patent has been assigned to Bose Corporation. The patent expired on. January 19, 2010.

The specification of the patent begins with an abstract, also found on the cover page. The abstract is a brief statement about the subject matter of the invention. Next come the drawings. The drawings illustrate various aspects or features of the invention. The written description of the invention appears next and is organized into two columns on each page. The specification ends with numbered paragraphs. These are the patent claims.

The drawings and specification provide a context for the claims but it is the claims that define how broad or narrow the patent's coverage is. The claims define the area of exclusivity. The claims are the patent owner's legal rights.

You will first need to understand what each claim covers in order to decide whether the claim is invalid or whether there is an infringement. The law says that it is my role to define the terms of the claims and it is your role to apply my definitions to the issues that you are asked to decide in this case. Therefore, I have determined the meaning of the claims and will provide you

with my definitions of certain claim terms. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of invalidity and infringement.

Source: Adapted from Fed. Cir. Bar Assoc. Model Instructions; *Ambit Corp. v. Delta Airlines, Inc.*, Civ. Action No. 09-10217-WGY; and Model Patent Jury Instruction No. 1.2, The National Jury Instruction Project, June 17, 2009.

### 3.  SUMMARY OF CONTENTIONS

To help you follow the evidence, I will now give you a summary of the positions of the parties. The parties in this case are Bose Corporation, a company based in Framingham, Massachusetts, and Lightspeed Aviation, Inc., a company based in Lake Oswego, Oregon. The case involves a patent obtained by Bose Corporation, the '252 patent.

Bose filed suit in this court seeking money damages from Lightspeed for allegedly infringing the '252 patent by selling an aviation headset called the Zulu. Lightspeed contends that it was authorized to make and sell the Zulu headset pursuant to an agreement that Bose and Lightspeed entered into in 2002.

Lightspeed also contends that the asserted claims of the '252 patent are invalid. Lightspeed's invalidity claim will be the first presentation to you.

If you decide the agreement does not authorize Lightspeed to make and sell the Zulu headset and that if it infringes any valid claim of the '252 patent, you will then need to decide any money damages to be awarded to Bose to compensate for that infringement. Alternatively, if you find that Bose has breached its agreement with Lightspeed, you will need to decide money damages to award to Lightspeed. If you find infringement, you will also need to decide whether the infringement was willful. If you decide that any infringement was willful, that decision

should not affect any damage award you give Bose. I will take willfulness into account later in the proceedings.

Source: Adapted from Fed. Cir. Bar Assoc. Model Instructions; *Ambit Corp. v. Delta Airlines, Inc.*, Civ. Action No. 09-10217-WGY; and Model Patent Jury Instruction No. 1.3, The National Jury Instruction Project, June 17, 2009; Complaint (Feb. 13, 2009); Def.'s Am. Answer and Counterclaims (Nov. 13, 2009); Mem. & Order of July 30, 2010.

**4.     OVERVIEW OF APPLICABLE LAW**

In deciding the issues I just discussed, you will be asked to consider specific legal standards. I will give you an overview of those standards now and will review them in more detail before the case is submitted to you for your verdict. You will notice that in describing invalidity and infringement, I refer to the individual claims of the patent. This is because you must determine whether each claim is valid and infringed, not whether the patent as a whole is valid and infringed.

**A.     Patent Validity, Infringement, and Damages**

You will be asked to determine whether the claims of the '252 patent are invalid, whether the claims are infringed, and if a claim is valid and infringed you will need to determine whether damages attributable to the infringement. While it is your job to make these determinations, it is my job to as judge to determine the meaning of any claim that needs interpretation. I will provide you with a copy of those meanings, which you must follow. [Attachment A]. I will also provide you with a glossary that identifies terms used in patent matters and gives you a definition of those terms. [Attachment B.]

<u>1)     Validity</u>

The first issue you will be asked to decide is whether the claims of the '252 patent are invalid. Validity is assessed on a claim-by-claim basis. A patent may be invalid for a number of reasons, including because it claims subject matter that is not new or is obvious to one having

ordinary skill in the pertinent technical field. For a claim to be invalid because it is not new, Lightspeed must show, by clear and convincing evidence, that is to say proof that it is highly probable, that all of the elements of a claim are present in a single previous device, or sufficiently described in a single previous printed publication published before Bose made the invention of the '252 patent. The older references are sometimes called prior art. If a claim is not new, it is said to have been anticipated. . In this case, Lightspeed contends that the Telex ANR headset anticipates claims 1 and 5 of the '252 patent. I have already decided that the Telex ANR headset includes every limitation of claim 1, so it will be incumbent upon you to determine whether the Telex ANR headset is prior art and whether it satisfies the limitations of claim 5. A patent claim can also be invalid if the applicant for patent was not filed within one year of when the invention was first used publicly.

Another way a claim may be invalid is if it would have been obvious. Even though every element of a claim is not shown or sufficiently described in a single piece of "prior art," the claim may still be invalid if it would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time. You will need to consider a number of questions in deciding whether the inventions claimed in the '252 patent are obvious. I will provide you detailed instruction on these questions at the conclusion of the case.

    2)    Infringement

As I mentioned before, Lightspeed does not contest that the Zulu headset includes every element of claim 1 as I construed the claim. But, Lightspeed does contend that it had permission to sell such a product based on 2002 Agreement between Bose and Lightspeed. Therefore, you will be asked to decide whether the Zulu headset is within the scope of the 2002 Agreement. You will also be asked to decide whether Lightspeed has infringed claims 2, 3, 5, and 6 of the '252 patent. Infringement, like validity, is assessed on a claim-by-claim basis. Therefore, there may

be infringement as to one claim but not infringement as to another. In general, Lightspeed might infringe the '252 patent by making, using, selling or offering for sale in the United States a product that is covered by a claim of the '252 patent without permission for Bose. I will provide you with more detailed instructions on the requirements for infringement at the conclusion of the case.

### 3) Damages

If you find that Bose has breached its 2002 agreement with Lightspeed, you will need to determine money damages to award Lightspeed to compensate it for Bose's breach. Alternatively, if you find that Lightspeed was not authorized under the agreement and that the Zulu headset infringes a valid claim of the '252 patent, you will also need to decide any money damages to be awarded to Bose to compensate it for the infringement. A damages award should put Bose in approximately the same financial position that it would have been in had the infringement not occurred, but in no event may the damages award be less than what Bose would have been paid as a reasonable royalty. The damages you award are meant to compensate the patent holder and not to punish an infringer. You may not include in your award any additional amount as a fine or penalty, above what is necessary to compensate Bose for the infringement, in order to punish Lightspeed. I will give you more detailed instructions on the calculation of damages at the conclusion of the case.

Source: Adapted from Fed. Cir. Bar Assoc. Model Instructions; *Ambit Corp. v. Delta Airlines, Inc.*, Civ. Action No. 09-10217-WGY; Complaint (Feb. 13, 2009); Def.'s Am. Answer and Counterclaims (Nov. 13, 2009); Mem. & Order of July 30, 2010; Joint Pretrial Memorandum (Jul. 26, 2010).

**5.    OUTLINE OF TRIAL**

The trial will now begin.  First, each side may make an opening statement regarding the validity of the claims of the '252 patent.  An opening statement is not evidence.  It is simply an outline by the lawyers to help you understand what that party expects the evidence will show.

After the opening statements, Lightspeed will present its evidence in support of its contention that the claims of the '252 patent are invalid.  To prove any claim is invalid, Lightspeed must persuade you by clear and convincing evidence that the claim is invalid.  Plaintiff Bose will then have an opportunity to present its evidence that the claims of the '252 patent are not invalid.  This is referred to as "rebuttal" evidence.

Next, you will consider the 2002 agreement, infringement and damages.  Each side will have an opportunity to present an opening statement and evidence regarding these issues.  Finally, we will conclude with closing arguments by the attorneys regarding all of the issues.  These closing arguments are not evidence.

During the presentation of the evidence, the attorneys may be allowed brief opportunities to explain what they believe the evidence has shown or what they believe upcoming evidence will show.  The attorneys comments are not evidence and the attorneys are being allowed to comment solely for the purpose of helping you to understand the evidence.  You will be allowed to take notes during the trial and have your notebooks with you during deliberations.  But your notes are for you and you alone - do not show your notes to anyone else.  Your notes are not evidence.

After the evidence has been presented, I will give you final instructions on the law that applies to the case.  After the instructions and closing arguments, you will then decide the case.

Source:  Adapted from Fed. Cir. Bar Assoc. Model Instructions; *Ambit Corp. v. Delta Airlines, Inc.*, Civ. Action No. 09-10217-WGY.

## **ATTACHMENT A**

| Claim | Term | Court's Construction |
|---|---|---|
| 1 | Rear cavity | the cavity within the headphone cup structure that is farther from the user and attached to the rear of the baffle. |
| 2 | Limiting structure | a structure that limits diaphragm excursion to allow the voice coil to reside at least partially in a gap mounted on the baffle without interfering with the normal range of motion of the diaphragm. |
| 5 | Means for recovering from collapse of the diaphragm | a structure such as indentations, grooves, or corrugations for assisting the diaphragm in recovering its shape following collapse. |

**ATTACHMENT B**

**GLOSSARY OF PATENT TERMS**

**Application** – The initial papers filed by the applicant with the United States Patent and Trademark Office (also called the Patent Office or PTO).

**Claims** – The numbered sentences appearing at the end of the patent that define the invention. The words of the claims define the scope of the patent holder's exclusive rights during the life of the patent. Claims can be independent or dependent. An independent claim is self-contained. A dependent claim refers back to an earlier claim and includes the requirements of the earlier claim.

**License** – Permission to use or make the patented invention, or perform any of the other exclusive rights granted by the patent, which may be granted by a patent holder in exchange for a fee called a "royalty" or other types of payment.

**Office action** – Communication from the patent examiner regarding the patent application.

**Patent examiners** – Personnel employed by the PTO who examine patent applications, each in a specific technical area, to determine whether the claims of a patent application are patentable and whether the specification adequately describes and enables the claimed invention.

**Prior art** – Prior art is not art as one might generally understand the word art. Rather, prior art is a technical term relating to patents. In general, it includes things that existed before the claimed invention and might typically be a prior device, a patent, or a printed publication. I will give you a more specific definition of prior art later.

**Prosecution history** – The written record of proceedings between the applicant and the PTO, including the original patent application and later communications between the PTO and applicant. It is also sometimes referred to as the patent's "file wrapper."

**Specification** – The information that appears in the patent and concludes with one or more claims. The specification includes the written text and the drawings. In the specification, the inventor should provide a description telling what the invention is, how it works, and how to make and use it so as to enable others skilled in the art to do so, and what the inventor believed at the time of filing to be the best way of making the invention.

**Ordinary skill in the art** – The level of experience, education, and/or training that those individuals who worked in the area of the invention ordinarily possessed at the time of the effective filing date of the patent application.